# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

April 21, 2011

**By Electronic Filing**

Erik Haas
Partner
(212) 336-2117
ehaas@pbwt.com

The Honorable Freda L. Wolfson, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> **Re:**   *In re Johnson & Johnson Derivative Litigation*, **Civil Action No. 10-2033 (FLW)(DEA)**

Dear Judge Wolfson:

We, along with Riker, Danzig, Scherer, Hyland & Perretti LLP, represent the individual defendants in the above-captioned matter. On behalf of the individual defendants, we respectfully submit this letter to join in the arguments presented by nominal defendant Johnson & Johnson ("J&J") in its reply in support of its motion to dismiss, or in the alternative, stay this action.

Plaintiffs' opposition brief, like its Consolidated Amended Complaint, is long on rhetoric, but short on facts. Unable to point to a single allegation of misconduct by any individual defendant, plaintiffs instead rely on guilt-by-mere-presence and a series of vague and conclusory allegations. Plaintiffs ask this Court to accept the wildly implausible assertion that the named defendants—each of whom is distinguished and accomplished in his or her own right— knowingly and willfully facilitated more than a decade of misconduct by Johnson & Johnson, one of the most reputable and successful companies in the world. Plaintiffs also ask the Court to permit them to usurp the Board's authority to evaluate these allegations in the first instance and to decide whether or not it is in the company's best interest to pursue a claim.

In assessing plaintiffs' allegations, it is important to recognize what this case is ***not*** about. This is not a case in which any of the individual defendants are alleged to have personally engaged in misconduct. This is not a case in which any of the individual defendants are alleged to have engaged in self-dealing or personal enrichment. This is not a case in which any of individual defendants are alleged to have knowingly or willfully violated any law or regulation.

Indeed, notwithstanding plaintiffs' over-the-top rhetoric, this is not a case about affirmative misconduct at all. Rather, this is a case about whether any of the named defendants breached their duty of good faith by *failing to prevent* conduct that certain regulators and plaintiffs subsequently claimed to be improper. These types of cases are heavily discouraged, *see In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996), and nothing

4718109v.1

The Honorable Freda L. Wolfson
April 21, 2011
Page 2

in plaintiffs' opposition brief establishes that this is the rare "failure to act" case that should be permitted to proceed. To the contrary, plaintiffs' allegations establish nothing more than that the individual defendants served on the company's Board during a time in which certain conduct allegedly occurred. *See* Pls.' Opp. Br. at 34-37. Such allegations, even if true, fail to establish liability, much less demand futility. *See Livermore v. Engles*, 2011 WL 291334, at *3 (N.D. Tex. Jan. 26, 2011) ("plaintiff's allegations of knowledge and scienter on the part of the individual defendants, which are explained solely by virtue of their service on the board ... are insufficient to excuse demand.").

In their opposition brief, plaintiffs fail to identify a single particularized fact to meet their heavy burden of showing that any Board member displayed a "conscious disregard" for his or her duties, *In re The Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006), that "rose to the level of egregiousness or bad faith." *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, 493 F.3d 393, 404 (3d Cir. 2007). Instead, plaintiffs continue to rely on a laundry list of purported "red flags" to argue that the "Board consciously did not intervene and put a stop to the pervasive illegal conduct." Pls.' Opp. Br. at 2. These "red flags" do not, however, establish demand futility.

First, plaintiffs do not allege any facts to show that the Board consciously disregarded notice of any ongoing misconduct. Rather, the "red flags" that plaintiffs point to consist of either (1) the occurrence of the alleged misconduct itself, such as product recalls, or (2) subpoenas or lawsuits made known to the Board *after* the alleged misconduct had already ceased. Plaintiffs thus argue that the Board faces a substantial risk of personal liability for failing to stop alleged misconduct that occurred before the Board was aware of it. Courts have consistently rejected such facially illogical allegations, and this Court should as well. *See, e.g., Markewich v. Collins*, 622 F. Supp. 2d 802, 811 (D. Minn. 2009) ("[T]he Director Defendants cannot be liable, under a bad faith or duty of loyalty theory, for their failure to take corrective or preventative action when they were unaware of the issues needing correcting or preventing."); *Stone v. Ritter*, 2006 WL 302558, at *2 (Del. Ch. 2006), *aff'd*, 911 A.2d 362 (Del. 2006) ("Plaintiffs fail to point to any facts either showing how... problems at [the company] waved a 'red-flag' in the face of the board [or] suggesting a conscious decision to take no action in response to red flags."); *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009) ("Plaintiff fails to identify what the Directors actually knew about the 'red flags' and how they responded to them.").

Second, plaintiffs fail to allege that the Board had knowledge of any alleged underlying conduct that was, in fact, illegal. Instead, they rely on the mere fact that allegations have been raised previously, ignoring that J&J has vigorously disputed wrongdoing in these underlying actions and investigations, and indeed, has obtained dismissals in certain actions. Despite this fact, plaintiffs, purportedly acting in J&J's best interests, have taken as true all of the unproven and contested allegations in these other proceedings, and rely on the settlement of certain matters to claim that the Board knew of actual wrongdoing and is personally liable. This is nonsense. Courts have consistently held that even the settlement of underlying actions or investigations does not establish that the Board knew of wrongdoing, much less that the Board facilitated such

The Honorable Freda L. Wolfson
April 21, 2011
Page 3

wrongdoing. *See, e.g., King ex rel. Cephalon Inc. v. Baldino*, 2010 WL 5078008, at *3 (3d Cir. Dec. 14, 2010) (plaintiffs cannot merely "equate a bad outcome with bad faith" but must allege "particularized facts that the directors knew or should have known about the misconduct"); *Intel*, 621 F. Supp. at 175-76; *Markewich*, 622 F. Supp. 2d at 812.

For all of the foregoing reasons, as well as those set forth in J&J's papers in support of its motion to dismiss or stay, plaintiffs' Consolidated Amended Complaint should be dismissed for failure to allege demand futility, or in the alternative, stayed to allow the Special Committee of J&J's Board to complete its consideration of the shareholder demands.

Respectfully submitted,

PATTERSON BELKNAP WEBB
& TYLER LLP

*Erik Haas/LB*
Erik Haas


RIKER DANZIG SCHERER HYLAND
& PERRETTI LLP


s/ Edwin F. Chociey, Jr.
Edwin F. Chociey, Jr.


cc:     All counsel of record (via ECF)

4718109v.1