# EXHIBIT 1

# Robbins Geller
# Rudman & Dowd LLP

| Atlanta | Melville | Philadelphia | San Francisco |
| Boca Raton | New York | San Diego | Washington, DC |

Travis E. Downs III
TravisD@rgrdlaw.com

WCW
AUG 13 2010

August 10, 2010

VIA CERTIFIED MAIL

Board of Directors of Johnson & Johnson
 c/o William C. Weldon
Chairman of the Board
One Johnson & Johnson Plaza
New Brunswick, New Jersey 089331

Re: *Johnson and Johnson: Request to Inspect Books and Records Pursuant to New Jersey Statute 14A:5-28* – Demand to Inspect Books and Records

Dear Mr. Weldon:

Gila Heimowitz and Sandra L. Wollman, stockholders of Johnson & Johnson since 1996 and 1997, respectively (together "Stockholders"), have appointed the undersigned firms as their attorneys-in-fact and agents for the purpose of conducting the inspection demanded herein on their behalf.

### J&J's Foreign Corrupt Practices Act Violations

According to news reports, Johnson & Johnson ("J&J" or the "Company") is under investigation by United States and foreign law enforcement agencies for bribery and other possible violations of the anti-corruption laws. More specifically, internal and governmental investigations have been launched into whether J&J and/or its subsidiaries violated, among other things, the Foreign Corrupt Practices Act ("FCPA") by making improper payments to foreign officials in connection with the sale of medical devices abroad, and the Company's participation in the United Nations Iraq Food for Oil Program.

Notably, J&J has not denied these reports. On the contrary, in a recent public filing J&J essentially admitted that the ongoing investigations involving the United States Department of Justice ("DOJ") and the United States Securities and Exchange Commission ("SEC") have led to the discovery of improper payments believed by J&J to potentially rise to the level of violations of the FCPA. Specifically, in its SEC Form 10-Q, dated May 10, 2010, J&J stated, in relevant part, as follows:

> In February 2006, the Company received a subpoena from the U.S. Securities & Exchange Commission (SEC) requesting documents relating to the participation by several Johnson & Johnson subsidiaries in the United Nations Iraq Oil for Food Program. The subsidiaries are cooperating with the SEC and U.S. Department of Justice (DOJ) in producing responsive documents.

...

**Robbins Geller**
**Rudman & Dowd LLP**

Board of Directors of Johnson & Johnson
August 10, 2010
Page 2

      In February 2007, the Company voluntarily disclosed to the DOJ and the SEC that subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act (FCPA). In the course of continuing dialogues with the agencies, other issues potentially rising to the level of FCPA violations in additional markets have been brought to the attention of the agencies by the Company. The Company has provided and will continue to provide additional information to the DOJ and SEC, and will cooperate with the agencies' reviews of these matters. Law enforcement agencies of a number of other countries are also pursuing investigations of matters voluntarily disclosed by the Company to the DOJ and SEC. Discussions are underway in an effort to resolve these matters, and the Iraq Oil for Food matter referenced above, but whether agreement can be reached and on what terms is uncertain.

    According to people familiar with the matter, J&J is close to reaching a settlement with the DOJ, the SEC and possibly other law enforcement agencies over its violations of the FCPA. This settlement could cost J&J tens, if not hundreds, of millions more in costs, damages and injuries.

### Documents Requested

    Stockholders hereby demand, pursuant to New Jersey Statute 14A:5-28 and the common law of the State of New Jersey, the right to inspect and make copies of the following books and records of the Company:

    1.    True and correct copies of the subpoena(s) to J&J from the SEC requesting documents relating to the participation of J&J and/or its subsidiaries in the United Nations Iraq Oil for Food Program.

    2.    True and correct copies of J&J's and/or its subsidiaries' response(s) to the subpoena(s) from the SEC requesting documents relating to the participation of J&J and/or its subsidiaries in the United Nations Iraq Oil for Food Program.

    3.    True and correct copies of documents and/or writings provided by J&J and/or its subsidiaries relating to the participation of J&J and/or its subsidiaries in the United Nations Iraq Oil for Food Program.

    4.    True and correct copies of documents and/or writings reflecting the findings and/or conclusions, whether preliminary or final in nature, of the internal investigations, reviews and/or similar inquires conducted by J&J relating to the participation of J&J and/or its subsidiaries in the United Nations Iraq Oil for Food Program.

**Robbins Geller
Rudman & Dowd LLP**

Board of Directors of Johnson & Johnson
August 10, 2010
Page 3

5. True and correct copies of documents and/or writings relating to the "voluntary" disclosure made by J&J to the DOJ and the SEC regarding the fact that "subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act (FCPA)."

6. True and correct copies of documents and/or writings provided by J&J to the DOJ and/or the SEC concerning the transactions and/or occurrences covered by J&J's statements in its May 10, 2010 SEC Form 10-Q Report that "subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act (FCPA)."

7. True and correct copies of documents and/or writings that constitute, support and/or form the basis for J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act (FCPA)."

8. True and correct copies of documents and/or writings reflecting the names, positions and last known addresses and telephone numbers for each person involved in the transactions and/or occurrences covered by J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act (FCPA)."

9. True and correct copies of documents and/or writings identifying the "two small-market countries" covered by J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act (FCPA)."

10. True and correct copies of documents and/or writings provided by J&J to the DOJ and/or the SEC concerning the transactions and/or occurrences covered by J&J's statements in its May 10, 2010 SEC Form 10-Q Report that "other issues potentially rising to the level of FCPA violations in additional markets have been brought to the attention of the agencies by the Company."

572779_1

| Robbins Geller
| Rudman & Dowd LLP

Board of Directors of Johnson & Johnson
August 10, 2010
Page 4

     11.    True and correct copies of documents and/or writings underlying the transactions and/or occurrences covered by J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "other issues potentially rising to the level of FCPA violations in additional markets have been brought to the attention of the agencies by the Company."

     12.    True and correct copies of documents and/or writings that constitute, support and/or form the basis for J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "other issues potentially rising to the level of FCPA violations in additional markets have been brought to the attention of the agencies by the Company."

     13.    True and correct copies of documents and/or writings reflecting the names, positions and last known addresses and telephones for each person involved in the transactions and/or occurrences covered by J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "other issues potentially rising to the level of FCPA violations in additional markets have been brought to the attention of the agencies by the Company."

     14.    True and correct copies of documents and/or writings identifying the "additional markets" covered by J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "other issues potentially rising to the level of FCPA violations in additional markets have been brought to the attention of the agencies by the Company."

     15.    True and correct copies of documents and/or writings reflecting the findings and/or conclusions, whether preliminary or final in nature, of the internal investigations, reviews and/or similar inquires conducted by J&J into the transactions and/or occurrences covered by J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act (FCPA)."

     16.    True and correct copies of documents and/or writings reflecting the findings and/or conclusions, whether preliminary or final in nature, of the internal investigations, reviews and/or similar inquires conducted by J&J into the transactions and/or occurrences covered by J&J's statement in its May 10, 2010 SEC Report on Form 10-Q that "other issues potentially rising to the level of FCPA violations in additional markets have been brought to the attention of the agencies by the Company."

     17.    True and correct copies of all demands, settlement proposals and similar documents sent to or received by J&J regarding resolution of actual and/or threatened claims and/or charges against J&J for possible violations of the FCPA.

572779_1

**Robbins Geller**
**Rudman & Dowd LLP**

Board of Directors of Johnson & Johnson
August 10, 2010
Page 5

  The Stockholders further demand the right to inspect all information referred to in this letter that is within the legal possession, custody or control of J&J, including, but not limited to, such information that is within the possession, custody or control of J&J's subsidiaries and outside legal counsel, accountants and consultants.

  The Stockholders issue the foregoing demand for the purposes of: (i) investigating possible mismanagement and breaches of fiduciary duties; (ii) investigating violations of law by the officers and directors of the Company in connection with J&J's likely violations of the FCPA and similar anti-corruption laws; and (iii) determining whether the Company's officers and directors are independent and/or disinterested and whether they have acted in good faith. The Stockholders further note that J&J has already admitted that "subsidiaries outside the United States are believed to have made improper payments in connection with the sale of medical devices in two small-market countries, which payments may fall within the jurisdiction of the Foreign Corrupt Practices Act," and that "other issues potentially rising to the level of FCPA violations in additional markets" exist. To date, J&J still has not publicly disclosed the specific nature of the violations of the FCPA and/or the likely costs, penalties and fines resulting from such violations.

  The Stockholders have designated their counsel Robbins Geller Rudman & Dowd LLP and the Law Office of Debra S. Goodman and their attorneys and employees, or any other person designated by the undersigned or any of the foregoing counsel, acting together, singly or in any combination, to conduct, as their agent, the inspection and copying requested herein. In connection therewith, the Stockholders have executed a Power of Attorney and verified that the facts and statements contained in this inspection demand letter are true and correct, and have attached a copy of their most recent brokerage statement demonstrating that they currently own J&J common stock.

  Please advise the undersigned as to when and where the items demanded above will be made available. The Stockholders intend to avail themselves fully of the remedies provided at law and in equity if J&J's responses are uncooperative, untimely or insufficient.

Very truly yours,

TRAVIS E. DOWNS III
Robbins Geller Rudman & Dowd LLP

DEBRA S. GOODMAN
Law Office of Debra S Goodman P.C.
1301 Skippack Pike
Suite 7A, #133
Blue Bell, PA 19422

572779_1

Robbins Geller
Rudman & Dowd LLP

Board of Directors of Johnson & Johnson
August 10, 2010
Page 6

                                        Telephone: 610/277-6057
                                        Email:  dsgoodmanlaw.com

                                        Attorneys for Sandra L. Wollman and Gila Heimowitz

TED:ddh

572779_1

## LIMITED POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that Sandra L. Wollman does hereby make, constitute and appoint the Robbins Geller Rudman & Dowd LLP and Law Office of Debra S. Goodman, and any persons designated by them, to act as true and lawful attorneys in fact for her, in her name, place and stead, in all matters regarding the examination of Books and Records of Johnson & Johnson and giving and granting unto said attorneys full power and authority to do and perform all and every act and thing whatsoever requisite necessary and proper to be done in and without the premises, as fully, to all intents and purposes as it might or could do, with full power of substitution and revocation, hereby ratifying and confirming all that its attorney or the substitute shall lawfully do or cause to be done.

IN WITNESS WHEREOF, I have hereunto set my hand as of July 23, 2010.

*/s/ Sandra L. Wollman*
SANDRA L. WOLLMAN

572939_1

## VERIFICATION

I, the undersigned, hereby by depose and state under oath that:

1. I am a stockholder of Johnson & Johnson, as evidenced by the true and correct copy of my account statement attached hereto as Exhibit A.

2. I have read the demand letter made pursuant to New Jersey Statute 14A:5-28 addressed to Board of Directors of Johnson & Johnson and the statement of purpose and other statements therein contained are true and correct.

I hereby verify under penalty of perjury that the foregoing statements made by me are true and correct.

_____
SANDRA L. WOLLMAN

State of New Jersey       )
                          ) SS
County of Camden          )

On July 23, 2010 before me, Christy Cabeca, personally appeared Sandra L. Wollman who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New Jersey that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

CHRISTY CABECA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 5, 2015

572939_1

## Stocks and Options

### Stocks continued

SANDRA L WOLLMAN

MAY 1 - MAY 31, 2010



| DESCRIPTION | % OF ACCOUNT | QUANTITY | ADJ PRICE/ ORIG PRICE | ADJ COST/ ORIG COST | CURRENT PRICE | CURRENT MARKET VALUE | UNREALIZED GAIN/LOSS | ESTIMATED ANNUAL INCOME | ANNUAL YIELD (%) |
|---|---|---|---|---|---|---|---|---|---|
| JOHNSON & JOHNSON NJ | | | | | | | | | |
| Acquired 06/05/97 L | | 0.73000 | 29.81 | 22.13 | | 42.56 | 20.43 | | |
| Acquired 06/05/97 L | | 199.27000 | 29.81 | 6,039.87 | | 11,617.44 | 5,577.57 | | |
| Acquired 08/04/98 L | | 200 | 38.09 | 7,701.00 | | 11,660.00 | 3,959.00 | | |
| Reinvestments L | | 83.39700 | 57.98 | 4,835.50 | | 4,862.05 | 26.55 | | |
| Reinvestments S | | 11.87900 | 60.32 | 716.65 | | 692.54 | -24.11 | | |
| Total | 3.01 | 495.27600 | | $19,315.15 | 58.3000 | $28,874.59 | $9,559.44 | $1,069.79 | 3.70 |

## LIMITED POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that Gila Heimowitz does hereby make, constitute and appoint the Robbins Geller Rudman & Dowd LLP and the Law office of Debra S. Goodman, and any persons designated by them, to act as true and lawful attorneys in fact for her, in her name, place and stead, in all matters regarding the examination of Books and Records of Johnson & Johnson and giving and granting unto said attorneys full power and authority to do and perform all and every act and thing whatsoever requisite necessary and proper to be done in and without the premises, as fully, to all intents and purposes as it might or could do, with full power of substitution and revocation, hereby ratifying and confirming all that its attorney or the substitute shall lawfully do or cause to be done.

IN WITNESS WHEREOF, I have hereunto set my hand as of 7/29, 2010.

*[signature]*
GILA HEIMOWITZ

572937_1

## VERIFICATION

I, the undersigned, hereby by depose and state under oath that:

1. I am a stockholder of Johnson & Johnson, as evidenced by the true and correct copy of my account statement attached hereto as Exhibit A.

2. I have read the demand letter made pursuant to New Jersey Statute 14A:5-28 addressed to Board of Directors of Johnson & Johnson and the statement of purpose and other statements therein contained are true and correct.

I hereby verify under penalty of perjury that the foregoing statements made by me are true and correct.

_____
GILA HEIMOWITZ

State of _New York_ )
                    ) SS
County of _Nassau_  )

On _July 19, 2010_ before me, _Deana Cardinale_ personally appeared _Gila Heimowitz_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

DEANA A. CARDINALE
Notary Public, State of New York
# 01CA5031832
Qualified in Suffolk County
Commission Expires August, 15, 2010

572937_1

# SANDGRAIN
*Certified Woman-Owned Business*

## Brokerage Account Statement

Statement Period: 06/01/2010 - 06/30/2010

### Portfolio Holdings *(continued)*

**Equities** *(continued)*

| Quantity | Acquisition Date | Unit Cost | Cost Basis | Market Price | Market Value | Unrealized Gain/Loss | Estimated Annual Income | Estimated Yield |
|---|---|---|---|---|---|---|---|---|
| **JOHNSON & JOHNSON COM** *Security Identifier: NJ* | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| 100.000 | Please Provide | N/A | Please Provide | | | N/A | | |
| 100.000 | 12/30/96 | 51.6000 | 5,160.00 | 59.0600 | 5,906.00 | 746.00 | 216.00 | 3.65% |
| 200.000 | Total | | $5,160.00 | 59.0600 | 5,906.00 | | 216.00 | 3.65% |
|  |  |  |  |  | $11,812.00 | $746.00 | $432.00 |  |



Account Number: [redacted]
GILA HEIMOWITZ



#1 Brokerage Statement 2009, 2010
DALBAR RATED
FOR COMMUNICATION

Clearing through Pershing LLC, a subsidiary of the Bank of New York Mellon Corporation. Pershing LLC, member FINRA, NYSE, SIPC

► go paperless
Ask about e-delivery

D0059172CSP10027   PAR U2 ROLL

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt Fee will provide you the signature of the person delivered to and the date of delivery.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:

Board of Directors of
Johnson & Johnson
c/o William C. Weldon
One Johnson & Johnson Plaza
New Brunswick, NJ 089331

4a. Article Number
7002 0510 0003 5548 2819

4b. Service Type
☐ Registered    ☐ Insured
☑ Certified     ☐ COD
☐ Express Mail  ☑ Return Receipt for Merchandise

7. Date of Delivery 8/13/10

5. Signature (Addressee)
*D. DeLuca*

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

**DOMESTIC RETURN RECEIPT**

7002 0510 0003 5548 2819