Donald A. Robinson
Leda Dunn Wettre
ROBINSON, WETTRE & MILLER LLC
One Newark Center
Newark, New Jersey 07102
(973) 690-5400
drobinson@rwmlegal.com
lwettre@rwmlegal.com

Walter C. Carlson (admitted *pro hac vice*)
Kristen R. Seeger (admitted *pro hac vice*)
Laura Day Rottenborn (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Nominal Defendant
Johnson & Johnson*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE JOHNSON & JOHNSON DERIVATIVE LITIGATION | CIVIL NO. 3:10-CV-02033 (FLW) (DEA)<br><br>**JOHNSON & JOHNSON'S RESPONSE TO LEAD PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE REPORT OF THE SPECIAL COMMITTEE** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................2

I.     PLAINTIFFS AND J&J AGREE THAT THE THRESHOLD ISSUE
       IS TO BE DETERMINED BASED UPON THE PLEADINGS ....................2

II.    IF THIS CASE PROCEEDS, PLAINTIFFS' CLAIMS WILL BE
       SUBJECT TO THE SPECIAL COMMITTEE REPORT AND J&J WILL
       MOVE TO TERMINATE AT THE APPROPRIATE TIME .........................3

III.   PLAINTIFFS' ATTACKS ON THE SPECIAL COMMITTEE
       AND THE REPORT ARE SIMPLY WRONG ...............................................4

       A.   J&J Used A Proper Process ....................................................................4

       B.   The Special Committee's Counsel Was Independent ............................5

       C.   The Special Committee Fully Investigated The Shareholder
            Demands And Derivative Complaints ....................................................7

CONCLUSION .......................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Biondi v. Scrushy*,
   820 A.2d 1148 (Del. Ch. 2003) ........................................................................5

*In re Cendant Corp. Deriv. Action Litig.*,
   189 F.R.D. 117 (D.N.J. 1999)......................................................................2, 3

*Fagin v. Gilmartin*,
   2007 WL 2176482 (N.J. Super. Ct. Ch. Div. July 19, 2007) .........................3, 6

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) ............................................................................3

*Katell v. Morgan Stanley Group, Inc.*,
   1995 WL 376952 (Del. Ch. June 15, 1995).......................................................5

*Kindt v. Lund*,
   2003 WL 21453879 (Del. Ch. May 30, 2003)...................................................4

*In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*,
   493 F.3d 393 (3d Cir. 2007) ............................................................................3

*In re Par Pharmaceutical, Inc. Deriv. Litig.*,
   750 F. Supp. 641 (S.D.N.Y. 1990) ...................................................................5

*In re PSE&G Shareholder Litig.*,
   173 N.J. 258 (2002) ..............................................................................*passim*

**RULE**

Fed. R. Civ. P. 23.1 ................................................................................................3

**OTHER AUTHORITY**

Ralph C. Ferrara et al., Shareholder Derivative Litigation:  Besieging the
   Board § 8.10[2] (2010) ...................................................................................6

# INTRODUCTION

Johnson & Johnson ("J&J" or "the Company") respectfully submits this response to Lead Plaintiffs' Supplemental Brief In Response To The Report Of The Special Committee Of The Board Of Directors Of Johnson & Johnson (Dkt. No. 157).

Plaintiffs admit that the Report has no bearing upon the pending Motion to Dismiss, which is to be decided on the pleadings. (*Id.* at 3-4.) Despite this admission, plaintiffs proceed to spend the bulk of their lengthy Supplemental Brief attacking the Report. (*Id.* at 4-18.)

Plaintiffs' self-interested and premature attempt to attack the Report should be disregarded. Moreover, plaintiffs' attacks are a house of cards that rests on repeated mischaracterizations – of the law, of the facts, of the Report, and of the intentions of the Special Committee and its independent counsel, Douglas Eakeley of Lowenstein Sandler.

Plaintiffs argue that the Report's conclusion was foregone. (*Id.* at 3.) In reality, the foregone conclusion here appears to be that plaintiffs would attempt to criticize the Report and the Special Committee regardless of what the Report said. This is illustrated by plaintiffs' arguments that the same Report is both a "whitewash" (Dkt. No. 157 at 5) and a trove of negative disclosures (*Id.* at 15-18). Plaintiffs are clearly unable to be fair-minded regarding the Report.

The Report speaks for itself. As set forth therein, the Special Committee and Mr. Eakeley conducted a detailed, thorough, and responsible investigation. They were committed to and did conduct an extensive investigation of the various allegations, and demonstrated a willingness to consider all facts and all options, including the acceptance of shareholder demands, the pursuit of litigation, and the recommendation of new governance procedures.

## ARGUMENT

### I.  PLAINTIFFS AND J&J AGREE THAT THE THRESHOLD ISSUE IS TO BE DETERMINED BASED UPON THE PLEADINGS

The parties agree that (1) the threshold issue here is whether plaintiffs have pleaded a sufficient basis to excuse demand, and (2) that issue is to be decided based upon the Consolidated Complaint. (Dkt. No. 157 at 3-4; Dkt. No. 152 at 4.) The Report has no bearing on that determination. (*Id.*)

Based upon the pleadings, demand is not excused for all of the reasons identified in J&J's prior submissions on the Motion to Dismiss. (Dkt. Nos. 105, 124.) Plaintiffs' continued misstatement of the applicable pleading standard should be rejected. Plaintiffs *again* assert that *all* of the Complaint's allegations must be taken as true on the Motion to Dismiss. (Dkt. No. 157 at 2). This is not accurate, and it is plaintiffs' second incomplete citation to *In re Cendant Corp. Derivative Action Litigation*, 189 F.R.D. 117, 127 (D.N.J. 1999). (*See* Dkt. No. 124 at 4-5; Dkt. No. 114 at 25-26.)  *Cendant* goes on to say:

2

> While a court will accept well-pleaded allegations as true for the purposes of the motion, *it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations*.

*Id.* (emphasis added).[1]  Moreover, because this is a derivative suit governed by Federal Rule of Civil Procedure 23.1, the facts must be pleaded with particularity, a heightened standard akin to that for pleading fraud.  *See In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, 493 F.3d 393, 403 (3d Cir. 2007); *Kanter v. Barella*, 489 F.3d 170, 175-76 (3d Cir. 2007).  Plaintiffs have not done so.

## II. IF THIS CASE PROCEEDS, PLAINTIFFS' CLAIMS WILL BE SUBJECT TO THE SPECIAL COMMITTEE REPORT AND J&J WILL MOVE TO TERMINATE AT THE APPROPRIATE TIME

The Consolidated Complaint should be dismissed.  If plaintiffs make a demand following dismissal, or even if the Court allows the case to proceed without a demand, plaintiffs are subject to the legal framework set forth in *In re PSE&G Shareholder Litigation*, 173 N.J. 258 (2002).  (*See* Dkt. No. 152 at 5-6).  J&J will move to terminate in accordance with *PSE&G* at the appropriate time.  173 N.J. at 287; *see also Fagin v. Gilmartin*, 2007 WL 2176482, at *14-15 (N.J. Super. Ct. Ch. Div. July 19, 2007).

---

[1] Plaintiffs also cite *Cendant* in support of the proposition that defendants are not entitled to inferences from the Report's conclusions at the motion to dismiss stage. (Dkt. No. 157 at 2.)  This is a strawman.  J&J never suggested that any such inferences should be drawn.  Indeed, J&J has advised the Court that the Report has no bearing on the Court's analysis of the pleadings.  (Dkt. No. 152.)

3

### III. PLAINTIFFS' ATTACKS ON THE SPECIAL COMMITTEE AND THE REPORT ARE SIMPLY WRONG

Plaintiffs make a number of attacks on the Special Committee, its counsel, and the Report. Plaintiffs repeatedly are wrong. The proper time for plaintiffs to air any concerns with the Special Committee investigation will be when J&J brings its motion based on that Report and the Board's determination. Although J&J will present its motion at that time, many of plaintiffs' attacks are so far afield as to merit a brief response now.

#### A. J&J Used A Proper Process

The Special Committee was properly comprised and acted appropriately. New Jersey law expressly contemplates the procedure that J&J followed here with respect to the creation of the Special Committee, the investigation, and the Board's consideration of the Special Committee's recommendations. *PSE&G*, 173 N.J. at 267, 272-274, 282-283. Additionally, the current Motion to Dismiss based on plaintiffs' failure to properly plead demand futility – a motion that plaintiffs concede goes solely to the adequacy of their pleading (*see supra* at 2) – did not prejudge any of the substantive issues being investigated. Plaintiffs' arguments to the contrary are ill-founded and should be rejected.[2]

---

[2] Plaintiffs' attacks on the composition of the Special Committee also are ill-founded, and J&J will brief this issue fully at the appropriate time. The fact that a board member is named as a defendant in shareholder derivative litigation does not prevent that board member from serving as a committee member. *Kindt v. Lund*,

4

Similarly, plaintiffs' arguments based on *Biondi v. Scrushy*, 820 A.2d 1148 (Del. Ch. 2003) and *In re Par Pharmaceutical, Inc. Derivative Litigation*, 750 F. Supp. 641 (S.D.N.Y. 1990) are irrelevant, because New Jersey law expressly contemplates what J&J has done, including having the entire Board participate in the decision to accept or reject the shareholder claims. *PSE&G*, 173 N.J. at 267, 272-274, 282-283. Further, *Par* was decided before *PSE&G* and did not purport to apply New Jersey law. *Par*, 750 F. Supp. at 646 n.11. *Biondi* also did not apply New Jersey law. *Biondi* is from a line of Delaware cases concerning the creation of a Special Litigation Committee ("SLC"), a device which is used in the context where a majority of a board is *not* disinterested or independent. *See*, *e.g.*, *Biondi*, 820 A.2d at 1166. Such an SLC process is distinct from the Special Committee that J&J used, and there has been no finding that any J&J Board member is not disinterested or independent. Indeed, *PSE&G* expressly allows the entire Board to authorize an investigation and decide whether to accept or reject a shareholder claim. Neither *Biondi* nor *Par* applies here.

## B.  The Special Committee's Counsel Was Independent

Plaintiffs also attack the independence of Douglas Eakeley of Lowenstein Sandler, whom the Special Committee retained as its independent counsel.

---

2003 WL 21453879 at *3 (Del. Ch. May 30, 2003) (holding that being named as a defendant does not disqualify a director from serving as a committee member) (citing *Katell v. Morgan Stanley Group, Inc.*, 1995 WL 376952 at *7 (Del. Ch. June 15, 1995)).

5

Plaintiffs' suggestion that an attorney of Mr. Eakeley's standing and stature would fail to perform a thorough and independent investigation in order to secure a hypothetical future matter on behalf of J&J is ludicrous.

Moreover, plaintiffs are wrong on the law. Plaintiffs do not suggest (1) that Mr. Eakeley has ever represented any of the directors or officers whose conduct was being investigated; (2) that Mr. Eakeley or Lowenstein Sandler have played any role in any of the substantive matters or issues that were the subject of the Special Committee's investigation; or (3) that Lowenstein Sandler is a provider of substantial legal services to Johnson & Johnson. In short, plaintiffs suggest nothing that would disable Mr. Eakeley from serving as independent counsel to the Special Committee. *See*, *e.g.*, *PSE&G*, 173 N.J. at 292-93 (rejecting challenge to independence of investigation counsel); *Fagin*, 2007 WL 2176482 at *19 (rejecting a challenge to the independence of counsel, saying, "[a]lthough investigating counsel may be conflicted if it becomes involved as litigation counsel in the derivative suit, such circumstances are not present in this case"); Ralph C. Ferrara et al., Shareholder Derivative Litigation: Besieging the Board § 8.10[2] at 8-44 (2010) ("Ideally, the law firm retained should not represent or have represented the individual defendants in the past. Furthermore, it is preferable that the law firm not have represented the corporation in the matters underlying the demand, or represent the corporation so regularly that it is financially dependent on the

6

company."). That Mr. Eakeley has worked on sporadic, unrelated matters for J&J over the course of his distinguished career is irrelevant.

> C. **The Special Committee Fully Investigated The Shareholder Demands And Derivative Complaints**

Plaintiffs level a number of baseless charges at the scope of the Special Committee's investigation and the conclusions of the Report. J&J will only address a few of the most egregious here.

First, the Special Committee applied the correct legal standards to the investigation. (*See* Dkt. No. 149, Attachment 1 ("SC Report") at 19-21.) Plaintiffs *misquote* the Report when they accuse the Report of applying the wrong standard. (*Compare* Dkt. No. 157 at 9 *with* SC Report at 19-21.) Plaintiffs claim that the Report states only that "the duty of good faith 'must be measured by the directors' actions to assure a reasonable information and reporting system exists'" (Dkt. No. 157 at 9 (partially quoting SC Report at 21)), and that this is "too narrow" because it ignores that the directors could "also breach their duty of good faith by failing to take corrective action in response to signs of obvious wrongdoing." (Id.) Plaintiffs blatantly misrepresent the Special Committee's Report. In fact, the Report states:

> The 'oversight' standard therefore requires the existence of 'red flags' -- and bad faith on the part of the board by consciously disregarding its responsibilities and failing to address inadequate systems and controls. The Delaware Supreme Court, however, has cautioned that a bad outcome does not equate with bad faith: *in the absence of red flags that are ignored,* 'good faith in the context of oversight must be measured by the directors' actions to assure a reasonable information

7

and reporting system exists and not by second-guessing after the occurrence of employee conduct that results in an unintended adverse outcome."

(SC Report at 21 (emphasis added).)

Second, the Special Committee *did* examine the control structures of J&J and *did not*, as plaintiffs claim, give the Company a pass because it operates on a decentralized basis.  (*Compare* SC Report at 27-40 *with* Dkt. No. 157 at 10.)

Third, plaintiffs' citation to an affidavit related to Topamax is misguided.  The affiant was not "J&J company chairman" as plaintiffs claim (Dkt. No. 157 at 11), but only a company group chairman responsible for North American Pharmaceuticals.  While Topamax was a major part of his business unit, it was just one of J&J's many products (accounting, for example, for less than 3.5% of J&J's sales in 2005).  Indeed, the Topamax sales data bear no logical relation to plaintiffs' argument that the Board should have overseen the details of the marketing of Topamax *prior* to any concerns being expressed to the Company about that marketing.  (*Compare Id. with* SC Report at 85-87.)

Fourth, contrary to plaintiffs' assertion (Dkt. No. 157 at 12), the Special Committee *did* address plaintiffs' "core claim" that there was a systemic or cultural problem at J&J and specifically discussed its findings with respect to that claim.  (SC Report at 89-90.)

Fifth, plaintiffs erroneously quibble with various specific documents and components of the Special Committee's Report:

- Plaintiffs *continue* to mischaracterize the FDA's 1999 Untitled Letter regarding Risperdal as a "Warning Letter." (Dkt. 157 at 17; *cf.*, *e.g.*, Dkt. 114 at 12-13; Cmplt. at ¶ 173.) But, as is evident from the face of the letter and as the Company has previously pointed out, it was *not* a Warning Letter. (*See*, *e.g.*, Dkt. 105, Attachment 2 at 37-41 (1999 Untitled Letter); Dkt. 105, Attachment 4 at 34 & n.11 (citing the FDA's Regulatory Procedures Manual, which explains the difference between Untitled Letters and Warning Letters).)

- Plaintiffs *again* reference a Warning Letter sent in 2004 to J&J subsidiary Cordis as purported evidence of company-wide manufacturing problems. (Dkt. 157 at 13 & n.9.) Plaintiffs' continuing disregard for (1) the content of that letter, which addressed only Cordis's manufacturing facilities, and (2) the fact that the FDA concluded in *2007* that all of the concerns raised in the 2004 letter had been completely resolved, is inexplicable. (See, e.g., Dkt. 124 at 15 n.6; Dkt. 124, Attachment 1 at 4 (letter from FDA stating "Cordis Corporation has resolved the deficiencies in the warning letter issued by the FDA on April 1, 2004, and all associated restrictions have been removed").)

9

- Plaintiffs claim that the Special Committee failed specifically to discuss a December 2010 Form 483 related to McNeil's Ft. Washington plant. This is completely without basis. First, the Special Committee extensively discussed the remediation efforts and FDA involvement with respect to Ft. Washington. (SC Report at 51-55.) Second, the Special Committee did in fact reference its consideration of that 483 and others from the same time period. (*Id.* at 55.)

- Plaintiffs mischaracterize what the Special Committee reviewed. They accuse the Special Committee of choosing "not to review documents that cut at the heart of Plaintiffs' allegations." (Dkt. 157 at 14-15.) But the Report specifically states that the Committee reviewed the documents identified by plaintiffs, including "[m]arketing materials," the documents related to DePuy's 2007 deferred prosecution agreement, and "pleadings . . . in relevant civil litigation." (SC Report at 15.) The Report also regularly references the documents plaintiffs wrongly assert were not reviewed. (See, e.g., SC Report at 79-82 (Risperdal marketing materials), 85 (Topamax *qui tam* actions), 100 (civil Omnicare litigation).)

- Plaintiffs misrepresent the remediation efforts at McNeil. They assert that "nothing changed until J&J suffered unprecedented recalls and

10

damages, causing a reorganization of J&J's quality control function in March *2011*." (Dkt. 157 at 16 (emphasis in original)), and blatantly ignore the extensive remediation action taken by McNeil following the 2009 and 2010 recalls. (*See*, *e.g.*, SC Report at 47-55, 64-65 (describing numerous actions taken after problems were discovered).)

* * *

The bottom line here is that, despite plaintiffs' mischaracterizations and misstatements to the contrary, J&J's Board acted responsibly in creating the Special Committee, and the Special Committee assisted by independent counsel has conducted a thorough, independent, and good faith investigation. J&J has done exactly what *PSE&G* contemplates. The Special Committee's Report and Board's determination based thereon should be upheld by this Court at the proper time.

## CONCLUSION

J&J's Motion to Dismiss for failure to make a demand should be granted for all of the reasons stated in J&J's prior briefs (Dkt. Nos. 105, 124, and 152).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Donald A. Robinson* |
| Walter C. Carlson | Donald A. Robinson |
| Kristen R. Seeger | Leda Dunn Wettre |
| Laura Day Rottenborn | Robinson, Wettre & Miller LLC |
| Sidley Austin LLP | One Newark Center |
| One South Dearborn | Newark, New Jersey 07102 |
| Chicago, Illinois 60603 | (973) 690-5400 |
| (312) 853-7000 |  |
|  | *Attorneys for Nominal Defendant* |
|  | *Johnson & Johnson* |
| July 26, 2011 |  |

12

13

## CERTIFICATE OF SERVICE

I certify that on July 26, 2011 I served the attached Johnson & Johnson's Response To Lead Plaintiffs' Supplemental Brief In Response To The Report Of The Special Committee on all counsel of record through the Court's CM/ECF electronic filing system.

*s/Donald A. Robinson*

Donald A. Robinson
