Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON DERIVATIVE LITIGATION | Civil Action No. 10-2033 (FLW) |
| IN RE JOHNSON & JOHNSON FCPA SHAREHOLDER DERIVATIVE LITIGATION | Civil Action No. 11-2511 (FLW) |
| COPELAND v. PRINCE, *et al.* | Civil Action No. 11-4993 (FLW) |

DECLARATION OF KAREN L. MORRIS IN
SUPPORT OF AWARD OF AGREED UPON ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES

I, Karen L. Morris, hereby declare:

1.      I am a partner in the firm of Morris and Morris LLC Counselors At Law.  I am submitting this declaration in support of the application for an award of attorneys' fees and reimbursement of expenses in connection with services rendered in the course of the litigation of the Derivative Actions (as defined in the Stipulation and Agreement of Settlement, executed on July 11, 2012) on behalf of Nominal Defendant Johnson & Johnson.  I am over the age of 21, have personal knowledge of the facts stated herein, and, if sworn as a witness, can competently testify to the facts stated herein.

2.      My firm has undertaken a total of 2,932 hours of work from the inception of the Derivative Actions through August 25, 2012.   The hourly rates and lodestar of the attorneys and paralegals from my firm who participated in the litigation of the Derivative Actions are as follows:

1

| NAME | HOURLY RATE | LODESTAR |
|------|-------------|----------|
| Karen Morris (P) | $765.00 | $681,041.25 |
| Patrick Morris (P) | $685.00 | $969,446.25 |
| R. Michael Lindsey (A) | $625.00 | $380,312.50 |
| Diane Kravitz (PL) | $165.00 | $2,970.00 |

3.      The total lodestar for work performed by counsel and paralegals in my firm equals $2,033,770.00. Attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent, by category of tasks performed, for the partners, attorneys and professional support staff of my firm who were involved in the Derivative Actions. In calculating the lodestar amounts reflected in this summary, the time entries for each professional who performed work in this matter was reviewed, and to the extent such review disclosed any potential duplication or other inefficiencies, the lodestar was adjusted to reflect the elimination of such time. This information was prepared from, and the review was performed on, contemporaneous time records regularly maintained by my firm, which are available for *in camera* review at the Court's request. Time spent in preparing this declaration in support of my firm's application for an award of fees and reimbursement of expenses, and any other time related to billing or periodic time reporting, has not been included.

4.      My firm incurred a total of $224,305.48 in unreimbursed expenses in connection with the prosecution of the Derivative Actions, broken down into categories in the chart attached hereto as Exhibit 2. As reflected in Exhibit 2, $200,000.00 of this amount reflects expenses incurred in the retention of Dr. Mitchell Glass, Demand Futility Counsel's pharmaceutical expert.

5.      The expenses incurred pertaining to this case are reflected in the books and records of my firm. These books and records are prepared from expense vouchers and check

records prepared in the normal course of business, and are an accurate record of the expenses incurred.

6.      With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is a resume of my firm.

7.      With respect to communication with objectors, Plaintiffs' Counsel received an objection from Mr. John Simmons on August 20, 2012.  I reached out to him immediately and spoke to Mr. Simmons by telephone on August 21, 2012.  I assured him that we would be filing detailed information in support of the fee request which was the focus of his objection, and that I would provide those materials upon filing, as well as a complete set of the final approval papers, by Federal Express, and be available to answer any questions he might have.


I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on August 31, 2012, at Wilmington, Delaware.

KAREN L. MORRIS

# EXHIBIT 1

**JOHNSON & JOHNSON**
**SHAREHOLDER DERIVATIVE ACTION**
**MORRIS AND MORRIS LLC COUNSELORS AT LAW**
**LODESTAR CATEGORY BREAKDOWN**
**PERIOD: Inception – August 25, 2012**

| Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Hours | Lodestar |
|---|---|---|---|---|---|---|---|---|---|
| Karen Morris (P) | 73.25 | 133.75 | 180.25 | 93.25 | 158.00 | 136.75 | 115.00 | 890.25 | 681,041.25 |
| Patrick Morris (P) | 54.50 | 215.25 | 225.00 | 222.75 | 211.25 | 237.75 | 248.75 | 1,415.25 | 969,446.25 |
| R. Michael Lindsey (A) | 210.00 | 137.75 | 188.25 | 22.25 | 34.00 | 2.25 | 14.00 | 608.50 | 380,312.50 |
| Diane Kravitz (PL) | 4.75 | 4.00 | 5.50 | 1.00 | 0.00 | 2.50 | 0.25 | 18.00 | 2,970.00 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| **TOTAL** | 342.50 | 490.75 | 599.00 | 339.25 | 403.25 | 379.25 | 378.00 | 2,932.00 | 2,033,770.00 |

## CATEGORIES

1. Investigation, research, drafting original complaints, and demand letters
2. Investigation, research, and drafting amended complaint/demand refused complaint
3. Motion practice
4. Discovery and investigation post filing of amended complaint/demand refused complaint
5. Governance and compliance analysis, and drafting of settlement proposals
6. Settlement negotiation process and documentation
7. Post settlement documentation and briefing

(P)  Partner
(A)  Associate
(PL) Paralegal

# EXHIBIT 2

**JOHNSON & JOHNSON**
**SHAREHOLDER DERIVATIVE ACTION**
**MORRIS AND MORRIS LLC COUNSELORS AT LAW**
**EXPENSE CATEGORY BREAKDOWN**

| CATEGORY | TOTAL |
|---|---|
| Experts | 200,700.00 |
| Travel and meals | 10,673.64 |
| On-line research | 10,408.45 |
| FedEx/UPS/Messenger service | 258.41 |
| Long Distance Telephone | 927.81 |
| Copying costs | 571.00 |
| Filing fees and transcripts | 702.00 |
| Miscellaneous | 64.17 |
| **TOTAL** | $ 224,305.48 |

# EXHIBIT 3

**MORRIS and MORRIS LLC**
**COUNSELORS AT LAW**
4001 Kennett Pike, Suite 300
Wilmington, DE  19807
(302) 426-0400
(302) 426-0406 (f)

Morris and Morris LLC Counselors at Law is a law firm whose practice is concentrated principally in representative and class action litigation, including derivative and antitrust litigation.  The firm is active in major litigations pending in federal and state courts throughout the United States.

The Partners:

Karen L. Morris is a graduate of Yale University (B.A. 1980, M.A. 1980) and of the Duke University School of Law (J.D. 1983).  Thereafter, Ms. Morris served as a law clerk to the late Daniel L. Herrmann, then Chief Justice of the Supreme Court of the State of Delaware.  Ms. Morris was a founding partner in 1991 of Morris and Morris, the predecessor firm to the present firm of Morris and Morris LLC Counselors At Law.  Ms. Morris previously practiced with the firm of Fried, Frank, Harris, Shriver & Jacobson, New York, New York, from 1984 through 1990.  While at Fried, Frank, she was principally involved in accounting and securities fraud litigation, both civil and criminal, complex tax litigation, and litigation in connection with merger and acquisition transactions.  Ms. Morris served on the Permanent Lawyers Advisory Committee to the Federal District Court for the District of Delaware between 1992 and 1994.  Ms. Morris was Co-Chair of the ABA Subcommittee on Governance Issues in Litigation and Investigations from 2008 to 2011, and now serves as the Chair of the Subcommittee on Governance Litigation and Resolution.  Ms. Morris has served as a Special Assistant Attorney General for the State of Delaware.  Ms. Morris has spoken frequently on derivative, antitrust and

1

other representative litigation.  Ms. Morris is admitted to the Bars of the States of New York and Delaware; the United States District Courts for the Southern District of New York, Eastern District of New York and the District of Delaware; United States Court of Appeals for the Third Circuit Court; and the United States Tax Court.

Patrick F. Morris is a graduate of West Point (B.S. 1978) and of the Duke University School of Law (J.D. 1983), where he graduated Order of the Coif.  Mr. Morris has been a member of the Firm since November 1994.  Prior to joining the Firm as an associate in 1991, Mr. Morris served as a Major in the Office of the Judge Advocate General with the Department of the Army.  Mr. Morris is a member of the Bars of the States of Florida and Delaware.

R. Michael Lindsey is a graduate of Penn State University (B.A. 1985, with Honors in English Literature) and of the Dickinson School of Law (J.D. 1988, magna cum laude).  Prior to his association with Morris and Morris in 2003, Mr. Lindsey practiced in the fields of corporate litigation and white collar crime with the law firm of Skadden, Arps, Slate Meagher & Flom from 1989 to 1998, and in the fields of corporate, securities and commercial litigation, including with Bouchard Margules & Friedlander, PA, a firm specializing in Delaware Chancery Court corporation litigation.  Mr. Lindsey is a member of the Board of Directors of the Delaware Center for Justice.  Mr. Lindsey is a member of the Delaware Bar.

Our Practice:

The practice of the Firm has been substantially devoted to the field of representative litigation, both class and derivative, in the fields of securities, antitrust, and limited partnership representation.  Illustrative of the cases in which the Firm has participated are the following:

(a)    N.A. Lambrecht et al. v. Taurel, et al. Derivative Litigation, Civil Action No. 1:08-cv-68-WTL-TAB (Eli Lilly and Company").   The Firm was Co-Lead Counsel of the

2

Executive Committee in this shareholder derivative action against then current and former officers and directors of Eli Lilly and Company.  Plaintiffs claimed defendants breached their fiduciary duties in connection with, inter alia, the pervasive and illegal off-label sales of Lilly's drugs, particularly its blockbuster drug Zyprexa, which resulted in injury to the Company, including payment of a $1.4 billion fine to the government.  By Order dated July 27, 2010, the District Court approved the settlement of the derivative claims providing for substantial corporate governance and compliance reforms at Lilly, including the requirement for the Company to adopt policies and procedures to support scientific excellence in the development and communication of product safety and effectiveness information and the medical and scientific risks and benefits throughout the life cycle of both products and product candidates at Lilly.

(b)    Pendolphia v. Becherer et al. Derivative Litigation, Civil Action No. 01CV1421 (D.N.J.) ("Schering-Plough Corporation").   The Firm was co-counsel in this shareholder derivative action against the directors of Schering-Plough seeking to recover damages for defendants' breach of fiduciary duties.   The complaint alleged defendants intentionally or recklessly ignored repeated warnings that essential Company production facilities were plagued by severe and pervasive manufacturing and quality control system breakdowns and failures. Further, the complaint alleged defendants intentionally or recklessly authorized and/or permitted the Company to engage in improper sales practices which operated as a fraud upon federal and state governmental authorities, thereby exposing the Company to a series of ongoing federal and state investigations and jeopardizing its all-important eligibility to participate in Medicaid and other government programs.  By Order dated January 14, 2008, the District Court approved the

3

settlement of the derivative claims providing for substantial corporate governance and compliance reforms at the Company.

(c)     TimeWarner, Inc. Derivative Litigation, Civil Action No. 04-CV-9316 (S.D.N.Y.). The Firm was Co-Lead Counsel in a derivative litigation against the directors and certain officers of Time Warner, Inc., that alleged these defendants breached their fiduciary duties to shareholders of the combined Time Warner/America Online company in connection with wrongdoing related to improper and/or illegal recording of millions of dollars of sham profits purportedly earned on multiple advertising agreements. The Southern District of New York, by Memorandum Opinion dated September 6, 2006, approved a settlement of these derivative claims which entailed, among other relief, substantial monetary and corporate governance benefits to the company.     The S.D.N.Y. expressly found that the corporate governance and compliance changes "will not only help deter the type of misconduct underlying Plaintiffs' claims, but may enhance investor confidence by ensuring that the Company maintains a healthy governance structure." *In re AOL Time Warner Shareholder Derivative Litigation* ("AOL"), 2006 U.S. Dist. LEXIS 63260 at *12 (S.D.N.Y. September 6, 2006).

(d)     In Re LIBOR-Based Financial Instruments Antitrust Litigation, MDL No. 2262/ Gelboim et al, v. Credit Suisse Group AG, et al., Civil Action No. 12-1025 (S.D.N.Y.).  On February 9, 2012, the Firm, with co-counsel filed the Gelboim complaint, alleging manipulation by multiple American and international banking institutions to manipulate and artificially suppress reported U.S. Dollar London Interbank Overnight Rate ("LIBOR") daily rates.  The Gelboim complaint alleged that as the result of the antitrust conduct, holders of variable rate bonds, the interest rate payments on which were set to LIBOR rates, were injured by not receiving the full amount of interest they would have been paid absent the manipulation.  The

4

Court designated the Gelboim bondholder class as a separate class in the multidistrict LIBOR antitrust action, and appointed the Firm Interim Co-Lead Counsel for the Bondholder Class.

(e)     Pierce v. Ellison Derivative Litigation, No. 416147 (Ca. Super. Ct.).  The Firm was co-counsel in this shareholder derivative action against certain current and/or former directors and/or officers of Oracle Corporation.  The complaint alleged that the defendants intentionally or recklessly disregarded known or obvious internal warnings regarding declining revenue growth trends of its critical license business in the first two months of its third quarter, fiscal year 2001, in the face of express representations to the contrary.  The complaint also charged certain defendants, including Oracle's Chairman and Chief Executive Officer, Larry Ellison, of selling millions of shares of Oracle stock while in possession of this non-public, negative financial information.  As alleged in the complaint, this illegal scheme earned the defendants hundreds of millions of dollars of profits in violation of their fiduciary duties of loyalty as Oracle directors and/or officers.  Plaintiffs contended that defendants' misconduct exposed Oracle to substantial financial harm.  Among other things, the complaint demanded that the insider trading defendants, at a minimum, disgorge their illegal gains.  Plaintiffs survived a motion to dismiss this complaint, and subsequently settled the claims for a total of $100 million, to be paid by Ellison over a five year period to fund charitable contributions by Oracle, as well as $21 million separately paid by Ellison to fund attorneys' fees and expenses.

(f)     UnumProvident et al. Derivative Litigation, MDL Civil Action No. 03-MD-1552 (E.D. Tenn.). The Firm was Co-Lead Counsel in this shareholder derivative action arising out of allegations of wrongdoing related to the management of UnumProvident's disability insurance policies and certain financial disclosures. This alleged wrongdoing was the subject of extensive regulatory investigations.  The derivative action was directed to the conduct of the Board and

certain of the Company's senior officers.  By Final Order and Judgment dated February 24, 2010, the District Court approved the settlement of the derivative claims, recognizing the role of the derivative claims in the Company's ability to obtain $30 million in insurance proceeds, and providing for substantial corporate governance reforms at the Company.

      (g)    In re Moody's Corporation Shareholder Derivative Litigation, Master File No. 1:08-CV-9323 (S.D.N.Y.).  Pursuant to Stipulation and Pre-Trail Order dated June 22, 2010, the Firm was appointed Co-Lead Counsel in this derivative litigation against officers and directors of Moody's Corporation, alleging, *inter alia*, breaches of fiduciary duty for conduct arising out of Moody's role in the rating of structured finance securities in the run up to the financial crisis. The Court preliminarily approved a proposed settlement of the derivative claims by Order dated July 20, 2012.  The final approval hearing in the case is set for September 6, 2012.

      (h)    BP Propane Direct Purchaser Antitrust Litigation, Master Case File No. 1:06-CV-3621, filed in the United States District Court for the Northern District of Illinois.  By Docket Entry dated September 19, 2006, pursuant to Federal Rule of Civil Procedure 23(g), the Firm was one of three counsel appointed as Interim Class Counsel with responsibility for the prosecution of this direct purchaser antitrust action alleging that BP Products North America ("BPNA"), by and through its employees, attempted to and did monopolize the supply of Mont Belvieu, Texas TET Propane in, among other possible times, early 2004.  Plaintiffs contended that this conduct resulted in, among other things, market manipulation and substantial damages to market participants who purchased propane directly from BPNA and from others at prices tied to Mont Belvieu TET and/or non-TET propane pricing.  By Order dated January 26, 2009, the Court, *inter alia*, certified a settlement class, appointed Interim Class Counsel as Class Counsel for the settlement class and preliminarily approved a proposed settlement providing for the

payment of $52 million for the benefit of the settlement class. By Order dated May 26, 2009, the Court granted final approval of the settlement.

  (i) <u>Charlotte Kruman, et al. v. Christie's International PLC, et al. Antitrust Litigation</u>, Civil Action 00 Civ. 0996 (LAK) (S.D.N.Y.). The Firm was one of the principle counsel in this federal antitrust class action litigation brought on behalf of buyers and sellers in auctions held outside of the United States by the Christie's and Sotheby's Auction Houses between 1993 and 2000 (for buyers) and 1995 and 2000 (for sellers). Plaintiffs' Sherman Act antitrust claims were originally dismissed by the District Court due to a finding of lack of subject matter jurisdiction based upon the then-current interpretation of the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a. Plaintiffs' counsel were successful in their appeal to the Second Circuit, causing that Circuit to be the first in the country to interpret the Foreign Trade Antitrust Improvements Act to provide jurisdiction to United States courts for alleged antitrust violations that occur outside of the United States. On June 2, 2003, the Court approved a settlement providing for the payment of $40 million for the benefit of class members.

  (j) <u>In re Salomon Treasury Antitrust Litigation</u>, Consolidated Civil Action No. 91 CIV 5471 (S.D.N.Y.). The Firm had a leading role in this complex federal securities fraud, antitrust and RICO class action arising from the highly publicized 1991 manipulation and "squeeze" of the cash and financing markets for a number of issues of United States Treasury Securities, and the subsequent public disclosures by Salomon Brothers of its having violated Treasury Department rules in submitting bids in auctions of Treasury Securities. On July 26, 1994, the District Court approved a settlement of the action with all but one of the named defendants that provided a $100 million fund for distribution to the Class. The Firm was a major participant in all aspects of the litigation, including, among other things, the preparation and drafting of two

7

amended and consolidated complaints, numerous pretrial motions, the conduct of approximately 150 days of deposition testimony by party and non-party witnesses, the review and management of hundreds of thousands of pages of documents, numerous hearings before the Court, and the negotiation of the settlement with defense counsel. The Firm was also in charge of all expert discovery and expert damage analysis, which proved critical to understanding the highly technical Treasury Securities markets and the methods by which plaintiffs alleged defendants were able to manipulate and squeeze segments of those markets. The Firm successfully briefed and argued two discovery motions resulting in reported decisions: In re Salomon Bros. Treasury Litig., [1992-93 Transfer Binder] Fed. Sec. L. Rptr. (CCH) ¶97,254 (S.D.N.Y. 1992) aff'd sub nom., In re Steinhardt Partners, L.P., 9 F.3d 230 (2d Cir. 1993)(rejecting an exception to work-product waiver for voluntary submissions to governmental regulatory and law enforcement agencies); and In re Salomon Bros. Treasury Litig., [1993-1994] Fed. Sec. L. Rptr. (CCH) ¶98,119 (S.D.N.Y. 1994)(rejecting claims of quasi-governmental privileges for information obtained from private sources and compelling the Federal Reserve Bank of New York to produce documents). In re Steinhardt Partners, L.P. involved an issue of first impression in the Second Circuit.

(k)     Mutual Fund Multi-District Derivative Litigation, MDL Civil Action Nos. 04-15862 and 15863 (D. Maryland). The Firm was lead counsel in a derivative action against the parent companies of Alliance Capital arising out of allegations regarding late trading and market timing. By Order dated August 10, 2011, the District Court approved the settlement of the derivative claims providing for substantial corporate governance and compliance reforms at AllianceBernstein Holding, LP. and $23 million in monetary relief. The Firm played a central role in both the management and litigation of this derivative case.

(l)     In re Bankers Trust Derivative Litigation, 94 Civ 7926 (PKL) (S.D.N.Y.).   The Firm served as Co-Chair of the Executive Committee in the derivative action brought on behalf of the shareholders of Bankers Trust New York Corporation.   The action alleged the directors breached their fiduciary duties to their corporate shareholders by failing to properly oversee and monitor the company's sales practices and procedures, particularly regarding the sale of high risk derivative instruments, resulting in substantial injury to the company and its shareholders.   The District Court approved a settlement for a cash recovery of $8.5 million together with significant changes to the Bank's monitoring responsibilities.

(m)     In re Guidant Corporation ERISA Litigation, Master Docket No. 1:05-cv-1009-(LJM-TAB) (N.D.IN).   The Firm was Co-Lead Counsel in this ERISA class action brought against certain directors and officers of the former Guidant Corporation, alleging that these defendants breached their fiduciaries duties to the Company's ERISA plan and plan participants by, *inter alia*, continuing to hold and to allocate new shares of Guidant common stock during a period in which they knew or should have known that such stock was an unsuitable and imprudent investment for the plan.   By Order dated, September 15, 2006, the District Court dismissed Plaintiffs' claims based on lack of standing.   By Order dated June 5, 2007, the Seventh Circuit overturned this dismissal and remanded the case back to the District Court.   By Order dated September 9, 2010, the District Court approved a settlement for a cash recovery to the Class of $7 million.

(n)     McCall, et al. v. Scott, et al. Derivative Litigation, Civil Action No. 3-97-0838 (M.D. Tenn.).   The Firm was co-counsel in this derivative suit brought against the directors of Columbia/HCA alleging that their failure to assure the Company had in place adequate corporate information and reporting systems and compliance controls led to pervasive and systemic billing

9

fraud, principally against Medicare, Medicaid and Champus. These reckless or intentional failures on the defendants' part resulted in one of the most extensive federal fraud investigations ever undertaken against a company. In 1998, the District Court granted defendants' motion to dismiss. Plaintiffs were successful in having this decision overturned, in part, by the Sixth Circuit Court of Appeals, and remanded back to the District Court (February 12, 2001). The Firm played a significant role in briefing the opposition to the motion to dismiss, both before the District Court and the Sixth Circuit, and was actively involved in all aspects of the discovery process. This case settled for $14 million in cash and substantive corporate governance changes at the Company.

(o)    Leodore J. Roy v. Independent Order of Foresters Class Action Litigation, Civil Action No. 97-CV-6225 (JCL) (D.N.J.). The Firm was Co-Lead Counsel in this federal class action, brought on behalf of a class of individuals who purchased life insurance issued in the United States by the Independent Order of Foresters ("IOF") between 1984 and 1998. Plaintiff alleged the IOF engaged in a series of fraudulent and deceptive practices in the sales and maintenance of life insurance policies it issued during the Class Period. The Firm was instrumental in the investigation and drafting of the complaint, and was actively involved in discovery (including the review of approximately 400,000 pages of documents) and in almost two years of settlement negotiations. Under the terms of the settlement, members of the Class were eligible for relief valued at approximately $114 million. The United States District Court for the District of New Jersey approved the settlement on August 3, 1999.

(p)    Sidney Neidich, et al., v. Geodyne Resources, et al. Securities Litigation, Civil Action Nos. 94-05286, 94-059799 (S.D.N.Y.). The Firm served as Co-Lead Counsel in the action. The Firm brought its action in the District Court of Harris County, District of Texas, on

10

behalf of purchasers of PaineWebber/Geodyne Energy Income Limited Partnership units. The litigation alleged that PaineWebber engaged in fraud and breached its fiduciary duties to its clients by selling oil and gas limited partnership units as safe and suitable investments for small and conservative investors. The action subsequently was consolidated for pre-trial and discovery purposes with a similar action in the United States District Court for the Southern District of New York alleging, among other counts, fraud and RICO claims. The Firm directed a team of over twenty lawyers to review and analyze over 350,000 pages of documents, coordinated an intensive analysis of that discovery with industry consultants, deposed numerous witnesses and actively participated in settlement negotiations. On March 1, 1997, the Court approved a settlement providing for a total recovery of $200 million, $125 million in cash and additional benefits with a present value of $75 million.

(q)   Orman, et al., v. America Online, Inc., et al. Securities Litigation, Civil Action No. 97-264-A (E.D.Va.). The Firm was Co-Lead Counsel in this action alleging that defendants defrauded investors by making material misrepresentations about certain accounting practices at AOL and about the expected average value of its subscribers. The Firm played a critical role in drafting a second amended complaint and in successfully defeating a motion to dismiss that complaint. Following the motion to dismiss, the Firm took a leading role in extensive motion practice and discovery (including the review and analysis of over 250,000 pages of documents and nearly a gigabyte, i.e., the equivalent of nearly 1,000 3.5" floppy diskettes of data and electronic documents, in only six months) and in preparing the case for trial. The parties agreed on May 20, 1998, to settle the claims for $35 million.

(r)   Schaffer v. National Medical Enterprises, Inc. Securities Litigation, Civil Action No. 93-5224 TJH (BX) (C.D.Cal.). The Firm was co-lead counsel in this federal securities fraud

class action brought on behalf of stockholders of National Medical Enterprises, Inc. ("NME"). Plaintiffs alleged the defendants failed to disclose the impact that governmental investigations and civil claims by insurance carriers arising from widespread fraudulent business practices in NME's psychiatric hospital division would likely have on the Company's financial position and prospects.   While formal discovery was stayed pending a hard fought two-year motion to dismiss, the Firm engaged in a nationwide investigation, assembling information concerning the allegedly fraudulent conduct.  After successfully defeating the motion to dismiss, the Firm was actively involved in client depositions and formal discovery.  On June 2, 1998, the Court approved a settlement providing for a total recovery of $11,650,000.

(s)    In re Merrill Lynch, et al., Securities Litigation, Civil Action No. 94-5343 (DRD) (D.N.J.).  The Firm led an effort to effect a recovery for a class of investors who purchased or sold NASDAQ securities through three large brokerage houses without knowing the brokerage houses executed the trades using the National Best Bid and Offer prices (the "NBBO") and, further, without the brokerage houses telling the customers of the reasonable availability of better prices through Instinet and SelectNet.   The three brokerage houses executed trades for themselves and favored customers on the same superior systems without disclosing they were doing so to ordinary investors. After the District Court granted summary judgment on a limited record against the plaintiffs, see 911 F. Supp. 754 (D.N.J. 1995), the Firm appealed to the United States Court of Appeals for the Third Circuit.  A three-judge panel of the Third Circuit affirmed the District Court in an opinion subsequently withdrawn and not reported.  The Firm then successfully petitioned for rehearing before the Third Circuit *en banc*.  Following the *en banc* hearing before ten of the then twelve judges of the Third Circuit (two judges recused themselves) and further argument and briefing before the Third Circuit, the Third Circuit reversed the

12

summary judgment by a vote of 10 to 0.  See 135 F.3d 266 (3rd Cir. 1998).  The United States

Supreme Court denied defendants' petition for certiorari.  See 119 S.Ct. 44 (Oct. 12, 1998).  On

remand the District Court permitted the plaintiffs to add parties and extend the class period but

denied plaintiffs' motion for class certification (November 8, 1999).  The plaintiffs then moved

the Third Circuit for review of the denial pursuant to new Rule 27(f) (November 24, 1999).  The

Third Circuit granted plaintiffs' petition for review, but ultimately upheld the District Court's

opinion on other grounds.

(t)     Frank, et al. v. CenTrust Bank, et al. Securities Litigation, Consolidated Civil

Action Nos. 90-0084-Civ-Atkins, 90-0196-Civ-Atkins, 90-0683-Civ-Atkins and 90-0850-Civ-

Atkins (S.D.Fla.).  The Firm served as Co-Lead Counsel in this federal securities fraud class

action brought on behalf of investors in CenTrust Savings Bank, N.A.  This suit arose from the

"Savings and Loan" scandal of the 1980's and involved a complex web of accounting fraud in

which the Bank, its officers and its outside advisors covered up a large cache of junk bonds and a

high-stakes trading strategy used to inflate the bank's balance sheet.  In the course of litigating

this action, the Firm took a major role in organizing the review of over 6 million pages of

documents.  The Firm played the lead role in securing compensation for investors from the

Drexel Bankruptcy proceedings and the Milken Compensation fund proceedings and in settling

claims against other defendants which provided a total recovery of approximately $18.5 million.

(u)     In re Columbia Gas Securities Litigation, Consolidated Civil Action No. 91-357

(D.Del.).  The Firm was sole lead counsel in this federal securities fraud class action brought on

behalf of investors in Columbia Gas System, Inc., in connection with the defendants' alleged

misrepresentations of excess gas cost contracts which led to the company's bankruptcy in July

1991.  The Firm conducted the preparation of highly technical financial analysis and damage

13

assessments in conjunction with various expert consultants.  The Firm also conducted intensive negotiations with defense counsel involving, in addition to issues of liability and damages, legal research and evaluation as to the impact of the company's bankruptcy on the pending class action.  The Firm drafted a comprehensive Consolidated Amended Class Action Complaint and negotiated all aspects of the settlement the District Court approved on November 2, 1995, providing for a recovery of $36.5 million for the Class.

      (v)    <u>In re Paramount Communication, Inc., Class Action Litigation</u>, Consolidated Civil Action No. 13117 (Del.Ch.).  The Firm was Co-Lead Counsel in this class action which was brought on behalf of Paramount Communications, Inc. shareholders in connection with a proposed merger of Viacom, Inc. and Paramount Communications, Inc.   In successfully obtaining a preliminary injunction against the proposed merger and particular "lock-up" terms contained therein, the Firm was directly involved in coordinating and conducting extensive document and deposition discovery on an expedited basis, had primary responsibility for legal research and brief writing, and was extensively involved in preparation for oral arguments at hearings before both the Delaware Court of Chancery and the Delaware Supreme Court. Plaintiffs were successful both in obtaining an order enjoining a merger Paramount's board of directors had approved without having taken adequate care to maximize shareholder value, <u>QVC Network, Inc. v. Paramount Communications, Inc.</u>, Del. Ch., 635 A.2d 1245 (1993), and in defending that result before the Delaware Supreme Court, <u>QVC Network, Inc. v. Paramount Communications, Inc.</u>, Del. Supr., 637 A.2d 34 (1994).  As a direct consequence of the litigation, Paramount's board of directors conducted an auction of the company that ultimately resulted in a new merger agreement, the terms of which benefitted Paramount's public stockholders by

hundreds of millions of dollars over the amount they would have received had the proposed merger originally challenged by the shareholder plaintiffs been consummated.