Exhibit 7

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON DERIVATIVE LITIGATION | Civil Action No. 10-2033 (FLW) |
| IN RE JOHNSON & JOHNSON FCPA SHAREHOLDER DERIVATIVE LITIGATION | Civil Action No. 11-2511 (FLW) |
| COPELAND v. PRINCE, *et al.* | Civil Action No. 11-4993 (FLW) |

## DECLARATION OF GARY S. GRAIFMAN IN SUPPORT OF AWARD OF AGREED UPON ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES

I, GARY S. GRAIFMAN, hereby declare:

1.      I am a partner in the firm of KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C. ("KGG" hereinafter). I submit this declaration in support of the application for an award of attorneys' fees and reimbursement of expenses in connection with services rendered in the course of the litigation of the Derivative Actions (as defined in the Stipulation of Settlement, executed on July 11, 2012) on behalf of Nominal Defendant Johnson & Johnson. I am over the age of 21, have personal knowledge of the facts stated herein, and, if sworn as a witness, can competently testify to the facts stated herein.

2.      In this action, KGG acted as one of the counsel for Leslie Katz and Joan and Jeffrey Tarson who, together, jointly made the first shareholder demand upon the Johnson & Johnson Board leading up to this action. We acted as co-counsel throughout the pre-suit demand-made stage of the proceedings and in connection with the motion to intervene before this Court on behalf of the Tarsons and Mr. Katz. Thereafter, we worked together with our co-counsel

1

Abraham Fruchter & Twersy, LLP ("AFT") on the Demand Refused Verified Shareholder Derivative Complaint filed on behalf of Mr. Katz on August 29, 2011, and the motion for appointment of AFT as Lead Counsel and KGG as Liaison Counsel.  That motion was granted by the Court and on November 21, 2011, AFT was appointed Lead Counsel and KGG was appointed as Liaison Counsel for the Demand Refused Shareholders.

3.  Although we appeared formally as Liaison Counsel after the Demand Refused action commenced, in fact, KGG engaged in substantial work in the Litigation as directed by Lead Counsel, Jeffrey Abraham of AFT, during the course of this proceeding.  In addition to substantial review of documents, drafting of papers, consultations with and vetting of experts, review of documents from various other Johnson & Johnson litigation, attending the settlement meetings with Defendants' counsel and with and among Plaintiffs' Counsel, we also provided our unique perspective since, as novel and difficult issues of New Jersey law arose in various contexts, my co-counsel looked to KGG to provide the expertise, research and answers to those issues.

4.  Under the direction of AFT, my firm was centrally involved in the review and coordination of documents produced by Johnson & Johnson as the discussions moved towards settlement.  In addition, my firm played a significant role in the settlement negotiations including preparing for and attending the multiple settlement meetings with all representative parties present.

5.  As one of the counsel for the Demand Made Plaintiffs, the attorneys of my firm were involved in performing a varied number of tasks including the following, among others:  Review, revising and editing drafts of the initial Demand Letter and the Supplemental Demand Letters;  Communicating with and meeting with the Counsel for the Special Committee of the

Board;  Reviewing the documents provided by the Special Committee's counsel;  Reviewing the

background and context of the Special Committee's Report;  Researching and drafting memos

concerning the various legal issues arising in connection with the Special Committee's Report;

Review, revising and editing drafts of the Motions in Intervention;  Review, revising and editing

drafts of the Demand Refused Complaint; reviewing the facts and backup material relating to the

Demand Refused Complaint including the various history of the Johnson & Johnson Quality

Control Issues and Compliance Issues, status of the various Johnson & Johnson litigations and

governmental enforcement actions,  and corporate governance issues plaguing the Company;

reviewing and compiling exhibits to Complaint; coordinating the finalization of the Complaint

with Exhibits; signing and filing, pursuant to Fed.R.Civ. Proc Rule 11, the Demand Refused

Shareholders Derivative Complaint; arranging for service of the Complaint; attend conferences

with co-counsel to discuss and devise the litigation strategy; multiple conferences with the Court

and Court staff regarding arranging of conferences and conference calls with plaintiffs' counsel

and defense counsel; researching and reviewing issues relating to Defendants' liability including

exculpation issues, bad faith issues, statute of limitations issues, etc;  drafting document requests

(e.g., informal requests in furtherance of settlement and potential litigation drafts); preparing for

and participating in the multiple settlement meetings and conference calls with Plaintiffs'

Counsel and Defendants' Counsel;   review and summarize assigned transcripts and exhibits in

the Texas and Louisiana trials;  Review materials produced by Defendants, including DePuy

ASR Hip Replacement documents;  Interview potential experts for due diligence issues and

governance reforms related to settlement discussions; attending and participating in meetings and

conferences with plaintiffs' experts;  reviewing reports of plaintiffs' experts and add

commentary; reviewing documents produced by defendants and compile document summaries

3

and reports; preparation and filing of Pro Hac Vice applications for co-counsel; attending and participating in conferences with Counsel for the Demand Futile Plaintiffs and in the various discussions of coordination; reviewing and commenting on settlement documents pertaining to corporate governance issues and therapeutics; reviewing, drafting, commenting on and circulating summaries of additional corporate governance reforms and terms proposed; meetings with co-counsel regarding the settlement discussions; reviewing and revising drafts of Stipulation and Agreement of Settlement and corporate governance Exhibits thereto and providing comments and edits thereto; preparation of and review and revise drafts of settlement documents for submission to Court.

6. My firm incurred a total of 749.30 hours from the inception of the Derivative Actions through August 27, 2012. The hourly rates and lodestar of the attorneys and paralegals from my firm who participated in the litigation of the Derivative Actions are as follows:

| NAME | HOURLY RATE | LODESTAR |
|------|-------------|----------|
| GARY S. GRAIFMAN (P) | $735/Hr | $423,249.75 |
| MICHAEL L. BRAUNSTEIN (SA) | $595/Hr | $61,463.50 |
| REGINALD H. RUTISHAUSER (SA) | $595/Hr | $11,483.50 |
| WILLIAM T. SCHIFFMAN (A) | $575/Hr | $2,616.25 |
| CHERIE D. CORNFIELD (PL) | $175/Hr | $8,102.50 |
| **TOTAL** | | **$506,915.50** |

(P)=Partner, (SA)= Senior Associate, (A)=Associate, (PL)=Paralegal

7. The total lodestar for work performed by counsel and paralegals in my firm equals $506,915.50. Attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent, by category, for the partners, attorneys and professional support staff of my firm who were involved in the Derivative Actions. This information was prepared from contemporaneous time records regularly maintained by my firm, which are available for *in camera* review at the Court's

4

request. Time spent in preparing this declaration in support of my firm's application for an award of fees and reimbursement of expenses, and any other time related to billing or periodic time reporting, has not been included.

8.   My firm incurred a total of $4,718.49 in unreimbursed expenses in connection with the prosecution of the Derivative Actions, broken down into categories in the chart attached hereto as Exhibit 2.

9.   The expenses incurred pertaining to this case are reflected in the books and records of my firm. These books and records are prepared from expense vouchers and check records prepared in the normal course of business, and are an accurate record of the expenses incurred.

10.   With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is a brief biography of my firm and the attorneys working on this matter. In addition to myself, the two senior attorneys at the firm working with me on this matter were Michael L. Braunstein and Reginald H. Rutishauser. Mr. Braunstein has been an attorney admitted to practice in both New Jersey and New York for over fifteen years. In addition to litigating consumer and securities class actions and shareholder derivative matters, he is a highly experience trial attorney who has tried a number of cases to verdict. Similarly, Mr. Rutishauser was admitted to practice in New York and New Jersey in 1990 and has been a practicing attorney engaged in complex litigation matter for over 20 years. (See, Exhibit 3 annexed hereto for expanded biolgraphies).

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on August 31, 2012, at Montvale, New Jersey.

Gary S. Graifman

5

# EXHIBIT 1

**JOHNSON & JOHNSON**
**SHAREHOLDER DERIVATIVE ACTION**
**KANTROWITZ, GOLDHAMER & GRAIFMAN**
**LODESTAR CATEGORY BREAKDOWN**
**PERIOD: Inception – August 27, 2012**

| Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Hours | Lodestar |
|------|---|---|---|---|---|---|---|-------|----------|
| GARY S. GRAIFMAN (P) | 87.85 | 33.40 | 85.00 | 143.20 | 133.50 | 71.40 | 21.50 | 575.85 | $423,249.75 |
| R. H. RUTISHAUSER (SA) | 19.30 | | | | | | | 19.30 | $11,483.50 |
| MICHAEL L. BRAUNSTEIN (SA) | | | | 52.50 | | 28.50 | 22.30 | 103.30 | $61,463.50 |
| WILLIAM T. SCHIFFMAN (A) | 4.55 | | | | | | | 4.55 | $2,616.25 |
| CHERIE D. CORNFIELD (PL) | | | 46.30 | | | | | 46.30 | $8,102.50 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| **TOTAL** | **111.70** | **33.40** | **131.30** | **195.70** | **133.50** | **99.90** | **43.80** | **749.30** | **$506,915.50** |

(P)  Partner
(SA) Senior Associate
(A)  Associate
(PL) Paralegal

**CATEGORIES**

1.  Investigation, research, drafting original complaints and demand letters
2.  Investigation, research, and drafting amended complaint/demand refused complaint
3.  Motion practice
4.  Discovery and investigation post filing of amended complaint/demand refused complaint
5.  Governance and compliance analysis, drafting of settlement proposals
6.  Settlement negotiation process and documentation
7.  Post settlement documentation and briefing

# EXHIBIT 2

**JOHNSON & JOHNSON**
**SHAREHOLDER DERIVATIVE ACTION**
**FIRM NAME**
**EXPENSE CATEGORY BREAKDOWN**

| CATEGORY | TOTAL |
|---|---|
| Experts | 1,925.00 |
| Travel and meals | 286.04 |
| On-line research | 1,699.96 |
| FedEx/UPS/Messenger service | 193.31 |
| Long Distance Telephone | 2.83 |
| Copying costs | 30.00 |
| Filing fees and transcripts | 567.35 |
| Miscellaneous - Fax | 14.00 |
| **TOTAL** | 4,718.49 |

# EXHIBIT 3

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
**210 Summit Avenue**
**Montvale, New Jersey 07645**
Tel: 201-391-7000
Fax: 201-307-1086
-and-
**747 Chestnut Ridge Road**
**Chestnut Ridge, New York 10977**
Tel: 845-356-2570
Fax: 845-356-4335
website: www.kgglaw.com

## THE FIRM

**KANTROWITZ, GOLDHAMER & GRAIFMAN**, is a full-service law firm (the "Firm") with offices located in Montvale, New Jersey, at 210 Summit Avenue, Montvale, New Jersey 07645 and with offices at 747 Chestnut Ridge Road, Chestnut Ridge, New York.

The Firm is managed by its four (4) partners, PAUL B. GOLDHAMER, BARRY S. KANTROWITZ, GARY S. GRAIFMAN and RANDY J. PERLMUTTER

Among the various areas of law practiced by the Firm, the Firm specializes in commercial litigation and class action litigation, which is managed by Gary S. Graifman of the Firm (see below).

The Firm has a total of twelve (12) attorneys, including the four partners. There are five (5) associates and twelve (12) support personnel (paralegals, secretaries and bookkeeping), as well as three (3) of counsel attorneys at the firm's offices. The biographical information of Gary S. Graifman, partner in charge of this matter, is set forth below.

**Gary S. Graifman, Esq.** is a partner in the firm of **KANTROWITZ, GOLDHAMER & GRAIFMAN.** Prior to joining the firm, he was a partner in the firm of ATLAS & GRAIFMAN in New York City, New York. Mr. Graifman specializes in

the area of securities and consumer class action litigation and shareholder derivative

litigation, as well as complex commercial litigation. He is admitted to practice before the

courts of the State of New York, the State of New Jersey, the United States Federal

Courts for the Southern District of New York, the Eastern District of New York, the

District of New Jersey, the United States Court of Appeals for the Second Circuit, Third

Circuit and the Eighth Circuit. He is also a member of the Class Action Committee of the

New Jersey State Bar Association. Mr. Graifman has also tried to verdict cases involving

complex business litigation and employment law. He has litigated a number of cases

resulting in reported decisions, including cases of first impression. Although Mr.

Graifman regularly represents plaintiffs in the Courts of New Jersey and New York, he

also litigates securities and consumer class actions in other jurisdictions throughout the

nation. He has been appointed lead or co-lead counsel in a number of cases which have

been successfully resolved.

In one settlement of a nationwide consumer fraud class action on behalf of 11,000

businesses who had been defrauded by the telephone company Norvergence and various

equipment leasing companies, the New Jersey Superior Court approved a partial

settlement with CIT Technology Financing, U.S. Bancorp, De Lage Laden Leasing and

two other leasing companies on June 30, 2006. The firm, Kantrowitz Goldhamer &

Graifman, was Co-Lead Counsel.

The presiding Judge, Judge Robert Coogan stated that: "The class counsel at bar

...are well qualified, they are experienced in class action litigation. Counsel have

vigorously pursued this litigation in this court, and although it's a rounded number, it has

been two years, almost.   [W]hat was shown here and what leads me to acknowledge this

is the dimension, the worthiness, the scope of the advocacy, and the overall professional presentation, both in terms of the pleadings and here in the courtroom. There's also one other thing that I think as a jurist we judges fail to take note of, but now is the appropriate time to do it, it's the concept of collegiality. Collegiality amongst yourselves, collegiality of yourselves to the Court. And then I say collegiality amongst yourselves I mean that without there being one ounce of sacrifice of the responsibility that each of you have as a litigator to advocate. There has been full advocacy here, but it's been done with a recognition of that other asset, which is collegiality. The record will confirm counsel have done it this morning, that this pursuit has been vigorous. There has been extensive document discovery conducted here, depositions were conducted. And all of that to a point prior, prior to the time of beginning the time to, process of trying to resolve the case. ... I'm satisfied that counsel who have accepted the responsibility of appearing on behalf of the named plaintiffs have fairly and adequately represented the interest of the class. Adequately I use only because that's the standard. The reality here is that it was superior work."

In another settlement of a nationwide class action against the vehicle manufacturer DaimlerChrysler, alleging defective brake assemblies for Jeep Grand Cherokees, Mr. Graifman served as co-lead counsel for the class. In approving the settlement, the Court (Hon. Jonathan N. Harris, New Jersey Super. Ct., Bergen Co.) stated: "[P]laintiffs' counsel engaged in careful and extensive research, investigation, and analysis of the facts and circumstances surrounding the conduct of defendants' business practices. I conclude that class counsel have a sufficient basis upon which to assess the strengths and weaknesses of the claims and the terms of the settlement."

Furthermore, in a matter settled in 2008 in the U.S. District Court for the Northern District of California, in which Mr. Graifman and the Firm were co-lead counsel (entitled *In re Rambus Inc. Securities Litigation*, 06-cv-4346 (N.D. Ca.)), and which involved an $18 million settlement approved by the Court in a securities fraud matter involving backdated options, U.S. District Court Judge, Jeremy Fogel, stated in approving the settlement that "[i]t appears that the class will receive more money than is typical in these types of cases, certainly in backdating cases. This is a substantial settlement. So, I am satisfied in terms of an independent review and adequacy of the settlement that it is fair and adequate." (From Transcript of Final Approval Hearing, dated May 14, 2008).

The following represent examples of class action, complex business litigation and reported cases of note **Mr. Graifman** and the firm have taken an active role in:

1. **In re Merck Shareholder Derivative Action,** ATL-L-3406-07 (N.J. Sup. Ct., Atlantic Co.) (Higbee, J.). **Mr. Graifman** and the Firm served as Co-Counsel in this Demand Refused Shareholder Derivative Action regarding the sale, marketing and eventual recall of Vioxx by Merck & Co. The matter was settled for substantial corporate operational and governance improvements. The Settlement was approved in April 2010 by Hon. Carl E. Higbee, P.J. Cv.

2. **In re Rambus Securities Inc. Litigation.,** 06-c-v4346-JF (N.D. Cal.) **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this securities class action involving allegations of backdating of options. The matter was settled for $18.33 million and approved on May 14, 2008.

3. **Lubitz, et al. v. DaimlerChrysler Corp.,** BER-L-4883-04 (New Jersey Superior Court, Bergen Co.) **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this consumer action against DaimlerChrysler Corp. The Court certified a nationwide settlement class and approved a settlement valued at $14.5 million to owners of Jeep Grand Cherokees, model years 1999 through 2004.

4. **In re: Painewebber Limited Partnership Litigation,** 94 Civ. 8547 (SHS) (S.D.N.Y.) Court approved a settlement involving a fund of approximately $200 million dollars. This suit was first initiated by KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C. and two other firms in Texas. The case later expanded to cover a multitude of other claims and was settled in a consolidated New York action.

5. **In re NICE Systems, Ltd. Securities Litigation**, Master File No. 2:01cv737 (JAG)(U.S. District Ct., D. New Jersey). **Mr. Graifman** and the Firm served as Liaison Counsel for the class in this securities fraud class action litigation which settled for $ 10 million dollars and was approved by the Court on April 7, 2003.

6. **Martinez v. District 1199J New Jersey Benefit Fund**, et al., Docket No. 97cv3381 (WJM) (U.S. District Court D. New Jersey). **Mr. Graifman** and the Firm served as Lead Counsel in certified class action against Union Benefit Fund in which claims alleging violation of ERISA were upheld. The case was fully litigated to final judgment for the plaintiff class and thereafter, upon execution on the judgment was satisfied with full payment being made to reimburse class members 100% of their losses (Union Members received full reimbursement for all medical bills paid out-of-pocket during the class period).

7. **In re Pharmaprint, Inc. Securities Litigation**, Master File No. 00cv61 (JAP) (U.S. District Ct., D. New Jersey). Firm was Co-Lead Counsel for the plaintiff class in this securities fraud class action which settled for $ 2.3 million dollars in connection with claims against this out of business company.

8. **Birenbaum v. John Hancock Mutual Life Ins. Co.**, L-1957-96 (N.J. Superior Court, Essex Co.). **Mr. Graifman** and the Firm served as Co-Counsel for the class in this securities fraud class action certified and settled as a nationwide class action in New Jersey State Court.

9. **Maizes & Maizes, et al. v. Apple Computer, Inc.**, et al. L-13780-95 (N.J. Superior Court, Essex Co.). **Mr. Graifman** and the Firm served as Liaison Counsel in consumer fraud class action pending in New Jersey State Court alleging misrepresentation in the sale of computer monitors by various computer monitor distributors. The action was related to In re: Computer Monitor, Proceeding No. 3158, pending in California Superior, San Francisco County. Joint efforts of negotiation resulted in a settlement which was approved by the California Court. The settlement was valued in excess of $15 million dollars.

10. **Goldberg v. IDM Environmental**, L-11783-96 (N.J. Superior Court, Middlesex Co. 1966) Securities fraud class action in New Jersey state court. Settlement included payment of $1.125 million to nationwide claims of shareholders.

11. **Amplidyne, Inc. Securities Litigation**, 99-4468 (D. New Jersey). Securities fraud class action litigation settled, alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934.

12. **In re: Anadigics Securities Litigation**, 98 Civ. 917 (MLC) (D.N.J.) Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. The action was settled for approximate $11.75 million dollars.

13. **In re: Interactive Network, Inc. Securities Litigation** (Civ. Action No. 95-0026 (DLJ) (N.D. Cal.). Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. Nationwide class certified in connection with settlement in the sum of $1.9 million dollars.

14. **In re: Delgratia Mining Corp. Securities Litigation**, MDL Dock. No. 1201 (D. Nev.). Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. Nationwide class action settled for stock of defendant and distribution of a cash payment.

15. **Feiner v. Orange & Rockland Utilities, Inc.**, 862 F. Supp. 1084, RICO Bus. Disp. Guide 8672 (S.D.N.Y., Sept. 8, 1994) (No. 93 Civ. 5796 (CLB) (filed as class action on behalf of ratepayers of utility) (settled on appeal before the Second Circuit).

16. **Dakota Industries, Inc. v. Ever Best Ltd.**, 38 F.3d 910, 31 U.S.P.Q.2d 1355 (8th Cir. (S.D.), July 8, 1994) (No. 93-2723, 93-2765). In this trademark infringement matter, **Mr. Graifman** and the Firm served as lead trial counsel for the defendant, a nationwide jeans distributor. After a three week trial in Sioux Falls, South Dakota, the jury returned a verdict for defendant.

17. **Nu-Life Const. Corp. v. Board of Educ. of City of New York**, 809 F.Supp. 171, 80 Ed. Law Rep. 568 (E.D.N.Y., Nov. 14, 1992) (No. Civ-86-0807) (ADS)). In this major RICO action based on wire fraud, mail fraud and violations of the Hobbs Act, **Mr. Graifman** and the Firm served as sole trial counsel for plaintiffs who alleged that they were subjected to extortion demands by various school construction authority supervisors and inspectors. After a six week jury trial before Judge Spatt, one plaintiff procured a partial settlement and the other received a verdict on their RICO claims against the respective school inspectorial staff members.

18. **Nu-Life Const. Corp. v. Board of Educ. of City of New York, Div. of School Bldgs. of Bd. of Educ. of City of New York**, 795 F.Supp. 602, RICO Bus. Disp. Guide 8035 (E.D.N.Y., June 16, 1992) (No. CV-86-0807 (ADS)). See above description.

19. **Nu-Life Const. Corp. v. Board of Educ. of City of New York**, 789 F.Supp. 103, 75 Ed. Law Rep. 1009, RICO Bus. Disp. Guide 7885 (E.D.N.Y., Dec. 2, 1991) (No. CV-86-0807 (ADS)). See above description.

20. **Dakota Industries, Inc. v. Ever Best Ltd.**, 944 F.2d 438, 20 U.S.P.Q.2d 1158 (8th Cir. (S.D.), Sept. 12, 1991) (No. 91-1036).

21. **Elliot Gould v. Ladenberg Thalman**, 1990 WL 209641, Fed. Sec. L. Rep. P. 95, 667 (S.D.N.Y., Dec. 17, 1990) (No. 90 Civ. 4140 (MBM)). Securities fraud

claims litigated on behalf of Elliot Gould against former financial advisors. Case settled before trial.

22. **Sablosky v. Edward S. Gordon Co., Inc.**, 73 N.Y.2d 133, 535 N.E.2d 643, 538 N.Y.S.2d 513, 4 IER Cases 1315 (N.Y., Feb. 21, 1989) (No. 32). Reported case decided by New York Court of Appeals which concerned the scope of contractual obligations and enforcement thereof.

23. **SSH Co., Ltd. v. Shearson Lehman Bros. Inc.**, 678 F.Supp. 1055, Blue Sky L. Rep. P. 72, 695, Fed. Sec. L. Rep. P. 93, 647 (S.D.N.Y., Dec. 24, 1987) (No. 86 Civ 5981 (PNL)).

24. **Stephano v. News Group Publications, Inc.**, 64 N.Y.2d 174, 474 N.E.2d 580, 485 N.Y.S.2d 220, 11 Media L. Rep. 1303 (N.Y., Dec. 20, 1984). **Mr. Graifman** litigated this case defining the parameters of right of privacy and right of publicity in the State of New York.

25. **Brooke Shields v. Garry Gross**, 58 N.Y.2d 338, 448 N.E.2d 108, 461 N.Y.S.2d 254, 9 Media L. Rep. 1466 (N.Y., Mar. 29, 1983). **Mr. Graifman** represented fashion photographer, Gary Gross, sued by Brooke Shields relating to scope of the right of privacy and right of publicity in New York. This case of first impression was decided by the New York Court of Appeals, which affirmed the original trial court judgment in favor of photographer.

## IX.    Articles and Publications

*Supreme Court Decision in Concepcion v. AT&T: Another Blow To Consumers* By Gary S. Graifman, U.S. Politics Today, (2011), link: http://uspolitics.einnews.com/247pr/212419

Quoted in "The Haggler" Column, entitled: *"How Did This Become A Commitment"* By David Segal, *The New York Sunday Times,* Oct. 15, 2011 (regarding McNair v. Synapse Group Co. litigation), link: http://www.nytimes.com/2011/10/16/your-money/automatic-magazine-renewal-and-automated-voices.html;

*Arbitration Clauses and Class Action Bans: Should Defendants Be Careful Of What They Wish For*? by Gary S. Graifman, Alan E. Kraus and Joan E. Karn; (N.J. Institute for Continuing Legal Education 2007) Handout Materials for "Hot Topics In Class Actions" seminar for New Jersey ICLE;

*Negotiating A Commercial Lease-- From the Tenant's Vantage*, Gary S. Graifman, "The Rockland Business Digest," Vol 1, Issue 5, April 2007;

*CCA Treated Wood-- An Emerging Toxic Tort?* By Gary S. Graifman (American Conference Institute 2003) Handout Materials for "Toxic Tort Litigation, Successful Claims and Litigation Strategy" Seminars Conducted March 2003 by American Conference Institute;

*Dealing With Infants In The Modeling Industry-- A Primer for Adults*, by Gary S. Graifman, "Journal of Art And The Law Journal," Vol. 8, No. 1, 1983 (Jointly Published by Columbia University School of Law and Volunteer Lawyers for the Arts).

**Michael L. Braunstein, Esq.** is a senior associate in the firm of Kantrowitz, Goldhamer & Graifman, P.C.  Mr. Braunstein is a graduate of the University of Maryland and St. John's School of Law and was admitted to practice before the Courts of New York in 1997 and thereafter in New Jersey State Court, the United States District Courts for the Eastern District of New York, Southern District of New York and the District of New Jersey.

Mr. Braunstein is an experienced trial lawyer with a number of verdicts to his credit.  His practice is focused primarily in the areas of complex litigation, including securities and consumer class actions, shareholder derivative litigation, and business law. Mr. Braunstein has litigated cases, including class action litigation, Mortgage Industry Regulatory compliance, RESPA regulations, HUD representation and related matters.  He was recently the lead attorney in a consumer class action against Best Buy Stores, L.P. which was certified in the Southern District of New York (McMahon, J.) (See, *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. March 16, 2009) and settled approximately one month in advance of commencing a jury trial in the matter earlier this year (2012).

Mr. Braunstein has also worked on several significant cases including the collapse of 7 World Trade Center following 9/11, the constitutionality of a New York City's Adult

Establishment zoning ordinance, as well as numerous catastrophic injury and wrongful

death cases and multi-million dollar property damage cases.

**Randy J. Perlmutter, Esq.** is a partner with the firm of **KANTROWITZ,**

**GOLDHAMER & GRAIFMAN.**  Mr. Perlmutter is a graduate of the University of

Massachusetts at Amherst and New York Law School, where he was an Articles Editor

for the New York Law School of International Comparative Law Journal of International

Comparative Law and a member of the Moot Court Association.  Mr. Perlmutter returns

to New York Law School annually as a Judge of various moot court competitions

including the Robert Wagner Labor & Employment National Competition.  Mr.

Perlmutter started his career as a Regional Director and Human Resources Manager of a

large retail corporation.  Mr. Perlmutter also worked for in-house counsel at a high end

women's fashion company where he regularly advised upper management and field

management on policies, practices and procedures related to employment matters.   Mr.

Perlmutter practices in the areas of commercial litigation and employment law.   He is a

member of the Human Resources Committee with the Commerce and Industry

Association of New Jersey, where he has been a recent lecturer.

**Reginald H. Rutishauser, Esq.,** is a senior associate in the firm of

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**  Mr. Rutishauser is primarily

a litigator and appellate advocate at the firm who has assisted in the prosecution of

various class actions.  He is admitted to practice before the Courts of New York State,

New Jersey, and the United States District Courts for the Eastern District of New York,

the Southern District of New York, and the District of New Jersey, as well as the United

States Court of Appeals for the Second Circuit.  Mr. Rutishauser was admitted as a

Certified Public Accountant in the State of New Jersey.  He has a Masters of Science

Degree in Taxation from Pace University, and a Bachelors of Arts degree from Colgate

University.  He is a member of the Rockland County Bar Association.

Mr. Rutishauser is involved in the Firm's consumer and securities class action and shareholder derivative action practice.

**William T. Schiffman, Esq.**, received his J.D. degree from Brooklyn Law School, 1974 and is admitted to practice in New York (1975), Texas (1976), and New Jersey (1981).

Mr. Schiffman was Law Clerk to the Honorable Woodrow Seals, United States District Judge, Southern District of Texas from 1974-1977. In that position Mr. Schiffman was responsible for preparing decisions and orders on motions as well as observing trials and assisting Judge Seals in preparing finds of fact and conclusions of law.

From 1977-1979, Mr. Schiffman was associated with the law firm of Urban & Coolidge in Houston Texas. Mr. Schiffman's principal practice area was commercial litigation.

From 1979 to 1985, Mr. Schiffman was an attorney for AT&T, first in the Long Lines Department in Atlanta, Georgia, and then in company headquarters in New Jersey. Mr. Schiffman's responsibilities principally in the area of general litigation and the AT&T antitrust litigation prior to divestiture.

From 1985 to 1993, Mr. Schiffman was with the law firm of Jacob & Meyers, first as the managing attorney of several offices, then as New Jersey resident partner in charge of the northern New Jersey offices. The practice was principally in the area of litigation.

From 1993 to date, Mr. Schiffman has been associated with Kantrowitz & Goldhamer, P.C., in New York, and its affiliate, Kantrowitz & Goldhamer in New Jersey. Mr. Schiffman's responsibilities are principally in the area of litigation including securities and employment class action, as well as complex contested matrimonial and general commercial litigation.