# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON DERIVATIVE LITIGATION | Civil Action No. 10-2033 (FLW) |
| IN RE JOHNSON & JOHNSON FCPA SHAREHOLDER DERIVATIVE LITIGATION | Civil Action No. 11-2511 (FLW) |
| COPELAND v. PRINCE, ET AL. | Civil Action No. 11-4993 (FLW)<br><br>Judge Freda L. Wolfson<br>Date: September 28, 2012<br>Time: 10:00 a.m.<br>Courtroom: 5E |

## SUPPLEMENTAL OBJECTION OF MARK G. PETRI

Theodore H. Frank (*pro hac vice*)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tedfrank@gmail.com

David M. Nieporent
SAMUEL & STEIN
38 West 32nd Street, Suite 1110
New York, NY 10001
Phone: (212) 563-9884
Fax: (212) 563-9870
Email: dnieporent@samuelandstein.com

Attorneys for Objector Petri

# Table of Contents

Table of Contents..................................................................................................................ii

Table of Authorities ............................................................................................................iii

Introduction ..........................................................................................................................1

Argument ...............................................................................................................................3

I.   Plaintiffs Have the Burden of Demonstrating Shareholder Benefit............................3

II.  Plaintiffs Have Failed to Demonstrate Shareholder Benefit Because the *Ipse Dixit* Assertions of Their Experts Are Not Competent Evidence.................4

III. The Settlement Does Not Confer a "Substantial Benefit" Under *Mills* or *Zucker*....................................................................................................................9

IV.  The Attorneys' Fee Request Is Impermissibly Disproportionate to the Benefit. ....................................................................................................................10

V.   In the Alternative, a Multiplier Greater Than One Is Inappropriate....................17

Conclusion...........................................................................................................................20

Certificate of Service .........................................................................................................23

# Table of Authorities

<u>**Cases**</u>

*Bridgeway Corp. v. Citibank,*
    201 F.3d 134 (2d Cir. 2000)........................................................................8

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993) .................................................................................8

*Camden I Condominium Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ..............................................................11

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ..........................................................................17-18

*Cooperstock v. Pennwalt Corp.,*
    820 F. Supp. 921 (E.D. Pa. 1993).........................................................17

*Daubert v. Merrell Dow Pharmaceuticals,*
    509 U.S. 579 (1993) .........................................................1, 4-5, 7

*Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.,*
    2011 U.S. Dist. LEXIS 148751 (D.N.J. Dec. 28, 2011).......................14

*Evans v. Port Auth. of N.Y. & N.J.,*
    273 F.3d 346 (3d Cir. 2001)...........................................................11, 16

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ...............................................................................13

*Felzen v. Andreas,*
    134 F.3d 873 (7th Cir. 1998),
    *aff'd by an equally divided Court, California Pub. Employees' Retirement Sys. v.*
    *Felzen,* 525 U.S. 315 (1999) ..................................................................2

*General Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) .................................................................................4

*Gonzalez v. S. Wine & Spirits of Am., Inc.,*
    2012 U.S. Dist. LEXIS 46401 (C.D. Cal. Mar. 29, 2012) ...............18-19

*Grunin v. International House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) ..................................................................3

*Gunter v. Ridgewood Energy Corp.,*
    223 F.3d 190 (3d Cir. 2000)...........................................................19-20

*Hayes v. Douglas Dynamics, Inc.,*
    8 F.3d 88 (1st Cir. 1993) ......................................................................8

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .................................................................12-13, 15

*Hoffman-La Roche Inc. v. Apotex Inc.,*
    2012 U.S. Dist. LEXIS 64382 (D.N.J. May 7, 2012)..............................8

*Holmes v. Continental Can Co.,*
    706 F.2d 1144 (11th Cir. 1983) .........................................................3-4

*In re Aqua Dots Prod. Liab. Litig.,*
    654 F.3d 748 (7th Cir. 2011) ..............................................................14

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ...............................................12-13, 17-18

*In re Brand Name Prescription Drugs Antitrust Litigation,*
    1999 U.S. Dist. LEXIS 550 (N.D. Ill. Jan. 19, 1999),
    *aff'd on other grounds,* 186 F.3d 781 (7th Cir. 1999) ..........................4

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001).................................................................13

*In re Cendant Corp. Prides Litig.,*
    243 F.3d 722 (3d Cir. 2001).................................................................12

*In re Cendant Corp. Sec. Litig.,*
    404 F.3d 173 (3d Cir. 2005).................................................................14

*In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995)......................................3, 5, 11-12, 14, 17-18

*In re Heritage Bond Litig.,*
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. Jun. 10, 2005) .......................14

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) .................................................................... 3

*In re Party City Secs. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999) .................................................................. 14

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ............................................................ 18-19

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ............................................................ 12-13

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .................................................................. 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    779 F. Supp. 1063 (D. Ariz. 1990),
    *rev'd on other grounds*, 19 F.3d 1291 (9th Cir. 1994) ................................ 15

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
    426 F.3d 694 (3d Cir. 2005) .................................................... 10-11, 14

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................ 5, 7

*Lambrecht v. Taurel*,
    2010 U.S. Dist. LEXIS 75633 (S.D. Ind. Jun. 8, 2010) ........................ 19

*Loughner v. Univ. of Pittsburgh*,
    260 F.3d 173 (3d Cir. 2001) .................................................................. 15

*Lowery v. Circuit City Stores, Inc.*,
    158 F.3d 742 (4th Cir. 1998),
    *rev'd on other grounds* 527 U.S. 1031 (1999) .................................. 15-16

*Major League Baseball Properties v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008) .................................................................... 8

*McKenna v. City. of Philadelphia*,
    582 F.3d 447 (3d Cir. 2009) .................................................................. 15

*Merola v. Atlantic Richfield Co.*,
    515 F.2d 165 (3d Cir. 1975) .................................................................... 9

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (1970) ............................................................... 2, 9-10, 18, 21

*Oddi  v. Ford Motor Co.,*
    234 F.3d 136 (3d Cir. 2000) ................................................................ 5

*Pawlak v. Greenawalt,*
    713 F.2d 972 (3d Cir. 1983) ............................................................... 17

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
    483 U.S. 711 (1987) ......................................................................... 18

*Perdue v. Kenny A.,*
    130 S. Ct. 1662 (2010) ................................................................. 18-19

*Perry v. FleetBoston Fin. Corp.,*
    229 F.R.D. 105 (E.D. Pa. 2005) ......................................................... 17

*Petruzzi's Inc. v. Darling-Delaware Co.,*
    983 F. Supp. 595 (M.D. Pa. 1996) ................................................. 16-18

*Pineda v. Ford Motor Co.,*
    520 F.3d 237 (3d Cir. 2008) ............................................................ 4-5

*Rawlings v. Prudential-Bache Properties,*
    9 F.3d 513 (6th Cir. 1993) ........................................................... 12-13

*Reckitt Benckiser Inc. v. Tris Pharma, Inc.,*
    2011 U.S. Dist. LEXIS 146658 (D.N.J. Dec. 20, 2011) .......................... 8

*Saldana v. Kmart Corp.,*
    260 F.3d 228 (3d Cir. 2001) ............................................................... 8

*Sitrick v. Dreamworks, LLC,*
    516 F.3d 993 (Fed. Cir. 2008) ........................................................... 8

*Sobel v. Hertz,*
    2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ..................... 12-13

*Swedish Hosp. Corp. v. Shalala,*
    1 F.3d 1261 (D.C. Cir. 1993) ............................................................ 11

*Unite Nat'l Ret. Fund v. Watts,*
　　2005 U.S. Dist. LEXIS 26246 (D. N.J. Oct. 27, 2005) ..........................................19

*United States v. Mornan,*
　　413 F.3d 372 (3d Cir. 2006) ...................................................................................5

*Wade v. Colaner,*
　　2010 U.S. Dist. LEXIS 138518 (D. N.J. Dec. 28, 2010).........................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
　　396 F.3d 96 (2d Cir. 2005).......................................................................................11

*Weeks v. Kellogg Co.,*
　　2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .............................18-19

*Weinberger v. Great N. Nekoosa Corp.,*
　　925 F.2d 518 (1st Cir. 1991)....................................................................................11

*Weinberger v. Great N. Nekoosa Corp.,*
　　801 F. Supp. 804 (D. Me. 1992) ......................................................................10, 16

*Weisgram v. Marley Co.,*
　　528 U.S. 440 (2000) ..................................................................................................8

*Zucker v. Westinghouse Elec. Corp.,*
　　265 F.3d 171 (3d Cir. 2001).........................................................................9-10, 21

<u>Rules and Statutes</u>

42 U.S.C. § 1988 ..........................................................................................................18

Fed. R. Civ. Proc. 23(h) ...............................................................................................18

Fed. R. Civ. Proc. 23.1(a) .....................................................................................1-2, 21

Fed. R. Evid. 702..........................................................................................................4-5

<u>Other Authorities</u>

AMERICAN LAW INSTITUTE,
　　PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010) ........................3

Erickson, Jessica, *Corporate Governance in the Courtroom: An Empirical Analysis*,
  51 WM. & MARY L. REV. 1749 (2010)...........................................................3, 19-20

Fisher, Daniel, "Lawyer Fights $10 Million Fee For 'Cosmetic' Johnson And
  Johnson Settlement," Forbes.com (Sep. 4, 2012)...................................................21

4 *Newberg on Class Actions* § 11:42 (4th ed. 2009)...................................................3

Silver, Charles, *Due Process and the Lodestar Method: You Can't Get There From Here*,
  74 Tul. L. Rev. 1809 (2000) ..............................................................................11-12

Third Circuit Task Force, *Court Awarded Attorney Fees*,
  108 F.R.D. 237 (1985) ........................................................................................11

## Introduction

Petri's initial objection was filed on August 31, before plaintiffs' briefing in support of the settlement and fees was filed the same day. He files this supplement to address plaintiffs' arguments in support of their fees.

Simply put, plaintiffs have provided nothing to this Court that refutes Petri's initial objection that the settlement is designed to benefit the attorneys, rather than the shareholders, and thus the derivative suit cannot be maintained under Fed. R. Civ. Proc. 23.1(a). While plaintiffs claim the settlement provides benefit to shareholders, they provide no competent evidence in support of this proposition, relying solely on the *ipse dixit* assertions of two experts. Such evidence would be relevant if the question was whether adopting the corporate governance changes was a legitimate exercise of the business judgment of J&J directors and officers, but it does not meet the *Daubert* standard for proving shareholder *benefit*. The question of shareholder benefit is an empirical question, able to be measured by event studies; as the expert declarations of Professor M. Todd Henderson and Professor Katherine Litvak demonstrate, an event study is the only scientifically reliable means of measuring shareholder benefit from a corporate governance change. Plaintiffs have provided no such evidence, either from a specific event study relating to J&J, or from academic literature reviewing similar governance changes. As such, they have failed to meet their burden of proving shareholder benefit; furthermore, they have failed to meet their burden of demonstrating that they are adequate representatives of the shareholders. Dismissal is the appropriate remedy.

This is not a case where plaintiffs' investigatory skills uncovered wrongdoing that harmed shareholders; instead, plaintiffs have taken a free ride off of J&J's self-disclosures and government press releases, and threaten to cause millions of dollars of litigation expense to J&J if they do not pay the plaintiffs' attorneys. Such strike suits harm, rather than benefit shareholders. *See generally Felzen v. Andreas*, 134 F.3d 873, 876 (7th Cir. 1998) (citing academic literature). This abuse of the legal system should not be rewarded with multi-million-dollar payoffs to the attorneys.

If the Court is unwilling to dismiss these actions with prejudice under Rule 23.1(a), Petri does not object to settlement approval as the least worst alternative for shareholders. But plaintiffs' counsel have not justified their request for a $10.45 million award given the non-existent benefit to shareholders. As plaintiffs themselves acknowledge, counsel in a derivative action are entitled to an award of reasonable fees, only upon conferring a "substantial benefit" to the corporation. Memorandum in Support of Final Approval and Fees ("Final Approval Mem.") (10-2033 Dkt. No. 192-1) at 29 (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970)).

But as *Mills* notes, "[a] substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." 396 U.S. at 396 (internal quotation omitted). Plaintiffs cannot meet this test, even if one were to credit the conclusory expert reports.

Plaintiffs are not entitled to their full lodestar—an amount that would imply actual litigation success—much less a multiplier. The request for $10.45 million can

only be justified by looking at extreme cases at the tail end of the curve; the typical award for a token nuisance settlement like this one is not even a twentieth of that figure. In "cases in which the only consideration for the settlement was the reform of corporate governance policies, the median fees were a fraction of this amount at $460,000." Jessica Erickson, "Corporate Governance in the Courtroom: An Empirical Analysis," 51 WM. & MARY L. REV. 1749, 1806 (2010) (empirical study of universe of shareholder derivative suits). Under no circumstances should the multiplier be greater than one.

## Argument

### I.    Plaintiffs Have the Burden of Demonstrating Shareholder Benefit.

As an initial matter, the settling parties have the burden of proving that the settlement fairly benefits shareholders; it is not a matter that can be presumed. A "court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3d Cir. 1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)); *accord In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010) ("the burden is on the settlement proponents to persuade the court that the agreement is fair, reasonable, and adequate for the absent class members who are to be bound by the settlement" (*citing* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05(c) (2010) *and* 4 Newberg on Class Actions § 11:42 (4th ed. 2009))); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147

(11th Cir. 1983) ("Proponents of class action settlements bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate.").

## II.     Plaintiffs Have Failed to Demonstrate Shareholder Benefit Because the *Ipse Dixit* Assertions of Their Experts Are Not Competent Evidence.

The only evidence plaintiffs proffer in support of a finding of settlement benefit is the expert reports of Mr. Pitt and Dr. Glass. But their conclusions in this case are entirely *ipse dixit* assertions and speculations. As the expert declarations of Professors M. Todd Henderson and Katherine Litvak show, these are not reliable methods for demonstrating shareholder benefit. While Mr. Pitt and Dr. Glass have eminent qualifications, eminent qualifications are insufficient to produce admissible expert testimony: it is appropriate to exclude the testimony of a Nobel Prize winner if his or her underlying methodology is unreliable. *In re Brand Name Prescription Drugs Antitrust Litigation*, 1999 U.S. Dist. LEXIS 550 (N.D. Ill. Jan. 19, 1999) (excluding testimony of Nobel Prize-winning economist Robert Lucas when opinions not based on evidence), *aff'd on other grounds*, 186 F.3d 781 (7th Cir. 1999); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

A trial court has the obligation as gatekeeper to determine if expert testimony is reliable and therefore admissible under Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Pineda v. Ford Motor Co.*, 520 F.3d

237, 243 (3d Cir. 2008). An expert's opinion should be excluded if it is unreliable. *Pineda,* 520 F.3d at 247. The trial court "has an obligation to evaluate the reliability of expert testimony 'where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question.'" *U.S. v. Mornan*, 413 F.3d 372, 380 (3d Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999)). This is true even when adjudicating a class action settlement. *See, e.g., GM Pickup*, 55 F.3d at 807-808 (discussing unreliable methodology used by expert in that case in rejecting assertion of settlement value).

Expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. . . ." Fed. R. Evid. 702. The party seeking to introduce the expert testimony bears the burden of establishing its admissibility. *Daubert*, 509 U.S. at 592 n.10; *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000). The *Daubert* standard requiring expert reliability applies to experts opining on economic issues like Pitt and Glass. *Kumho Tire Co.*, 526 U.S. at 147.

The reliable principles and methods for demonstrating benefit to shareholders from a corporate governance change is an event study demonstrating how shareholders react to such corporate governance changes. To quote Professor Henderson's thorough report:

> [T]he impact of governance changes is something that can be measured scientifically and systematically using modern techniques of econometrics. All that is required to prove shareholders will receive value from changes is to measure how shareholders react when the changes are announced. If

shareholders expect to receive value from the changes going forward, the price of the firm's shares should increase to reflect the value from the change.  If shareholders expect the changes to have no value, the stock price will remain unchanged. And if the shareholders expect the changes to destroy shareholder value, then the stock price will fall when the changes are announced. In short, the value of a corporate governance reform is an empirical question that can be measured by examining changes to the stock market valuation of the firm in question. This is the state-of-the-art technique for measuring the value of changes to corporate governance in the social sciences, and any other methodology for assessing value is merely guesswork. For instance, as a referee for two leading, peer-review law journals that routinely publish articles assessing the value of laws, policies, or governance changes, I can say that a paper making an argument about shareholder value without offering empirical evidence would be recommended for rejection on that basis alone.

The basic technique for measuring shareholder value is the "event study" of shareholder reaction to an event. In an event study, an "event," like a change in the law or a firm decision (such as to merge, to incorporate in a particular state, to hire a particular CEO, or to enact a governance change) is isolated from other news or information that might impact a firm's stock price. Once other factors that could influence a firm's stock price (such as market-wide forces, like unemployment numbers) are accounted for, the change in the stock price (and thus market value of the firm) can be determined by comparing the stock price before the event and the stock price after the event. The logic is straightforward: if a governance change will make shareholders better off, when investors hear about the change, they should value the stock more than they did before they heard about the change, and therefore demand at a given price should increase, thus driving up the price. Both theory and hundreds of academic papers support this logic, finding statistically significant changes from even relatively small changes in firm policy.

Henderson Report 5-7 (footnotes omitted). Henderson continues:

> The scientific basis for the methodology is not in dispute. According to a leading academic survey of the event study literature:
>
> > The event study methodology is well-accepted and extensively used in finance. Event study results have been used in several hundred scholarly articles in leading academic finance journals to analyze corporate finance issues, such as stock repurchases and stock splits and the relation between stock prices and accounting information, by examining the impact of earnings releases.
> >
> > This survey concludes that "the benchmark for evaluating the benefit of corporate and securities laws is whether they improve investor welfare, and this can be ascertained by what event studies measure, whether stock prices have been positively affected."

*Id.* at 11 (footnotes and internal citations omitted). *Accord* Declaration of Katherine Litvak.

Mr. Pitt and Dr. Glass do not perform an event study or even cite to one from the literature. (Little wonder: though economists have found benefits from other corporate governance changes (Henderson Rep. 11-17), there is nothing in the academic literature supporting a finding of benefit from the changes in this settlement. Litvak Decl. ¶¶ 11-26; Henderson Rep. 21.) Rather, they argue from authority, and ask this Court to accept their speculative assertions as true despite the absence of empirical evidence supporting them.

Such *ipse dixit* assertions would not pass muster in peer-reviewed economic literature. Henderson Rep. 11; Litvak Decl. ¶ 18. And, after *Daubert* and *Kumho Tire*, it

does not pass muster in federal court, either. *See also Sitrick v. Dreamworks, LLC,* 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact"); *Major League Baseball Properties v. Salvino, Inc.,* 542 F.3d 290, 311 (2d Cir. 2008) (conclusory expert opinion not admissible); *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 142 (2d Cir. 2000) (same); *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 92 (1st Cir. 1993) ("an expert opinion must be more than a conclusory assertion about ultimate legal issues"); *accord Hoffman-La Roche Inc. v. Apotex Inc.,* 2012 U.S. Dist. LEXIS 64382 (D.N.J. May 7, 2012); *see also Saldana v. Kmart Corp.,* 260 F.3d 228, 233 (3d Cir. 2001) ("District Court properly found" conclusory statements of expert inadmissible); *Reckitt Benckiser Inc. v. Tris Pharma, Inc.,* 2011 U.S. Dist. LEXIS 146658 (D.N.J. Dec. 20, 2011) (Wolfson, J.) ("conclusory statement" and other lack of "scientific acceptability" leads to finding that expert "unable to opine" and create factual dispute).

In short, Mr. Pitt and Dr. Glass are, in the absence of empirical evidence, simply speculating. Expert testimony that is speculative is not competent proof and contributes "nothing to a 'legally sufficient evidentiary basis.'" *Weisgram v. Marley Co.,* 528 U.S. 440, 445, 454 (2000) (*citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242 (1993)). "Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Group Ltd.,* 509 U.S. at 242.

As discussed in Petri's initial objection, when the settlement in this case was announced, J&J stock dropped relative to the larger market. Declaration of Theodore H. Frank ¶¶ 10-11. The stock price drop, by itself, is not dispositive evidence that the settlement harms shareholders; Petri has not performed an event study, and there may

have been other reasons for the stock to drop relative to the larger market. But given that plaintiffs have the burden of proving shareholder benefit, plaintiffs need to provide competent econometric expert evidence why, if the settlement is beneficial to shareholders, the market does not appear to think so.

Plaintiffs' evidence here fails because of the lack of "informed economic judgment" pertaining to the settlement that is needed for "assessing its value." *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 172 (3d Cir. 1975). Because plaintiffs have failed to meet their burden of proving settlement benefit, the Court must value the proposed benefits at zero. Because the plaintiffs have negotiated a settlement that provides $10.45 million of benefit to the attorneys with zero benefit to shareholders, they do not adequate represent the interests of shareholders, and cannot maintain this litigation.

## III.   The Settlement Does Not Confer a "Substantial Benefit" Under *Mills* or *Zucker.*

Even if the Court were to credit the expert reports, their conclusions do not rise to the legal threshold of a "substantial benefit" meriting a fee award under *Mills.* "A substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Mills,* 396 U.S. at 396 (internal quotation omitted). None of the relief here "corrects or prevents" the sort of abuses *Mills* was concerned about; the corporate governance changes will not stop any

breach of fiduciary duty; not only is there no showing that the tweaking of the emphasis on compliance will improve compliance results, there is no showing that the tweaking of the emphasis on compliance will increase shareholder value.

Under Third Circuit law, the benefit must derive from the "institution and settlement of the derivative litigation as contrasted with the mere settlement of the litigation." *See Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171, 177-78 (3d Cir. 2001) (reversing $582,443.44 fee award and remanding for "purpose of entering an order denying" fees); *Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804, 811 (D. Me. 1992) (denying fee application entirely where court found no showing of material benefit to shareholders). The benefit, moreover, must exceed the litigation costs that the company has incurred. *Zucker*, 265 F.3d at 177. Here, the only benefit of the settlement is that it stops the bleeding caused by plaintiffs' institution of the litigation. This is indeed a benefit, but not the sort of benefit that merits fees under *Mills* and *Zucker*. Thus, the sort of technical cosmetic tweaks to corporate governance in this settlement does not confer a "substantial benefit," and there is no basis for fees under *Mills* and *Zucker*.

## IV.   The Attorneys' Fee Request Is Impermissibly Disproportionate to the Benefit.

Assuming *arguendo* that there exists a substantial benefit that can ground an award of attorneys' fees, no method of calculation could legitimately arrive the court at the $10 million dollar figure that the plaintiffs seek. "A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it

claims are reasonable." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005). "In reviewing a fee application, a district court must conduct 'a thorough and searching analysis.'" *Id.* (quoting *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001)). "Such an analysis is essential" to allowing the Third Circuit to engage in meaningful appellate review. *Interfaith Cmty. Org.*, 426 F.3d at 703.

This is especially true where, as here, there is a "clear sailing" clause precluding the defendant from challenging the fee request and thus requiring the Court to provide additional scrutiny of what is effectively an *ex parte* submission. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F. 2d 518, 524-25 (1st Cir. 1991) (defendant's "agreement not to contest fees up to a stated maximum exacerbated the potential conflict of interest between the plaintiff class and class counsel") ("the inclusion of a clear sailing clause in a fee application should put a court on its guard").

Plaintiffs have failed to meet their burden of reasonableness in their request for $10.45 million in fees and costs.

The two primary methodologies employed are the percentage-of-recovery ("POR") method and the lodestar method. Owing to POR's natural tendency to align attorney incentives with maximizing class benefit, the widespread consensus is that the POR is superior to the lodestar method. *GM Pickup*, 55 F.3d at 821 (observing "the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests."); Third Circuit Task Force, *Court Awarded Attorneys Fees*, 108 F.R.D 237, 246-49 (1985); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265-71 (D.C. Cir. 1993); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). *See generally* Charles Silver,

*Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach").

The Third Circuit allows a good measure of discretion to district courts in fee calculation. Although noting that the lodestar method is more typically applied in cases "where the nature of the recovery does not allow the determination of the settlement's value required for application of the percentage-of-recovery method." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998), the Third Circuit has nonetheless endorsed use of POR in non-traditional common fund situations. *See In re Cendant Corp. Litig.*, 243 F.3d 722, 734 (3d Cir. 2001). *See also In re GMC Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (suggesting that the district court "should probably use the percentage of recovery rather than the lodestar method as the primary determinant" while recognizing that "the lodestar rationale has appeal where as here, the nature of the settlement evades the precise evaluation needed for the percentage of recovery method.").

Notwithstanding the particular method utilized however, there are some constants to guide the Court. First, the benefit conferred upon the class is a prime consideration under either method. "What is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *Prudential*, 148 at 342. Appropriate use of the lodestar calibrates the award downward where the degree of success of achieved is disproportionately small. *Hensley v. Eckerhart*, 461 U.S.

424, 434-36 (1983); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 517 (6th Cir. 1993) (the relief obtained is a "primary determinant" for calculating lodestar.); *cf. also Sobel v. Hertz*, No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011) ("Class Counsel has requested for itself an uncontested cash award ... with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright."). Even in civil rights cases, where awarding lodestar is generally more appropriate than it is in consumer class action cases, courts do not hesitate to adjust the lodestar downward when the plaintiffs have achieved less than full success. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 115 (1992).

Second, it is advisable to cross-check the award resulting from the chosen methodology against the result which would be yielded by the non-selected method, whether that secondary method be lodestar, *Prudential*, 148 F.3d at 333, or POR, *Bluetooth*, 654 F.3d at 945. "The goal of [the lodestar cross check] is to ensure that the proposed fee award does not result in counsel being paid a rate vastly in excess of what any lawyer could reasonably charge per hour, thus avoiding a "windfall" to lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001). These cross-checks are to be a ceiling, rather than a floor. *See, e.g., Bluetooth, supra* (rejecting a settlement with a fee award substantially under lodestar where it was still disproportionate to the class recovery).

Above and in his earlier objection, Petri thoroughly briefs whether plaintiffs have met their burden of proving any shareholder benefits were generated by this

litigation and settlement. What remains is class counsel's final contention that their declared combined lodestar of $6,614,268.25 factored with "a reasonable lodestar multiplier of 1.51" can justify the requested $10 million in fees. Final Approval Mem. at 38-39. Current law is clear; it cannot.

Immediately, it is worth noting that the submissions of plaintiffs' counsel have precluded the "thorough and searching analysis" necessitated by the lodestar method and the judiciary's supervisory/fiduciary role. *Interfaith Cmty. Org.*, 426 F.3d at 703. Each of the six firms[1] seeking compensation for the derivative settlement submitted timesheets, with hourly breakdowns in seven vague categories:

1. Investigation, research, drafting original complaints and demand letters.

---

[1] The existence of six firms seeking full compensation for rendering one meager joint set of settlement "benefits" itself demands explanation. "The mere fact that a non-designated counsel worked diligently and competently with the goal of benefiting the class is not sufficient to merit compensation. Instead, only attorneys 'whose efforts create, discover, increase, or preserve' the class's ultimate recovery will merit compensation from that recovery." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) (quoting *GM Pickup*, 55 F.3d at 820 n.39). "Only those who confer an independent benefit on the class will merit compensation. *Id.* It does not "confer a benefit on the class" to incur litigation costs from two parallel, duplicative parallel cases. *Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-6219, 2011 U.S. Dist. LEXIS 148751, at *31-32 (D.N.J. Dec. 28, 2011); *In re Heritage Bond Litig.*, 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *82-85 (C.D. Cal. Jun. 10, 2005); *cf. In re Party City Secs. Litig.*, 189 F.R.D. 91, 115 (D.N.J. 1999) ("The potential for duplicative services and the concomitant increase in attorneys' fees work against the approval of more than one law firm [as class counsel]…"). *Cf. also In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011).

2. Investigation, research, and drafting amended complaint/demand refused complaint.

3. Motion practice.

4. Discovery and investigation post filing of amended complaint/demand refused complaint.

5. Governance and compliance analysis, drafting of settlement proposals.

6. Settlement negotiation process and documentation.

7. Post settlement documentation and briefing.

*See* Final Approval Mem., Exhibits 2-7. A vague billing schema like this insulates the lodestar amount from proper scrutiny. Nothing informative or specific can be gleaned when a shareholder or the Court attempts to uncover superfluous, duplicative or unreasonable entries. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 779 F. Supp. 1063, 1093 (D. Ariz. 1990) (chart of ten similar categories "provide[s] little meaningful information."), *rev'd on other grounds*, 19 F.3d 1291 (9th Cir. 1994).

The broad categorical breakdowns fail to meet the Third Circuit's standard that "[a] fee petition must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 181 (3d Cir. 2001) (internal quotation omitted). For one example, it is well-established that "an attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" *McKenna v. City. of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)). Here, hours expended in relation to

the now dismissed complaint in Civil No. 10-2033 should be categorically excluded as unreasonably consumed. *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 768 (4th Cir. 1998), *rev'd on other grounds* 527 U.S. 1031 (1999) (vacating the district court's nearly full lodestar award of $4 million, where many claims did not survive dismissal, many were unsuccessful at trial, and the amount of monetary damages obtained was low). Unfortunately, the vague billing rubric employed jointly by plaintiffs' counsel does not allow the reader to weed out the hundreds and hundreds of hours expended on work on the now-dismissed complaint or in support of other fruitless pursuits. In such circumstances, courts do not hesitate to find fee submissions inadequate. *E.g., Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 599 (M.D. Pa. 1996); *see generally Weinberger*, 801 F. Supp. at 816-24 (deducting 78% of class counsel's hours as inadequately documented, excessive, duplicative or otherwise unreasonable).

The deficiencies of the timesheets are exacerbated because the lack of specificity prevents any investigation of duplicative tasks between firms. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) ("[I]nstances of precise overlap in both time and task cause us to conclude that the time claimed is not reasonable for the services performed."). To take another example, the aggregate total for category 7, post settlement documentation and briefing, is 912.85 hours (304.3 + 91.75 + 378 + 90 + 5.75 + 43.8). On its face, that number appears excessive and inefficient, but the lack of specificity in the fee petition precludes further examination of the precise work. Who was working on what? A one-page seven-category chart for

each of the six firms is wholly insufficient to descriptively justify nearly 11,000 hours of work, and a lodestar of more than $6.6 million.[2]

## V.    In the Alternative, a Multiplier Greater Than One Is Inappropriate.

Even if the Court were to disregard the multiple failures of the plaintiffs to satisfy Rule 23.1(a) adequacy, the failure of the plaintiffs to meet their burden of showing substantial benefit, the failure of the plaintiffs to quantify the shareholder benefit, and the failure of the plaintiffs to provide adequate lodestar documentation, it would still be inappropriate to award the 1.5 multiplier plaintiffs seek.

Plaintiffs attempt to justify the multiplier on a number of grounds. In what sounds like a request for a contingency multiplier they maintain that "derivative litigation is inherently risky." Final Approval Mem. at 35. But the bare fact that class counsel was compensated on a contingency fee rather than fixed fee basis is not a grounds for enhancement. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992); *see also GM Pickup*, 55 F.3d at 822 (3d Cir. 1995) ("[T]o the extent that the district court relied on the lodestar method, it erred by applying a multiplier" for contingency after

---

[2] For purposes of a lodestar cross-check, summaries of this type might suffice. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). But they will not when the court is using lodestar as the primary method. *See Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 927 (E.D. Pa. 1993) ("The application should provide the court with 'fairly definite information as to the hours devoted to various general activities . . . and the hours spent by various classes of attorneys.'") (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)). *Accord Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 122 (E.D. Pa. 2005) (finding various billing entries insufficiently detailed where using lodestar as the primary method to award fees to class counsel).

*Dague*); *Bluetooth*, 654 F.3d at 942 n.7 (contingent fee "no longer valid" in lodestar-cross check); *Petruzzi's*, 983 F. Supp. at 599 (noting *Dague*'s applicability to class action settlement fee awards and therefore denying any enhancement).

Generic assertions of the sort that "derivative litigation is inherently risky" do not amount to the specific showings necessary to award an enhancement multiplier on the basis of contingent risk. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731, 733 (1987) (enumerating specific necessary showings). *Accord Wade v. Colaner*, No. 06-3715, 2010 U.S. Dist. LEXIS 138518, at *23-*37 (D. N.J. Dec. 28, 2010) (Wolfson, J.) (refusing to enhance fees).

Simply put, plaintiffs have failed to overcome the law's "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Perdue v. Kenny A.,* 130 S. Ct. 1662, 1669 (2010). A lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1673. "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant." *Id. Perdue* undercuts the plaintiffs' citation to *Prudential* for the proposition that multiples ranging from one to four are frequently awarded. Final Approval Mem. at 38 (quoting 148 F.3d at 341). *Perdue*'s limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but has equal application to "reasonable" fee awards in class actions made under Fed. R. Civ. P. 23(h) or "reasonable" fees made upon a showing of "substantial benefit" conferred upon a corporation in a derivative suit under the rule of *Mills. See, e.g., Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 11-cv-5849, 2012

U.S. Dist. LEXIS 46401, at *12-*16 (C.D. Cal. Mar. 29, 2012) (citing *Perdue* and denying enhancement multiplier of 1.5); *Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at *129-*135 & n.157 (C.D. Cal. Nov. 23, 2011) (citing *Perdue* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check); *cf. also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Perdue* as an "analogous statutory fee-shifting case.").

Plaintiffs depend on a handful of cases[3] where courts have awarded similar hefty sums for corporate governance relief in derivative settlements. Final Approval Mem. at 32-34. Fee awards in similar cases do constitute a proper object of consideration for a court awarding fees. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). But the plaintiffs' outcome-driven cherry-picked sampling pales in comparison to a statistical survey like that conducted by Professor at Richmond School of Law, Jessica Erickson. Erickson surveyed 182 derivative suits brought in federal district court over a twelve-month period from 2005-2006. Jessica Erickson, "Corporate Governance in the Courtroom: An Empirical Analysis," 51 WM. & MARY L. REV. 1749 (2010).

Erickson's analysis reveals that "[t]he median fee amount was slightly less than $1 million. These fees depended in large part on the consideration in the settlement.

---

[3] *E.g.*, *Unite Nat'l Ret. Fund v. Watts,* No. 04-cv-3603, 2005 U.S. Dist. LEXIS 26246 (D. N.J. Oct. 27, 2005) (listed as "not for publication"); *Lambrecht v. Taurel*, No. 08-cv-68, 2010 U.S. Dist. LEXIS 75633 (S.D. Ind. Jun. 8, 2010) (opinion of magistrate judge); and two state court decisions from Alabama and Georgia.

In the cases in which the corporation received a meaningful financial benefit, the median attorneys' fees were $6.65 million. *In the cases in which the only consideration for the settlement was the reform of corporate governance policies, the median fees were a fraction of this amount at $460,000*." *Id.* at 1806 (emphasis added). The $460,000 figure, even if one were to adjust upwards slightly for inflation, is a far cry from the outlier cases mustered by class counsel in support of their fee. The plaintiffs' request for $10.45 million exceeds the median result in cases where "the corporation received a meaningful financial benefit." Erickson's survey conclusively determines that the *Gunter* factor of awards in other cases weighs significantly against the award sought here.

## Conclusion

Imagine a world where Booz Allen & Hamilton could sue corporations and force them to accept their consulting services at 150% of their normal rates. The proposition of a cause of action for involuntary consulting services is absurd, but that is exactly what plaintiffs here have done—and have done so without the sort of empirical support that would at least rationalize Booz Allen consulting services. Plaintiffs have brought this litigation not to benefit shareholders, but to force shareholders to involuntarily purchase their attorneys' consulting services.

This would be bad enough in the absence of a showing of breach of duty by directors and officers, but is worse here when plaintiffs cannot even provide admissible expert evidence that their proposed changes benefit shareholders. The cosmetic settlement here, crafted to rationalize attorneys' fees rather than benefit

shareholders, has attracted national attention as a poster child for abusive shareholder derivative suits. Daniel Fisher, "Lawyer Fights $10 Million Fee For 'Cosmetic' Johnson And Johnson Settlement," Forbes.com (Sep. 4, 2012) ("nuisance-value settlement"). This litigation is for the benefit of the attorneys, rather than the shareholders, and thus does not meet the Rule 23.1(a) standard, and must be dismissed.

If the Court is unwilling to dismiss the action, Petri does not object to settlement approval as the least worst alternative; the strike suits settled here are unfairly draining shareholder resources for no good reason and should be ended one way or the other. But plaintiffs' attorneys should not be rewarded for their self-dealing strike suit. Even if one were to accept plaintiffs' *ipse dixit* expert reports, plaintiffs have failed to demonstrate that the shareholder benefit achieved satisfies the *Mills* and *Zucker* tests for "substantial benefit." Plaintiffs' attorneys are not entitled to their purported lodestar, which would disproportionately compensate them relative to the non-existent shareholder benefit (and which exceeds the median award for similar settlements by over an order of magnitude) when they have not even provided legally sufficient documentation of their lodestar. Under no circumstances should plaintiffs receive a multiplier of their lodestar.

Dated: September 14, 2012                    Respectfully submitted,

                                             /s/ David M. Nieporent
                                             David M. Nieporent
                                             SAMUEL & STEIN
                                             38 West 32nd Street, Suite 1110
                                             New York, NY 10001
                                             Phone: (212) 563-9884
                                             Fax: (212) 563-9870
                                             Email: dnieporent@samuelandstein.com

                                             Theodore H. Frank (*pro hac vice*)
                                             CENTER FOR CLASS ACTION FAIRNESS
                                             1718 M Street NW, No. 236
                                             Washington, DC 20036
                                             Telephone:  (703) 203-3848
                                             Email:  tedfrank@gmail.com

                                             Attorneys for Intervenor and Objector
                                             Mark G. Petri

**Certificate of Service**

The undersigned certifies he caused to be served via FedEx overnight shipment a copy of this Supplemental Objection upon the following:

Clerk of Court
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

Carella, Byrne, Cecchi, Olstein,
Brody & Agnello, P.C.
Attn: James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068

Kantrowitz, Goldhamer &
Graifman, P.C.
Attn: Gary Graifman
210 Summit Avenue
Montvale, NJ 07645

Patterson Belknap Webb & Tyler
Attn: Erik Haas
1133 Avenue of the Americas
New York, NY 10036

Sidley Austin LLP
Attn: Kristen R. Seeger
One South Dearborn Street
Chicago, IL 60603

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 14, 2012

*David M. Nieporent*
David M. Nieporent