UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON DERIVATIVE LITIGATION | Civil Action No. 10-2033 (FLW) |
| IN RE JOHNSON & JOHNSON FCPA SHAREHOLDER DERIVATIVE LITIGATION | Civil Action No. 11-2511 (FLW) |
| COPELAND v. PRINCE, *et al.* | Civil Action No. 11-4993 (FLW) |

**PLAINTIFFS' RESPONSE TO OBJECTIONS AND
IN FURTHER SUPPORT OF SETTLEMENT**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI
 OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
 Roseland, New Jersey 07068
(973) 994-1700
*Attorneys for Demand Futile Plaintiffs*

Gary Graifman
KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.
210 Summit Avenue
 Montvale, New Jersey 07645
(201) 391-7000
*Attorneys for Demand Refused Plaintiffs*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT ................................................................................................................. 3

   A. The Record Supports Approval of the Settlement ........................................................... 3

   B. The Record Supports Approval of the Requested Fee Award ....................................... 6

III. CONCLUSION ............................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atlantic Corp v. Bolger*,
 2 F.3d 1304 (3d Cir. 1993)..................................................................................................3

*Evans v. Port Auth. Of New York and New Jersey*,
 273 F.3d 346 (3d Cir. 2001) ................................................................................................6

*In re AOL Time Warner, Inc.*,
 MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)......................................................7

*In re Jacoby Airplane Crash Litig.*,
 No. Civ. 99-6073 HAA, 2007 WL 5037683 (D.N.J. Aug. 27, 2007)..................................5

*In re Remeron End-Payor Antitrust Litig.*,
 No. Civ. 02-2007 FSH, 2005 WL 2230314 (D.N.J. Sept. 13, 2005)...................................7

*In re Schering*-Plough Corp. S'holders Derivative Litig.,
 No. Civ. 01-1412, 2008 WL 185809 (D.N.J. Jan. 14, 2008) ..............................................3

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
 426 F.3d 694 (3d Cir. 2005).................................................................................................6

*Kumho Tire Co., Ltd. v. Carmichael*,
 526 U.S. 137 (1999).............................................................................................................5

*Rode v. Dellarciprete*,
 892 F.2d 1177 (3d Cir. 1990)...............................................................................................7

*Wade v. Colaner*
 No. Civ. 06-3715 FLW, 2010 WL 5479625 (D.N.J. Dec. 28, 2010) ..................................7

Plaintiffs respectfully submit this Response to Objections and in Further Support of Settlement.[1]

## I. PRELIMINARY STATEMENT

Plaintiffs' August 31, 2012 and September 21, 2012 submissions (ECF Nos. 192-1 and 204, respectively) demonstrated that the Settlement resulted from hard-fought litigation and protracted arms' length negotiations with assistance from corporate governance and compliance and pharmaceutical experts whose expertise is undisputed. The record shows that the Settlement provides substantial benefits to J&J and its shareholders. The Settlement requires the J&J Board to adopt numerous original and specifically tailored governance and compliance measures that seek to prevent the type of systemic wrongdoing alleged in this Action and enhance the accountability of the Board and J&J's senior management in the event of future misconduct.

The benefits of the Settlement include, among others (1) the adoption of a detailed Charter and Operating Procedure for the Board's new Regulatory, Compliance & Government Affairs Committee (the "RCGC"), which provides direct oversight responsibility, through the RCGC to the J&J Board, for compliance by J&J operating companies, (2) the adoption of a new, mandatory companywide Product Risk Management ("PRM") standard, which requires the implementation of metrics and timelines, and imposes accountability for resolving and escalating identified product-related issues within established timelines and in accordance with approved action plans, and (3) a requirement that the J&J Board adopt a comprehensive Quality and Compliance Core Objective, which, among other things, requires the Board and management to

---

[1] Plaintiffs respond herein to the objections of (1) Donald Blakeman, ECF No. 202, (2) Robert D. Stuart, ECF No. 206, (3) Thomas Keegan, ECF No. 207, (4) Merton Rothman, ECF No. 210, (5) Stephen Lindemood (not docketed), (6) David K. Stricker and Judith M. Stricker, ECF No. 211, (7) John Henn, ECF No. 212, (8) Mark Hodell (not docketed), (9) John E. Notestein (ECF. No. 213) and (10) Brent and Kimberly J. Clifton, ECF No. 215).

design and maintain robust quality control and quality assurance systems to prevent, detect and correct noncompliance with FDA current Good Manufacturing Practices ("cGMP") and drug marketing laws, and makes adherence to the Quality and Compliance Core Objective a factor in the evaluation and compensation of all J&J employees worldwide. *See, e.g.,* ECF Nos. 181-1, 181, 3, 192-1.

The reaction of J&J's shareholders has been overwhelmingly positive. Pursuant to the Settlement's Notice provisions set forth in the Preliminary Approval Order (ECF No. 184) and the Court's more recent Amended Order (ECF No. 209), J&J sent out 380,728 individual notices of Settlement to J&J shareholders, filed the terms of the Settlement on a Form 8-K with the Securities and Exchange Commission which included as exhibits copies of relevant settlement documents, and arranged for multiple rounds of publications in national news media. *See, e.g.,* ECF No. 200, 201, 214. In total, only fourteen individual shareholders (or 0.0037% of all shareholders who received an individual notice) lodged any form of objection to the Settlement. None of J&J's more than 1,700 institutional investors object to the terms of the Settlement or the fee request. Among all of the objectors, Petri, Clifton, Stuart and Keegan argue that the Settlement provides no benefits to J&J. The remaining objectors challenge, in conclusory fashion, the request for attorneys' fees. Not one of them provides specific evidentiary support (as required by the Third Circuit, *see, e.g.,* footnote 4 below) to question the reasonableness of the hourly rates utilized by Plaintiffs' counsel. None of the fee objectors reference (much less exercise his or her right to review) the evidentiary record. Finally, none of the objectors (to the Settlement or the fee) actually reference (much less provide) a credible basis to question or reject the record set forth in the Joint Attorney Declaration (ECF No. 192-10) or the reports of Chairman Pitt and Dr. Glass (ECF Nos. 192-11 and 192-12, respectively). In sum, none of the

2

Objectors provide any factual basis to question the corporate governance benefits achieved by the Settlement directly on account of Plaintiffs' and Lead Counsel's efforts.  *See, e.g,* ECF No. 202 (one sentence objection), ECF No. 210 (same), ECF No. 212 (same); ECF No. 213 (same).

The small number of objectors to the Settlement have not refuted the record detailing the substantial benefits of the Settlement and Plaintiffs' counsel's indispensable efforts in achieving them.  The Court should reject the objections, approve the Settlement and the fee request.

## II.   ARGUMENT

### A.  The Record Supports Approval of the Settlement

In this Circuit, the benefits of a settlement can be shown by demonstrating that proposed corporate governance improvements are designed to prevent the reoccurrence of the harmful conduct that gave rise to the litigation.  *See, e.g., Bell Atlantic Corp. v. Bolger,*, 2 F.3d 1304, 1310, 12 (3d Cir. 1993) (affirming District Court, which found that "the settlement furnished a real benefit to Bell Atlantic because it required the parent corporation to institute internal mechanisms to prevent improper sales and marketing methods," and further finding that settlement "provides specific mechanisms to ensure employees of Bell Atlantic and all its subsidiaries behave appropriately"); *In re Schering-Plough Corp. S'holders Derivative Litig.*, No. Civ. 01-1412, 2008 WL 185809, at *2 (D.N.J. Jan. 14, 2008) (same).

As shown in Plaintiffs' August 31 and September 21 submissions, courts in this District and around the country routinely rely on declarations from corporate governance experts to determine whether the litigation and proposed settlements achieved benefits the corporation and its shareholders, including creating mechanisms that will decrease the chance of future corporate wrongdoing.  *See, e.g.,* ECF No. 192-1, at p. 29, *et seq.* (citing cases).  Here, former SEC Chairman Harvey Pitt explained in his Expert Declaration dated August 28, 2012 that one of the

key benefits of the Settlement is that it assists J&J in preventing future violations and potentially draconian regulatory and criminal fines and prosecutions. ECF No. 192-11 at 39-40. Critically, no objector has disputed this assessment. This failure to challenge the core benefits of the Settlement is alone dispositive of the challenges to the Settlement.

Purported J&J shareholders Petri, Clifton, Stuart and Keegan conclude, without barely any analysis of the actual facts of this case, that the Settlement provides no benefits to J&J and its shareholders. ECF Nos. 191-2, 206, 207 and 215. For the reasons stated in Plaintiffs' September 21, 2012 submissions responding to the Petri objection, these arguments lack any factual basis and are refuted by the undisputed record.[2] ECF No. 204.

In order to more directly respond to the criticism by the Objectors, Chairman Pitt submitted a supplemental declaration, which further confirms the value of corporate governance enhancements like those established through the Settlement and directly rebuts the criticisms provided by the Objectors. As Chairman Pitt explains, boards of directors that implement corporate governance improvements, governance experts who review organizations to assist boards with improving governance and control, and governmental agencies assessing compliance with mandatory legal requirements all recognize the benefits of improving corporate governance mechanisms. *See* Supplemental Declaration of Harvey L. Pitt, dated October 11, 2012 ("Pitt Supp.") at p. 3-4, which is Exhibit 1 to the Declaration of James E. Cecchi ("Cecchi Decl."). As for the Objectors' unprecedented assertion that a governance settlement can only be approved if the benefits are established by reference to an event study, Chairman Pitt explains, based on his

---

[2] This Action is also not the first instance in which Clifton, represented by the same counsel, tags along with an objection by the Center for Class Action Fairness and its counsel Theodore Frank. *See* Exhibits 2 and 3 to the Cecchi Decl.

decades of experience in advising and regulating corporate boards, that no companies or similar entities perform statistical event studies to determine whether improved governance provides substantial benefits to complex organizations like J&J.  *See* Pitt Supp. at p. 4-6.  No objector has shown otherwise.  Their criticisms should be rejected.

Here, the previously submitted Pitt and Glass declarations unambiguously show that the Settlement provides substantial benefits to J&J by, among other things, requiring the Board and management to implement new governance systems to prevent the systemic wrongdoing alleged in the Derivative Actions.  *See, e.g.,* ECF Nos. 192-11, at ¶¶ 61, 68-69; 192-12 at ¶¶ 4, 13-14, 18, 44, 46, 54-55, 79.  Again, no objector has shown otherwise.  Likewise, there is no dispute that Chairman Pitt and Dr. Glass have extensive and specialized experience that allows them to draw conclusions about J&J's corporate governance and compliance systems and to opine regarding the preventive benefits to J&J from the proposed settlement.  *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 156 (1999) (noting that "no one denies that an expert might draw a conclusion…based on extensive and specialized experience"); *In re Jacoby Airplane Crash Litig.*, No. Civ. 99-6073 HAA, 2007 WL 5037683, at *37 (D.N.J. Aug. 27, 2007) (noting that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony").

In sum, the Court should reject the objectors' unsupported arguments, decline to unfairly criticize the analysis of Chairman Pitt and Dr. Glass, and approve the Settlement.

As Judge Rakoff explained during the final approval hearing in the *Pfizer* derivative action:

> [T]his is a positive settlement from the company's standpoint in a way that many settlements are not. In many settlements -- class actions, for example -- the

company […] is paying out lots of money. Here, it's taking prophylactic measures to prevent future potential recurrences of mistakes that may or may not have been made in the past. And I think one of the more attractive aspects of this settlement is that forward-looking dimension; it's not just a case about money, [not] to minimize money, but it's a case about what is in the public's interests as well as in the shareholders' interests as well as in the board's interests, which is, making sure that this company abides in the future by standards that for whatever reason appear not to have been met in the past.

Cecchi Decl., Ex. 6., at 45. The same is true here.

### B. The Record Supports Approval of the Requested Fee Award

As discussed in Plaintiffs' August 31 and September 21 submissions, the benefits achieved through the proposed Settlement warrant the Court's approval of the requested fee and reimbursement of expenses. Plaintiffs respectfully submit that the requested fee award is reasonable, appropriate for the nature of the litigation and reforms achieved, and supported by fee awards in comparable cases, including in this District in *Schering-Plough* ($9.5 million fee award) and *Shell* ($9.2 million), and in other courts in *Pfizer* ($22 million), *Home Depot* ($14.5 million) and *Eli Lilly* ($8.5 million). See ECF No. 204 at 26-27.

The requested award for fees and expenses is also supported by Plaintiffs' counsel's lodestar in prosecuting this Action.[3] *See* ECF Nos. 192-4 through 192-9 (affidavits of counsel in the Demand Futility and Demand Refused Actions showing lodestar determination for counsel in the Action). Indeed, the uncontested record shows that Plaintiffs' counsel expended almost more than 10,000 professional hours over a period extending more than two years to prosecute this Action on a fully contingent basis. *See, e.g.,* ECF Nos.192-10 at ¶ 78; 192-1 at p. 38. Plaintiffs'

---

[3] Pursuant to the Court's October 9, 2012 Order, on October 15, 2012, Plaintiffs will submit attorney declarations from distinguished New Jersey practitioners showing that Plaintiffs' billing rates here are clearly within the range prevailing in the community for this type of complex litigation.

counsel faced skilled and determined adversaries and made every effort to avoid duplicative efforts. *See, e.g.,* ECF No. 192-10, at ¶¶ 14-15, 24, 61. No objector has even attempted to show otherwise; nor has any objector disputed that Plaintiffs' counsel allocated resources efficiently or that the provided billing rates are within the range of prevailing rates in the community. All of these evidentiary showings are required by the law in this Circuit.[4]

Objectors Clifton, Stuart and Keegan also dispute Lead Counsel's request for attorneys' fees, with Clifton arguing, for example, that the fee request is "totally and completely excessive." ECF No. 215 at 3. Like the other fee objectors, Clifton, Stuart and Keegan do not reference the record and provide no factual basis for their objection. The objection by Clifton to Lead Counsel's lodestar based fee request is particularly ironic, since Clifton is a senior partner in the Dallas office of Locke Lord Bissel & Liddel LLP – a law firm with 2010 billing rates of up to $1,120 per hour. *See* Exhibits 4 and 5 to the Cecchi Decl.

Thus, the Court should reject the objections to the requested fee award. *See, e.g. Wade v. Colaner*, No. Civ. 06-3715 FLW, 2010 WL 5479625, at *4 (D.N.J. Dec. 28, 2010) ("Courts may not make any findings of reasonableness based on a generalized sense of appropriateness, but must rely on the record") (citations omitted); *In re AOL Time Warner, Inc.*, MDL 1500, 2006 WL 903236 at *15 (S.D.N.Y. Apr. 6, 2006) (none of the objections provide "a legal or factual basis for the alleged insufficiency of the Settlement, nor do they consider the legal or factual

---

[4] When calculating the lodestar amount, the party seeking fees has the initial burden of showing that the hours and rates are reasonable. *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 694, 703, n. 5 (3d Cir. 2005). Once a plaintiff has made a prima facie showing with respect to the appropriate hourly rate, that rate may be contested, but only with appropriate record evidence. *Evans v. Port Auth. of New York and New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Here, no objector has argued – let alone submitted evidence – that Plaintiffs' counsel's billing rates were higher than the prevailing rates in the community.

context in which the Settlement was reached"); *In Re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 2230314 *18 n.8 (D.N.J. Sept. 13, 2005) (Court rejected objection arguments it found to be "entirely unsupported, too vague to comprehend, or clearly without merit").

In sum, the Court should reject the objectors' unsupported arguments and approve the Settlement and requested award for fees and reimbursement of expenses.

### III. CONCLUSION

For the reasons set forth in Plaintiffs' August 31, 2012 and September 21, 2012 submissions, and the reasons set forth above, the Court should approve the Settlement and the request for attorneys' fees and expenses, and reject the objections to the Settlement.

>CARELLA, BYRNE, CECCHI, OLSTEIN,
>BRODY & AGNELLO
>Co-Lead Counsel for Demand Futile Plaintiffs
>
>By: */s/James E. Cecchi*
>        JAMES E. CECCHI
>
>KANTROWITZ, GOLDHAMER &
>     GRAIFMAN, P.C.
>Liaison Counsel for Demand Refused Plaintiffs
>
>By: */s/ Gary S. Graifman*
>        GARY S. GRAIFMAN

Dated: October 11, 2012

[Additional Counsel Listed on the Following Page]

Mark Lebovitch
Jeroen van Kwawegen
Jeremy Friedman
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 554-1400

Karen L. Morris
Patrick F. Morris
R. Michael Lindsey
MORRIS AND MORRIS LLC
COUNSELORS AT LAW
4001 Kennett Pike, Suite 300
Wilmington, Delaware 19807
(302) 426-0400

Darren J. Robbins
Travis E. Downs III
David W. Mitchell
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058
*Attorneys for Demand Futile Plaintiffs*

Jeffrey S. Abraham
ABRAHAM, FRUCHTER &
TWERSKY, LLP.
One Penn Plaza, Suite 2805
New York, NY 10119
(212) 279-5050
*Attorneys for Demand Refused Plaintiffs*

9