## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON DERIVATIVE LITIGATION | Civil Action No. 10-2033 (FLW) |
| IN RE JOHNSON & JOHNSON FCPA SHAREHOLDER DERIVATIVE LITIGATION | Civil Action No. 11-2511 (FLW) |
| COPELAND v. PRINCE, ET AL. | Civil Action No. 11-4993 (FLW) Judge Freda L. Wolfson OBJECTION TO SPECIAL MASTER REPORT |

## OBJECTION OF MARK G. PETRI TO SPECIAL MASTER REPORT

The Report and Recommendation of the Special Master regarding attorneys' fees and costs was filed on June 13, 2013. *See* Report and Recommendation of Special Master ("Report"), Dkt. 234. On June 14, 2013, this Court ordered that objections to such report may be filed within 21 days of such order. *See* Order, Dkt. 241.

Objector Petri objects to one legal conclusion in the Report: the Special Master's rejection of Objector Petri's request that the lodestar amount be reduced by $1,150,000 to exclude the "internal warfare" of plaintiffs' counsel. *See* Report at 95. Under the Federal Rules of Civil Procedure, factual findings and legal conclusions recommended by a master must be reviewed *de novo*. *See* Fed. R. Civ. P. 53(f)(3) & (4).

1

Before the Special Master, Petri objected to numerous aspects of the plaintiffs' lodestar proposal, some of which the Special Master adopted (*e.g.*, Report 55-60 (adopting Petri's reasoning)). Petri does not ask to relitigate his entire objection before the Special Master; it is not an efficient use of the Court's time to repeat the detailed "gimlet-eyed review of line-item fee audits" the Special Master performed. *Cf. Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). However, Petri does believe the Special Master committed legal error on one specific question: whether $1.15 million of lodestar spent entirely on fighting amongst the groups of plaintiffs' attorneys is billable to the shareholders.

Specifically, the $1.15 million of internal warfare includes:

- 592.5 hours ($361,800) for the four law firms' fight over who would become demand futility lead counsel. See Narrative Submission by Demand Futility Counsel at 10.

- Demand refused counsel claims 756.75 hours ($495,280.75) for its intervention briefing and motion to appoint lead and liaison counsel in the demand refused actions, as well as 334.9 hours ($194,554.00) on a complaint in intervention. See Demand Refused Hours Summary at 5, 10.

- Demand futility counsel seeks to include 153.5 hours ($98,363.75) for time spent in opposing demand refused counsel's motion to intervene. See Narrative Submission by Demand Futility Counsel at 11.

In her report, the Special Master distinguished *Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 832 F. Supp. 2d 432, 443 (D.N.J. 2011), *aff'd* 2013 U.S. App. LEXIS 11830 (3d Cir. Jun. 11, 2013) (unpublished), because this case did not result in the "palpable hostility" present in *Drazin*. Report at 95. This is the wrong legal standard.

Whether the internal warfare should be excluded is not a question of the level of hostility between the parties, but whether the time expended "confer[s] a benefit on the Class" or was unnecessarily excessive. *Drazin,* 832 F. Supp.2d at 443; 2013 U.S. App. LEXIS at *11 (affirming finding that class counsel "made no relative contribution to the Class Settlement"); *see also In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *85-86 (C.D. Cal. June 10, 2005) (emphasis added) ("As Lead Counsel points out, MMK's fee request includes approximately 450 hours spent drafting a duplicative complaint and moving for lead status in federal court. Such time spent is not compensable."); *New York State Assoc. for Retarded Children, Inc. v. Carey*, 544 F. Supp. 330, 341 (E.D.N.Y. 1982), hours further reduced on appeal by *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("The court does agree with defendants, however, that the state should not be assessed fees for time spent on internecine squabbles among plaintiffs."). That *Drazin* involved out-and-out warfare that never ended meant that the district court was within its discretion to award zero total to the losing firm in the battle, not that out-and-out warfare was required before a reduction for internal battles could be imposed. Petri was not asking the Special Master to pick one firm to pay, and freeze out the others; rather, Petri asked to distinguish between litigation on behalf of the shareholders against Johnson & Johnson and litigation against other plaintiffs' counsel on behalf of plaintiffs' counsel. The refusal to delete this time is especially mysterious given that the Report otherwise agrees with Petri that "the competition to be lead counsel among the Demand-Futility lawyers… added no value for the shareholders of

3

Johnson & Johnson" and that "there was no perceived benefit to the shareholders" for Demand-Refused Counsel's motions to intervene and consolidate. Report at 33; *see also id.* at 88-92 (noting these hundreds of hours were an "area of enormous lack of value to the success of the litigation," detailing the wasteful internal warfare, but concluding "I did not deduct any time for this audition to join the 'team,' unless it was otherwise objectionable").

The $857 thousand billed on battles for lead-plaintiff status were for the benefit of counsel, not the shareholders. That, plus the $293 thousand billed in favor of and against a complaint in intervention is simply the "internecine squabbling" criticized by *N.Y. State Ass'n for Retarded Children* rather than litigation on behalf of shareholders. It is an error of law to hold that such disputes have to rise to the level of "hostility" in *Drazin* before being excluded as not beneficial to shareholders—especially when that infighting constituted over a sixth of the proposed lodestar, and especially when the resolution of the dispute was an agreement that all of the various sets of counsel would get to bill the shareholders, including for their previous infighting. The unresolved dispute amongst class counsel was not any more beneficial to shareholders just because the attorneys were nice to one another in the process; indeed, the fact that the attorneys mutually agreed that all of the firms should be paid, rather than just a single lead firm, ultimately increased the cost of the litigation to shareholders.

The Report states that the $1,150,000 of time Petri challenged was not reduced "unless the entries clearly referenced a fee dispute" or "was otherwise objectionable." Report at 95, 92. The Report only identifies one such hour. *Id.* at 95-96. The Report

4

does, of course, reduce lodestar billing rates, and deduct other duplicative hours. Petri concedes that some of those reductions overlap with the $1.15 million Petri challenged, and that a full $1.15 million reduction would be double-counting. Unfortunately, as impressively detailed as the Report is, it does not perform the sort of breakdown that would easily permit a precise calculation of how much of the $1.15 million remains in the lodestar calculation. Asking the Special Master or the Court for that additional level of precision would not be cost-effective unless the Special Master has already taken the trouble to program spreadsheets that can quickly perform the data sort; the Special Master's complaint about inconsistent billing records (Report at 30) suggests that this did not happen. In lieu of a specific figure proposed by plaintiffs for the amount in dispute, Petri is willing to assume *arguendo* that the Special Master reduced the challenged $1.15 million by the same 17.56% the Special Master reduced plaintiffs' original request. Report Appendix XV.A. Petri thus requests another reduction of $948,000 upon *de novo* review to exclude the excessive and unnecessary internal warfare of plaintiffs' counsel to the extent not previously decreased.

## Renewal of Previous Objections

Petri does not believe that the referral to the special master encompassed his earlier objections, which this Court has already ruled on. Dkt. 226. There was no relitigation of those questions before the Special Master. But for belt-and-suspenders reasons so that there is no ambiguous question of waiver, Petri also hereby renews and incorporates by reference his previous objections to attorneys' fees and a multiplier, as well as all filings he previously submitted to this Court, with the

understanding that this Court has already ruled on those questions. *See* Motion to Intervene, Dkt. 190; Motion to Dismiss and Objection to Attorneys' Fees, Dkt. 191; Supplemental Objection, Dkt. 195.

Consistent with those objections, the reduced lodestar of $5.384 million found by the Special Master provides additional support that the parties should not be entitled to a multiplier. As *Perdue v. Kenny A.* notes, a lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." 130 S. Ct. 1662, 1669 (2010). Here, the course of proceedings shows that this case attracted not only one set of counsel, but six, who, rather than risk competing at cross-purposes that might freeze groups of plaintiffs' counsel out in favor of a single theory most beneficial to the shareholders, colluded to agree to a single settlement where they would all get paid at the expense of shareholders. Having affirmatively acted to reduce their risk at the expense of shareholders by agreeing not to compete with one another, plaintiffs' counsel should not be heard that they also be compensated for risk they did not undertake. Moreover, given the expense that JNJ shareholders have incurred for a special-master report (Dkt. 224 ¶ 6), it would be unjust if the savings were obliterated by an offsetting increase in a multiplier.

## Conclusion

Petri maintains his objection that plaintiffs have not provided a benefit to the class meriting attorneys' fees—with the understanding that the Court has already overruled that objection. If, however, the Court awards lodestar as it previously

indicated it would do, that lodestar should not exceed $4.436 million, and there should be no multiplier greater than one.

Petri reserves the right to reply to any Rule 53 objections to the Special Master report by plaintiffs' counsel that seek to increase the lodestar calculation.

Dated: July 3, 2013                     Respectfully submitted,

                                        /s/ David M. Nieporent
                                        David M. Nieporent
                                        SAMUEL & STEIN
                                        38 West 32nd Street, Suite 1110
                                        New York, NY 10001
                                        Phone: (212) 563-9884
                                        Fax: (212) 563-9870
                                        Email: dnieporent@samuelandstein.com

                                        Theodore H. Frank (*pro hac vice*)
                                        CENTER FOR CLASS ACTION FAIRNESS
                                        1718 M Street NW, No. 23-6
                                        Washington, DC 20036
                                        Telephone:  (703) 203-3848
                                        Email:  tedfrank@gmail.com

                                        *Attorneys for Intervenor and Objector*
                                        *Mark G. Petri*

## CERTIFICATE OF SERVICE

The undersigned certifies he electronically filed the foregoing Objection via the ECF system for the District of New Jersey, thus effecting service on all attorneys registered for electronic filing. Additionally he placed a copy of the foregoing in the U.S. Mail addressed to:

Clerk of Court
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

BRENT CLIFTON
C/O GARY W. SIBLEY
2602 MCKINNEY AVENUE
SUITE 210
DALLAS, TX 75204

JOHN HENN
FOLEY HOAG LLP
SEAPORT WEST
155 SEAPORT BOULEVARD
BOSTON, MA 02210

JOHN E. NOTESTEIN
15214 E. SUNDOWN DRIVE
FOUNTAIN HILLS, AZ 85268

MERTON S. ROTHMAN
42 ASPEN DRIVE WEST
WOODBURY, NY 11797

ROBERT D. STUART
1210 N. TAFT STREET
APT. 606
ARLINGTON, VA 22201

THOMAS C. KEEGAN
1340 TAYLOR RIDGE COURT
ERIE, PA 16505

KIMBERLY J. CLIFTON
C/O GARY W. SIBLEY
2602 MCKINNEY AVENUE
SUITE 210
DALLAS, TX 75204

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 3, 2013                    */s/ David M. Nieporent*
                                       David M. Nieporent