**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE JOHNSON & JOHNSON DERIVATIVE LITIGATION | Civil Action No. 10-2033 (FLW) |
| IN RE JOHNSON & JOHNSON FCPA SHAREHOLDER DERIVATIVE LITIGATION | Civil Action No. 11-2511 (FLW) |
| COPELAND v. PRINCE, *et al.* | Civil Action No. 11-4993 (FLW) |

**REQUEST TO MODIFY THE SPECIAL MASTER'S REPORT AND RECOMMENDATION**

Demand Futile Plaintiffs' co-lead counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") respectfully submits this request to modify the Special Master's report dated June 13, 2013. While we are not objecting to the Report's overall recommended lodestar, BLB&G respectfully submits that the Court should not adopt certain legal and factual errors leading to the Report's conclusions, and the Court should not repeat certain unfounded personal attacks on counsel.

**I.    PRELIMINARY STATEMENT**

On October 26, 2012, the Court approved the Settlement of this derivative litigation, holding, among other things, that "this proposed settlement confers a substantial benefit on the corporation." ECF No. 226 at 28, 32.  The Court appointed a special master to recommend an appropriate lodestar reflecting work performed to achieve the Settlement.  ECF No. 226 at 44. On June 13, 2013, the Special Master filed a 138-page report and recommendation, including 15 Appendixes (the "Report"), recommending that the Court apply a lodestar of $5,383,905.76 in assessing an appropriate fee award.  ECF No. 234 at 138.  BLB&G appreciates the time and effort that the Special Master devoted to preparing the Report.

While we do not agree with how the Report derived its conclusions, BLB&G does not object to the Report's overall recommended lodestar.  Plaintiffs' Counsel's motion for an award of fees should be granted based on all factors, including the recommended lodestar, the Court's prior findings about the benefits of the Settlement, the parties' arms' length agreement regarding the value of those benefits to J&J, and precedent fee awards in comparable derivative litigations.

Notably, after agreeing on the Settlement terms, the parties negotiated and agreed that J&J would pay up to $10 million in fees and $450,000 in expenses to Plaintiffs' Counsel.  On November 5, 2012, shortly ***after*** the Court approved the Settlement itself, Defendants' counsel provided a letter for submission to the Court, representing that "[t]he negotiations about the amount of a fee award for Plaintiffs' Counsel that Defendants would agree to pay in connection with the Settlement were adversarial and focused on the anticipated benefits of the Settlement to J&J, as well as precedent fee awards in comparable derivative cases."  Declaration of Mark Lebovitch dated July 8, 2013 ("Leb. Decl."), Ex. 1.  We submit that J&J's business judgment to agree upon a fee valuing the Settlement's benefits deserves considerable weight.

As explained below, however, BLB&G submits that three aspects of the Report should not be adopted in the Court's final ruling.  First, the Report incorrectly suggests that the Court's fee award must be based on the law of fee shifting for the benefit of a prevailing litigant, rather than fee awards based on a corporate benefit.  Second, the Report incorrectly disregards declarations from respected New Jersey lawyers regarding counsel's hourly billing rates (pages 103-126) and rests upon arbitrary reductions in day-to-day time records rather than collective reductions to the overall lodestar based on the record (pages 44-52 and Appendix III).  Third, the Report makes unfounded and unjustified personal attacks on individual lawyers (pages 72-75).

2

## II.   BLB&G's SPECIFIC RESPONSE TO THE REPORT

### A.  The Corporate Benefit Triggers Counsel's Claim for a Fee Award, Not Prevailing-Party Fee Shifting Principles

As the Court has previously recognized, an award of attorneys' fees is appropriate here because counsel "worked diligently toward obtaining a substantial benefit for J&J."  ECF No. 226 at 46-47; *see also id.* at 28 ("Plaintiff's counsel was able to achieve significant injunctive relief that is tailored to remedy the corporate governance failings inherent in J&J's decentralized management structure").  J&J has agreed to pay an award of attorneys' fees because it is the beneficiary of Plaintiff's Counsel's efforts, *not* as an unsuccessful litigant.  *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396-97 (1970) (a fee for creating common benefits "is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them"); *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998) ("the law will not reward those who reap substantial benefits of litigation without participating in its costs").

The Report, however, repeatedly relies on fee-shifting law in the context of a prevailing litigant.  For example, the Report refers to "the controlling imperative in fee shifting cases" (ECF No. 234 at 44) and "the tenets of our fee shifting case law" (*id.* at p. 137), and makes multiple references to "fee shifting" jurisprudence (*id.* at 44-52, 114, 115, 128, 137).  The Court should not adopt these references and the Report's legal analysis relating to such fee shifting in awarding attorneys' fees here.   Unlike statutory or contractual fee shifting cases, where multipliers are not generally awarded, *see City of Burlington v. Dague*, 500 U.S. 557 (1992), courts in this District routinely award multipliers in common benefit cases such as this one.  *See In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722 at *18 (D.N.J. March 26, 2010) (noting that "application of multiplier of 2.18 is not uncommon where the lodestar method is applied") (citations omitted).

3

**B.  The Court Should Not Disregard Uncontested Hourly Rate Declarations or Make Arbitrary Reductions in Daily Time Entries**

As the Court requested (ECF No. 218), Plaintiffs' Counsel provided sworn declarations from three respected New Jersey practitioners supporting the reasonableness of their reported hourly rates (the "Rate Declarations").[1]  Courts in this District accept such declarations as *prima facie* evidence of the reasonableness of counsel's hourly rates.  *See Great Western Min. & Mineral Co. v. ADR Options, Inc.*, 2012 WL 5200068, at *4 (D.N.J. Oct. 22, 2012) (accepting affidavit and noting that "the rule is that a reasonable hourly rate is generally determined by affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience").[2]

The Rate Declarations are consistent with rulings from around the country, including this District, that uniformly accept BLB&G's reported hourly rates.  For example, in *In re Medco Express Scripts Merger Litig.*, C.A. No. 11-4211 (D.N.J.), the Hon. Dennis M. Cavanaugh approved a fee award based on the same hourly rates for many of the same individual attorneys as the fee application submitted here.  *See* Leb. Decl. Ex. 2 (April 18, 2012 Opinion applying common benefit doctrine and approving fee award), Leb. Decl. Ex. 3 (March 2, 2012 declaration in support of fee application providing BLB&G's standard hourly rates, including for Mr. Berger ($975), Mr. Silk ($800) and Mr. Lebovitch ($700)).[3]

---

[1] *See* ECF No. 221-1 (October 11, 2012 declaration of Michael D. Sirota, co-managing shareholder of Cole, Schotz, Meisel, Forman & Leonard, P.A in Hackensack, New Jersey); ECF No. 221-2 (October 11, 2012 declaration of Stephen M. Greenberg, counsel to McElroy, Deutsch, Mulvaney & Carpenter LLP in Morristown, New Jersey) and ECF No. 221-3 (October 15, 2012 declaration of John A. McGahren, managing partner of the New Jersey office of Patton Boggs LLP in Newark, New Jersey).

[2] *See also Illinois Nat. Ins. Co. v. Wyndham Worldwide Ops., Inc.*, 2011 WL 2293334, at *1 (D.N.J. June 7, 2011) (same); *Ellis v. Ethicon, Inc.*, 2010 WL 715403, *3-*4 (D.N.J. March 1, 2010) (same).

[3] Other cases accepting 2012 hourly rates include: *Minn. Firefighters' Relief Ass'n. v. Medtronic, Inc. et al.*, 08-cv-6324 (PAM) (AJB) (D. Minn. Sept. 30, 2012); and *In re Axa Rosenberg Investor Litig.*, 11-cv-00536 (N.D. Cal. Feb 21, 2012).

Although there was ample opportunity to do so between October 15, 2012 and June 13, 2013, no objector submitted any evidence contesting the integrity of the Rate Declarations. Given the evidence, the Report should not have arbitrarily set an alternative fee schedule based on the Special Master's personal views.  ECF No. 234 at 125-26.  *See Smith v. Philadelphia Housing Authority,* 107 F.3d 223, 225 (3d Cir. 1997) (courts may not set hourly rates "based on a generalized sense of what is usual and proper but must rely on the record"); *Illinois Nat.*, 2011 WL 2293334, at *2 (approving rates in absence of "any evidence that indicates that the rates charged by Lowenstein were unreasonably high for … the New Jersey legal community").[4]

The Court also requested that the Special Master review whether counsel's time was useful and necessary to secure the results achieved here.  ECF No. 226 at 53.  The Court's goal in checking reported lodestar is "whether the documentation permits the court to determine if the claimed fees are reasonable."  *Pawlak v. Greenwalt*, 713 F.2d 972, 978 (3d Cir. 1983).

Here, Plaintiffs' Counsel provided the Special Master with detailed, computer-generated daily time entries, breakdowns of time spent by category of work, and supplemental narratives describing work performed.  These materials were sufficient for the Special Master to review the record as a whole to address the Court's concerns about general levels of duplication or work that was not related to achieving the benefits of the Settlement.  *See In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *18 (finding time reasonable based on mediator's review of "charts detailing hourly rates of work performed by each partner, associate

---

[4] The Report incorrectly asserts that the submitted declarations were inadequate because they did not distinguish between hourly rates and contingent rates, and did not identify a "specific case where counsel's proposed rates were awarded."  ECF No. 234 at 109-10.  No such specificity is required in this District.  *See Great Western*, 2012 WL 5200068, at *4 (rejecting argument that submitted affidavit lacked sufficient "specificity"); *Illinois Nat.*, 2011 WL 2293334, at *2 (same). The Report also incorrectly states that the declarations "do not say that the requested rates are commensurate with this District's prevailing market rates." Compare ECF No. 234 at 109 with ECF No 221-1 at ¶12 (attesting that the New Jersey declarant's firm charges hourly rates that are comparable to Plaintiffs' Counsel's rates), ECF No. 221-2 at ¶15 (same), and ECF No. 221-3 at ¶15 (same).

5

and support staff member").

The Report could have reached the same or a similar final lodestar figure by applying an across-the-board percentage reduction to Plaintiffs' Counsel's total reported time reflecting duplication or unproductive work.  Instead, however, the Report reaches its conclusion by reducing daily time entries based not on the record, but on a subjective view of how much time should have been spent on specific letters, legal briefs or oral arguments during 2½ years of complex litigation. *See* ECF No. 234 at 137 (the Special Master "subjected the review of the billing records to a retrospective magnifying glass inspection").  For example, the Report made the following arbitrary reductions of time as "excessive:"

- 2.0 hour reduction of Mr. Lebovitch's March 17, 2011 time revising Plaintiffs' opposition to the motion to dismiss four days before the 48-page brief was filed.  ECF No. 236 at 18; *see also id.* at 22 (3.0 hour reduction of July 15, 2011 time preparing for oral argument) and *id.* at 23 (2.0 hour reduction of December 9, 2011 time preparing for and conducting a lengthy settlement meeting with Defendants).

- 1.0 hour reduction of Mr. van Kwawegen's May 1, 2011 time revising Plaintiffs' opposition to the motion to intervene and a sur-reply regarding Defendants' motion to dismiss.  *See* ECF No. 236 at 20; see *id.* at 23 (2.0 hour reduction of August 24, 2011 time working with Plaintiffs' governance expert and co-counsel on settlement demand).

- 1.5 hour reduction of Mr. Silk's October 13, 2011 time for analyzing the case the day after Defendants responded to Plaintiffs' settlement demand.  *See* ECF No. 236 at 23; *see also id.* at 24  (2.5 hour reduction of February 15, 2012 time providing strategic advice before meeting with J&J's Chief Quality Officer to discuss proposed Product Risk Management system); and *id.* (1.0 hour reduction of February 27, 2012 time advising on response to Defendants' proposed settlement stipulation).

- 2.5 hour reduction of Mr. Berger's January 4, 2012 time for reviewing the case while the parties engaged in detailed settlement discussions.  *See* ECF No. 236 at 23.  *See also id.* at 24 (2.5 hour reduction of January 19, 2012 time for settlement discussions and case review the day after a settlement meeting with Defendants' counsel).

The Report provides no evidentiary basis for these and similar arbitrary time entry reductions.

In sum, we respectfully ask the Court not to adopt the Report's disregard of the Rate Declarations from respected members of the local bar and arbitrary reductions of individual time

entries, as reflected on pages 44-52 and 103-126 of the Report and Appendix III.  As noted above, the Court can still adopt the Report's recommended lodestar figure without adopting all of the analysis leading to it.

### C.  The Court Should Not Repeat Unnecessary Criticism of Counsel

Since its founding over 30 years ago, BLB&G has worked tirelessly to achieve a strong reputation for effective lawyering with high integrity.  We respectfully submit that the Report's personal criticism of individual attorneys is unfounded and should not be adopted.

For example, the Report spends several pages criticizing Mr. Berger – a co-founder of BLB&G, with 41 years of experience and a widely respected member of the securities and shareholder litigation bar[5] – for billing 15 hours of strategic advice during 2½ years of an extremely complex litigation, relying mainly on comments made in a different case, in a different Circuit, applying different standards, *23 years ago*.  *See* ECF No. 234 at 72-75 (*quoting In re Washington Pub Power Supply Sys. Litig.*, 779 F. Supp. 1063 (D. Ariz. 1990), *vacated and remanded*, 19 F.3d 1291 (9th Cir. 1994)).  The Report also criticizes Gerald H. Silk, a 17 year lawyer recognized as a leading securities lawyer,[6] for his role in analyzing and acting as the lead senior partner on the case at the outset, preparing and revising the original complaint and leadership papers, and later providing periodic strategic advice.  ECF No. 234 at 72-75.  After questioning the role that Messrs. Berger and Silk played in achieving the results in this case, the Report states: "In total, the efforts of Mr. Berger and Mr. Silk at Bernstein Litowitz generated

---

[5] Mr. Berger was recently named by the National Law Journal as one of the 100 most influential lawyers in America and has received numerous other top attorney rankings.  *See* ECF No. 192-5 at 28.  Mr. Berger was the lead negotiator in *In re WorldCom, Inc. Securities Litig.*, ($6.15 billion recovery for shareholders), *In re Cendant Corp. Securities Litig.*, ($3.3 billion shareholder recovery), *In re Bank of America Corp. Securities Litig.* ($2.425 billion recovery for shareholders); and *In re Nortel Networks Corp. Securities Litig.*, ($1.3 billion shareholder recovery).  *Id.*   J&J benefited from this experience when counsel negotiated the settlement.

[66] Mr. Silk has received numerous recognitions, including from Chambers and Benchmark Litigation.  *See* ECF No. 192-5 at 30

billing for strategy and review for 162.50 hours or $132,625.  There is absolutely no support in the record for this expenditure." *Id.* at 73.

Respectfully, such criticism is unfounded and unnecessary.  In cases of this magnitude, strategic collaboration among senior attorneys on key briefs, arguments and settlement negotiations is standard in large and small firms alike, and should be encouraged, not punished. Much of Mr. Silk's time was incurred before Mr. Lebovitch took over day-to-day responsibility for the matter (at the time of the Amended Complaint) and it was proper and expected for one senior partner handling a complex matter to seek periodic input and advice from two managing partners of the Firm.  Plaintiffs and J&J benefited from the work of Messrs. Silk and Berger in this case, and the Court should not adopt the commentary at pages 72-75 of the Report.

## III.   CONCLUSION

For the foregoing reasons, BLB&G respectfully requests that the Court accept the recommended lodestar of $5,383,905.76 based on the Special Master's review of the record. However, the Court should not adopt the Report's disregard of the Rate Declarations from respected members of the legal community (pages 103-126), its arbitrary findings regarding individual time entries (pages 44-52, App. III), and personal criticism of counsel (pages 72-75).

Dated: July 8, 2013

Respectfully submitted,

___/s/ James E. Cecchi_____

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
Mark Lebovitch
Jeroen van Kwawegen
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

CARELLA, BYRNE, CECCHI,
  OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, N.J. 07068-1739
(973) 994-1700