**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| IN RE JOHNSON & JOHNSON | : | Civil Action No. 10-2033(FLW) |
| DERIVATIVE LITIGATION | : | Civil Action No. 11-4993(FLW) |
|  | : | Civil Action No. 11-2511(FLW) |
|  | : |  |
|  | : | **OPINION** |

**WOLFSON, United States District Judge:**

The Court has previously approved the parties'
settlement in this consolidated shareholder derivative
action, which includes suits brought by both Demand-
Futility and Demand-Refused Plaintiffs-Shareholders
(collectively, "Plaintiffs"). The remaining determination
in this case is the amount of attorneys' fees and costs to
be awarded to Plaintiffs' counsel.[1] Plaintiffs' counsel[2]

---

[1]   In this Court's prior Opinion dated October 26, 2012
(the "October Opinion"), the Court, inter alia, approved
the final settlement reached between Defendant Johnson &
Johnson Corp. and Plaintiffs. In Re Johnson & Johnson
Derivative Litig., 900 F.Supp. 2d 467 (D.N.J. 2012)
("October Opinion"). In addition, the Court found that
awarding attorneys' fees and costs to Plaintiffs' counsel
is appropriate. Id. at 496. I note that defendants do not
object to Plaintiffs' attorneys' fees up to a maximum of
$10 million.

[2]   The law firms which represent the Demand-Futility
plaintiffs are: Carella, Byrne; Robbins, Geller; Bernstein

seek in excess of $6.5 million in attorney's fees and approximately $450,000 in costs, as well as a multiplier of 1.5. Presented with a multitude of attorneys and voluminous time entries, this Court, appointed a Special Master to assist in making the lodestar calculations and determining compensable costs, pursuant to Fed. R. Civ. P. 53.[3] The issue of whether a multiplier is appropriate and if so, in what amount, was left for this Court following the Special Master's Report on the lodestar.

In her well-reasoned and thorough, 138-page Report and Recommendation (the "Report"), the Special Master recommends that this Court award counsel $5,383,905.76 in fees, and $416,305.73 in costs. As discussed below, objections were filed challenging various aspects of the Report concerning the lodestar calculations. This Opinion reflects the Court's final determination of the fee application. For the reasons set forth below, the Court **ADOPTS** in full the Special Master's Report as follows:

---

Litowitz; and Morris and Morris. The Demand-Refused plaintiffs are represented by: Kantrowitz, Goldhamer; and Abraham Fruchter.

[3]    In an Order dated October 22, 2012, this Court appointed the Hon. Harriet Derman, J.S.C. (Ret.), as the Special Master.

counsel are awarded fees in the total amount of $5,383,905.76, and expenses in the amount of $416,305.73. Furthermore, the Court denies counsel's request for a multiplier.

### BACKGROUND

The underlying facts and procedural history of this case have been fully set forth by this Court in its October Opinion and in the Report; as such, to promote judicial economy, the Court incorporates those facts herein, and will only delineate additional facts that are necessary and relevant to the issues addressed here.

Briefly, these derivative suits essentially accused J&J, *inter alia*, of failing to comply with product recalls, lack of good manufacturing practices, off-label drug marketing and violating federal and state statutes. Plaintiffs allege that based on various wrongdoings, J&J breached its fiduciary duty to its shareholders.

After the resolution of J&J's motions to dismiss,[4] the parties reached a settlement, and as a result, the Court held a fairness hearing, wherein I heard the parties'

---

[4]   At the time the settlement discussion began, the Demand-Futility Plaintiffs' complaint had been dismissed without prejudice, and a motion to dismiss the Demand-Refused Plaintiffs' complaint was pending.

respective positions on the settlement terms, as well as objections from the public.   On October 26, 2012, this Court issued its Opinion and Order approving the settlement and also approved, in principle, an award of attorneys' fees and costs to counsel for Plaintiffs.     In that connection, I determined that to calculate the amount of the fees, a traditional lodestar analysis must be undertaken.   However, as I have explained previously, counsel's fee declarations and time records were not sufficiently detailed in order for this Court to engage in the searching and thorough inquiry that a lodestar analysis requires.   And, more importantly, the time records produced in support of the fee application were voluminous. Accordingly, I instructed Plaintiffs' attorneys to supplement the record, and further, to assist the Court in its review, I appointed a Special Master to recommend the appropriate lodestar amount.

### *Summary of Special Master's Report*

Plaintiff's counsel, collectively, seek fees for over 12,500 hours of work spent on litigating these cases, and the documents purportedly supporting the appropriateness of those hours are substantial and extensive.   As the thoroughness of the Report reflects, the Special Master

carefully and scrupulously evaluated the records, as well as requested counsel to produce additional documentation, and on several occasions, met with counsel.  I will only briefly summarize the Report's conclusions.

The Special Master was tasked with determining the appropriate hourly rate for each counsel, and the time expended by various Plaintiffs' attorneys in this matter was reasonable.  She first conducted the lodestar analysis by examining the 12,797.70 hours spent by the six plaintiffs' firms. In that process, the Special Master commented on the divisiveness of the firms representing the separate plaintiffs at the inception of these matters, including the rancor between Demand-Futility and Demand-Refused Plaintiffs.  However, when the possibility of a settlement became a reality, the firms combined their resources and pursued a common goal – to amicably end litigation.  Nonetheless, as the Special Master found, and this Court agrees, the firms' efforts were plagued by inefficiencies, billing errors, and in some instances, inflated hourly rates.

As the Special Master noted, the number of hours and concomitant fees in this application are "extraordinary" when there has been very limited discovery in these

matters, and the cases were in their infancy. Furthermore, the Special Master was concerned with the manner in which the hours were billed, and indeed, this Court shared the same views when reviewing the settlement and the application for fees.   More particularly, the Special Master found that some of the time records failed to provide sufficient details as to the type of task or activity being billed.   Coupled with attorneys' inefficiencies and billing for unnecessary work, were duplication of efforts, bloated hourly rates and the billing of lawyers at partner rates for low level tasks. Thus, the Special Master reduced the total requested fees to $5,383,905.76.   The chart below represents the breakdown of the recommended lodestar awarded to each firm:

| FIRM | Hours Expended | Requested Lodestar | Recommended Lodestar |
|------|------|------|------|
| **Demand-Futility** | | | |
| Carella Byrne | 1,701.50 | $927,997.95 | $777,265.00 |
| Berstein Litowitz | 2,305.50 | $1,084,585.55 | $676,630.63 |
| Robbins Geller | 1,158.00 | $564,067.50 | $487,718.75 |
| Morris and Morris | 4,074.50 | $2,181,711.54 | $1,946,323.75 |

| Demand-Refused | | | |
|---|---|---|---|
| Abraham Fruchter | 2,755.25 | $1,607,587.59 | $1,032,173.13 |
| Kantrowitz Goldhamer | 802.95 | $520,901.76 | $463,794.50 |
| **TOTAL** | | | $5,383,905.76 |

### *Summary of Objections*

Pursuant to Fed. R. Civ. P. 53(f)(2), the Court directed the parties, including objectors, to submit objections to the Special Masters' recommendations, if any. One of the objectors, Mark G. Petri (the "Objector"), principally challenges the aspect of the Report that addresses the reduction of fees resulting from "internal warfare" of Plaintiffs' counsel. More specifically, the Objector argues that the Special Master committed a legal error on the issue whether $1.15 million of lodestar spent on "fighting" amongst the groups of Plaintiffs' attorneys to become lead counsel is billable to the shareholders.[5]

---

[5]   After the issuance of the Report, I directed the Special Master to submit a separate spreadsheet which enumerates the hours she subtracted for counsel's time spent on three specific categories: (1) motions for appointment of lead counsel and any opposition thereto; (2) Demand-Refused counsel's motion for, and complaint in, intervention; and (3) opposition to the motion for

The Morris Firm also objects to the Report.  While the firm does not take issue with the recommended lodestar amount, it does object on the basis that the Special Master erred when she suggested that the risks of counsel's contingency fee business model should not be shifted to the defendant.  The Morris Firm is concerned because it argues that in a common benefit case, such as this matter, J&J is funding the award of attorneys' fees as the beneficiary of the benefits achieved by Plaintiffs' counsel, not as an unsuccessful defendant. And, the Morris Firm submits that this distinction is important when evaluating whether a multiplier is appropriate.

In addition, the Bernstein Firm objects to certain legal and factual errors allegedly made in the Report; however, it does not seek to change the overall recommended lodestar award.  First, like the Morris Firm, the Bernstein Firm argues that the Court's fee award, particularly in the multiplier context, must not be based on the law of fee shifting for the benefit of a prevailing litigant, but rather, this type of fee award should be based on a corporate benefit analysis.  Furthermore, the Bernstein Firm takes issue with the Special Master's treatment of

intervention.

certain hourly rate declarations from other New Jersey attorneys. Lastly, the Firm disagrees with some of the findings and comments made by the Special Master regarding the manner in which the Bernstein Firm litigated these matters.

The Abraham and Kantrowitz Firms collectively ask this Court to reject the Report's recommended reductions in their requested fees. In their objections, both firms generally disagree with the Special Master's finding that some of the firms' billings were excessive, vague or related to work that was unnecessary. In an attempt to once again justify their hourly billing, the firms delineate the reasons why the reductions of their billable hours by the Special Master were not warranted. I will discuss those contentions more fully below. As a final note, both the Carella and Robbins Firms do not object to the recommendations made by the Special Master, and no one has objected to the Special Master's recommendation as to the compensable expenses.

**DISCUSSION**

**I.    The Lodestar Amount**

    **A.    Standard of Review**

Federal Rule of Civil Procedure 53 sets forth the standard this Court applies when reviewing the Special Master's Report and Recommendation. *See* Fed. R. Civ. P. 53(f)(3)-(5).   In that connection, with respect to the Special Master's decisions, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). It is clear that "[t]he court must decide *de novo* all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). Similarly, all objections to the master's findings of fact, unless the parties stipulate otherwise, are reviewed *de novo*. Fed. R. Civ. P. 53(f)(3). On the other hand, "[t]he Special Master's rulings on procedural matters are reviewed under the abuse of discretion standard." *Honeywell Int'l, Inc. v. Nikon Corp.*, 2009 U.S. Dist. LEXIS 17115, at *1 (D. Del. Mar. 4, 2009) (citing Fed. R. Civ. P. 53(f)(5)).

With the above standards in mind, I acknowledge that it is the role of this Court to review *de novo* the Special Master's conclusions of law and fact.   Indeed, I have

10

thoroughly reviewed the Report and the accompanying exhibits, as well as the parties' declarations in support of their fees; having done so, I agree with the Special Master's assessment of the lodestar analysis. Therefore, in this Opinion, I will only address the specific objections raised by the parties.

**B.   Petri's Objection**

The Objector asks this Court to exclude any hours billed by the various Plaintiffs' attorneys in their efforts to become the lead counsel for both the Demand-Futility and Demand-Refused plaintiffs in this consolidated matter. Indeed, the Objector made the same argument to the Special Master. According to the Objector's calculations, the number of hours expended in those efforts amounted to approximately $1.15 million in fees. Specifically, the Objector identifies three categories of fees that should be excluded:

1. 592.5 hours ($361,800) for the four law firms' fight over who would become Demand-Futility lead counsel.

2. Demand Refused counsel claims 755.75 hours ($495,280.75) for its motion to intervene and motion to appoint lead and liaison counsel in the demand refused actions, as well as 334.9 hours ($194,554.00) on a complaint in intervention.

3.   Demand Futility counsel seeks to include 153.5 hours ($98,363.75) for time spent in opposing Demand Refused counsel's motion to intervene.

The nature of the "internal warfare" among counsel was summarized in the Report. The Special Master remarked that combative exchanges between Plaintiffs' attorneys at one time were "intense." *See* Report at p. 91. Suffice to say, "tension by and among the competing Demand-Futility attorneys and the competing Demand-Refused attorneys, as well as the tension between the Demand-Futility and Demand-Refused attorneys, necessitated the expenditure of over 1,500.00 hours or almost twelve percent (12%) of the hours sought." *Id.* at p. 92. The Special Master did not treat the "in-fighting" lightly. She acknowledged that "[a] great deal of time and money was spent to secure a spot on the team." *Id.* In that regard, the Special Master questioned whether "this internal dispute brought any value to the shareholders of J&J." *Id.*

Having made that assessment, however, the Special Master declined to exclude wholesale the $1.15 million in fees identified by the Objector as hours related to "internal warfare." Rather, the Master reasoned that she had already deducted some of the hours objected to on other grounds, i.e., that they were excessive or vague. The

remaining hours, the Special Master explained, were not otherwise objectionable since those efforts – even if they were related to the appointment of lead counsel – conferred some benefit to the class. *See* Report at p. 95.

While the Objector did not have the benefit of a breakdown of the subtractions taken by the Special Master in these categories, pursuant to my request, the Special Master recently submitted a separate spreadsheet outlining the deductions taken. The following chart summarizes those reductions.

| Category | Amount Billed | Amount of Deduction | % of Reduction Taken |
|---|---|---|---|
| Motions for Appointment of Lead Counsel and Any Oppositions thereto, filed by Demand Futility Counsel | $361,800.00 | $103,079.38 | 28.46% |
| Motion for Intervention; Motion to Appoint Lead Counsel; and Complaint in Intervention | $689,834.75 | $217,037.50 | 31.46% |
| Opposition to Motion for Intervention | $98,363.75 | $23,194.38 | 11.61% |

The standard which the Court applies to determine whether fees should be deducted is straightforward: it is

13

axiomatic that hours not reasonably expended must be excluded from the fee calculation, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), and hours are not reasonablely extended "if they are excessive, redundant or otherwise unnecessary." *Rode v. Dellarciprete*, 892 F. 2d 1177, 1183 (3d Cir. 1990). "Time expended is considered 'reasonable' if the work performed was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1985).

With that in mind, I reject the Objector's broad assertion that all hours spent by Plaintiffs' counsel related to the appointment of lead counsel or intervention were not necessary or did not secure the results reached in this case. First, the lead counsel selection process is necessary and appropriate in order to secure competent counsel for the class. *See In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 156 (D.N.J. 2000). Indeed, the motion practice involved in selecting counsel ultimately led to an organizational plan, agreed to by the parties, concerning which law firms would represent plaintiffs in both Demand Futility and Demand Refused actions. While the process may have been contentious at times, the efforts

14

expended by these firms were beneficial in reaching the outcome.  Likewise, the Court finds that the Demand Refused counsel's filing of its motion to intervene was necessary to protect the interests of the demand refused plaintiffs. Thus, I reject the Objector's position that counsel should not be compensated for any work related to those efforts.

That said, however, I do find excessive the hours spent on motion practice related to the above-referenced three categories of fees.  Having independently reviewed the billing entries and corresponding hours billed for each category, I concur with the Special Master's observations that some of the hours are excessive, vague or otherwise not necessary, and therefore, reductions are appropriate. In that regard, I further find that the reductions taken by the Special Master, as outlined in the above chart, are sufficient to account for hours billed that were not "reasonable" or "useful" in achieving the final result reached in this case.

### C.   The Morris and Bernstein Firms' Objections

Both the Morris and Bernstein Firms disagree with the Special Master's comments regarding the nature of contingency fees.  More specifically, both Firms argue that the Special Master should not have applied a fee-shifting

analysis because this case should be analyzed under the common benefit doctrine, and this distinction is important to the determination whether a multiplier is appropriate. I disagree with the Firms' characterization of the Special Master's reasoning, particularly since she was not tasked with, nor did she engage in, an analysis of fees vis-a-vis whether a multiplier should be applied.   Rather, her analysis was limited to a lodestar calculation, and she appreciated that this is a common fund case.

At the outset, I note that while the attorney's fees sought in this case are not based upon statutory or contractual fee-shifting, in a common benefit case where there is no monetary benefit conferred through litigation, the lodestar formula is a method commonly used to determine attorney's fees.   *Lindy Bros. Builders Inc. of Philadelphia v. American Radiator & Standford Corp.*, 487 F.2d 161 (3d Cir. 1973); *In re Schering-Plough/Merck Merger Litig.*, No. 09-1099, 2010 U.S. Dist. LEXIS 29121, at *53 (D.N.J. Mar. 26, 2010);" *Joy Mfg. Corp. v. Pullman-Peabody Co.*, 742 F. Supp. 911, 913 (W.D. Pa. 1990).   The lodestar method involves multiplying the number of hours expended by the attorneys' reasonable hourly rate.   *See In re Johnson and Johnson*, 900 F.Supp. 2d. at 496. In that regard, the

Special Master appropriately analyzed counsel's hourly rates using the lodestar analysis, which is not disputed by the parties.

The language from the Report with which the Firms take issue read as follows:

> I have also never understood why the element of contingency should generate a higher rate for taking the risk; it would seem to me that practitioners who have undertaken an uphill legal battle would be happy to settle for some compensation - unless it was not uphill at all and was in actuality almost a certainty. In this contingent matter, with J&J as a defendant, a dozen firms were "falling all over themselves" to participate. In any event, the possibility of losing one contingent case and therefore compensating with higher rates in another matter is not the problem of the defendant in the second matter.

Report at p. 117. However, the Special Master was responding to counsel's position that they should receive their substantial requests for fees because counsel undertook the prosecution of this matter entirely on a contingency basis and assumed significant risks in bringing these claims. The Special Master clarified that in determining the lodestar, the focus is on the appropriate hourly rate for each counsel and the reasonableness of the time expended. In other words, it is only after the lodestar is calculated that the Court then determines whether to decrease or increase the amount by applying a

multiplier, which "attempts to account for the contingent nature and risk involved in a particular case and the quality of the attorneys' work." *In re Diet Drugs*, 582 F.3d 524, 540 n.33 (3d Cir. 2009). Indeed, the Special Master appropriately focused on a traditional lodestar analysis as opposed to whether an enhancement is warranted based upon risk and contingency.[6] Therefore, the Firms' objection to the Special Master's comments about fees and contingencies appears to misapprehend the import of her observations.[7] Finally, the risk and contingent nature of a case are factors to be considered in determining whether an enhancement or multiplier applies, which will be decided by me, *infra,* and were not a part of the Special Master's Report.

Next, the Court addresses the Bernstein Firm's suggestion that the Special Master erred when she "disregarded" the hourly rate declarations from prominent

---

[6]    It is appropriate to consider if the issues in this case are novel and complex – neither of these criteria account for an increased hourly rate here.

[7]    The Special Master's comments are, however, well taken. As this Court has observed in other matters, the setting of hourly rates by firms, such as the Morris and Bernstein Firms, whose clients are almost exclusively contingent fee clients, does not necessarily reflect a reasonable fee for lodestar analysis.

New Jersey attorneys ("Rate Declarations").[8]   The Firm argues because the hourly rates set forth in the Rate Declarations are consistent with rates approved by courts around the country, there was no basis for the Special Master to discount them.  The Court disagrees.  The Special Master had an independent obligation to determine whether the Rate Declarations were appropriate and sufficient to support the hourly rates requested in this case.   The Special Master found several deficiencies in those declarations.  First, the Special Master explained that the declarations failed to "comment on the fact that their billing rates may be applicable for periodic non-contingent clients while the clients in this matter are not contractually obligated to ever pay the designated rate – or any other rate."  Report, p. 109.  Moreover, the declarants did not "offer any specific comparisons or provide specific references."  *Id.*  Another deficiency, the Special Master noted, was the lack of information regarding

---

[8]    Plaintiffs' Counsel submitted the following declarations from attorneys in New Jersey: (1) Michael D. Sirota, Esq., co-managing shareholder of Cole, Scholtz, Meisel, Forman & Lenoard, P.A.; (2) Stephen M. Greenberg, Esq., counsel to McElroy, Deutsch, Mulvaney & Carpenter LLP; and (3) John A. McGahren, Esq., a partner at Patton Boggs LLP.

whether the "requested rates are commensurate with this District's prevailing market rates." *Id.* Additionally*, "the* Affidavits do not cite to a single specific case where counsel's proposed rates were awarded in a shareholder derivative action*." Id.* at 110. Thus, the Special Master concluded that the Rate Declarations were not helpful to her in determining reasonable hourly rates for the relevant market. Given the explanations, this Court agrees with the Special Master's conclusions, and I find that she properly gave less weight to the Rate Declarations.

Finally, the Bernstein Firm requests this Court not to repeat or adopt certain "unnecessary criticism of counsel" in the Report. Having carefully reviewed the contents of the Report, I do not find that the Special Master has overstated or inappropriately remarked upon the attorneys and their billing practices. Indeed, the Master was tasked by this Court to compare the work performed by each of the lawyers with the number of hours billed in order to determine the appropriateness of the requested fees. Necessarily, in order to make that determination, the Special Master was well within her authority to support the recommended deductions with her explanations.

### D.    The Abraham and Kantrowitz Firms' Objections

Before the Special Master, the Abraham and Kantrowitz Firms requested a total of $2,128,489.35 for a combined 3558.20 hours billed.   Based on various – and indeed, extensive – reasons, the Special Master reduced both firms' fees to $1,495,967.63.   Unsurprisingly, the Abraham Firm takes issue with the Special Master's reasoning for reducing its fees.   In its view, the majority of the work performed was  appropriate and justified.   In that regard, the Abraham Firm insists that hours billed for the following four categories of work should not have been so drastically reduced : 1) obtaining, reviewing and analyzing documents relating to DePuy's metal hip replacement and other factual updates; (2) reviewing transcripts and exhibits from the civil trials relating to the alleged improper sale of Risperdal; (3) drafting a books and records action which was not filed; and (4) working on the complaint in intervention and the Katz Complaint.   Because I agree with the Special Master's deductions in these categories, I will only briefly comment on the Abraham Firm's objections.

As to the first category, the Special Master correctly determined that some of the hours the Abraham Firm billed

reviewing documents relating to the DePuy metal hip replacement were excessive, while others produced no value to the class. The deductions taken in this category of fees were necessary because, as the Special Master found, some of the hours are plainly excessive. To highlight this problem, the Abraham Firm routinely over-billed for sending emails. In one example, the firm charged over 2.5 hours for sending a routine email to co-counsel. And, in other instances, the Abraham Firm simply designated the work performed as "Doc review" without indicating what documents, or even the subject matter, being reviewed. In those specific instances, the Special Master appropriately reduced all of the hours, which amounted to over 50 hours. I need not go through the entries one by one since that task was competently performed by the Special Master, and because I agree with her observations, I reject the Abraham Firm's objection on this issue.

Next, I am in complete agreement with the Special Master's reductions in the hours billed for Risperdal transcript review. While the Abraham Firm argues that it was necessary to review the transcripts, I find excessive that the firm dedicated well over 180 hours to that routine task. Accordingly, a deduction of 125.25 hours in this

category is more than reasonable; had I reviewed those hours in the first instance, I might have taken an even greater deduction.   Likewise, the Abraham Firm's billing related to drafting a "book and records action" was excessive.   Furthermore, because such an action was never initiated, the significant amount of time spent on preparing the complaint added no value to the benefit of the corporation and the shareholders.   Finally, as to the last category, I have already addressed, *supra*, the reasonableness of the hours that both firms spent on the Complaint in Intervention.

In sum, I do not find convincing the objections made by the Abraham and Kantrowitz Firms.   Accordingly, having addressed, and rejected, all of the objections made by the parties, the Court adopts in full the Special Master's report and recommendation.

## II.  Multiplier

Before I assess whether an award of a multiplier is appropriate, I clarify, as I did in my previous Opinion, that an award of attorneys' fees in this case is based on the substantial benefit conferred upon the shareholders through corporate governance reforms achieved by the settlement, and not based upon a monetary award to the

23

sharholders.   Indeed, this is not the classic type of common fund case wherein a monetary fund is created for the benefit of a class.  As a result, "a lodestar analysis is fitting where there is no monetary component to the settlement and no valuation of the non-monetary award upon which the Court could base a percentage." *In re Johnson & Johnson*, 900 F.Supp. 2d at 498; *see In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).   With that distinction, I turn, next, to the issue whether a multiplier is warranted.   In that connection, notwithstanding the fact that the Special Master, in her lodestar analysis, recommended reducing the requested fees to $5.38 million, counsel continue to request that this Court award fees in the amount of $10 million, which results in a multiplier of approximately 1.86.

After determining the appropriate lodestar figure for attorney's fees, the court may either increase or decrease the lodestar amount through the use of a multiplier.   *Id.* A multiplier "attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Id.* (quoting *In re Diet Drugs*, 582

F.3d 524, 540 n. 33 (3rd Cir. 2009)).[9]  Further, in order to receive an upward adjustment, the fee applicant must show some basis that such an adjustment is necessary to provide fair and reasonable compensation. *See In Re: Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 340 (3d Cir. 1998).

An upward adjustment generally may not based on factors already accounted for in determining the original lodestar figure. *See Blum v. Stenson*, 465 U.S. 886, 898-99 (1984). To illustrate, a multiplier cannot be based on the "novelty and complexity of the issues" because those factors have been accounted for in determining the "number of billable hours" and the "reasonable hourly rate." *Id.; see*, *e.g., McLendon v. Continental Group*, Inc. 872 F. Supp. 142, 162 (D.N.J. 1994) (rejecting a lodestar enhancement based on the quality of the representation because that factor was accounted for in petitioners' hourly rate); *Bagel Inn, Inc. v. All Star Dairies*, 539 F. Supp. 107, 113 (D.N.J. 1982) (denying a petition for lodestar enhancement for one of the firms involved in the litigation because the

---

[9]    In a classic lodestar valuation, it is presumed that the lodestar figure represents the "reasonable fee."  As such, a multiplier is only warranted in special circumstances. *Perdue v. Kenny A.*, 559 U.S. 542, 552-53

"quality of services . . . is reflected in the hourly rate"); *Lake v. Nationwide Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (declining to apply a quality multiplier even though the attorneys "shepherd[ed] this case efficiently"); *Cerva v. E.B.R. Enterprises, Inc.* 740 F. Supp. 1099, 1106 (E.D. Pa. 1990) (declining to apply a quality multiplier because petitioner's skill was already reflected in his high rate); *Orson Inc. v. Miramax Film, Corp.*, 14 F. Supp. 2d 721, 726 (E.D. Pa. 1998) (denying enhancement of lodestar because petitioner's only basis for such a request was the "novelty of the issues"); *Ciccarone v. B.J. Marchese, Inc.* 03-CV-1600, 2004 WL 2966932, at *4 (December 22, 2004 E.D. Pa) (holding that an enhancement multiplier was inappropriate because the work was "adequate, but not outstanding" and the settlement was for far less than initially sought).

Nevertheless, courts have noted that since one of the goals of performing the lodestar analysis is to "assure that counsel undertaking socially beneficial litigation receive an adequate fee irrespective of the monetary value of the final relief achieved for the class," multipliers can be applied to compensate attorneys who take on risky, but socially beneficial litigation. *In re Schering-Plough*

(2010).

*Corp. S'holders Derivative Litig.*, No. 01-1412, 2008 WL185809, at \*5 (D.N.J January 14, 2008) (*citing In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)). In sum, "[m]ultipliers may reflect the risks of non[-]recovery facing counsel, may serve as an incentive for counsel to undertake socially beneficial litigation, or may reward counsel for an extraordinary result. By nature they are discretionary and not susceptible to objective calculation." *In re Prudential*, 148 F.3d at 340.

In this case, I do not find that a multiplier is warranted for several reasons. Counsel argues, at the outset, that in **common fund cases** where the lodestar method is used to cross check percentage-of-recovery awards, the Third Circuit has approved multiples ranging from one to four. *See In re Prudential*, 148 F.3d at 341. However, this is not a common fund case, and therefore, it is not appropriate for this Court to rely on the line of cases that deals with multipliers in that context. Rather, as the case law instructs, I can only award a multiplier in this case if I find that the lodestar insufficiently accounts for the risks of litigation, the contingent nature of the case, the results achieved and the quality of

representation.   These  factors,  however,  do  not  always
compel  enhanced  fees.   *See  Goldberger  v.  Integrated  Res.*,
209 F.3d 43, 54 (2d Cir. 2000).

I  begin  with  the  premise  that  I  find  the  lodestar
amount  of  approximately  $5.38  million  more  than  adequately
compensates  Plaintiffs'  counsel  for  the  work  they
performed.   While  counsel,  collectively,  purportedly  spent
over  12,000  hours  litigating  these  matters,  these
consolidated  actions  were  still  in  their  infancy.   Little
discovery  had  occurred,  and  more  importantly,  for  the
Demand-Futility  Plaintiffs,  the  Complaint  had  been
dismissed  without  prejudice.   As  for  the  Demand-Refused
Plaintiffs,  the  Court  stayed  Defendants'  motion  to  dismiss
pending  the  outcome  of  the  settlement  discussions.   For
cases  that  have  not  progressed  beyond  the  motion  to  dismiss
stage,  $5.38  million  in  fees  is  a  substantial  award.   In
fact,  because  the  lodestar  is  substantial,  an  additional
multiplier  cannot  be  justified.

In  my  view,  the  lodestar  properly  accounts  for  the
results  achieved  and  the  quality  of  representation.   The
hourly  rates  awarded  in  this  case  range  from  $125  to  $750.
Indeed,  most  of  the  partners  of  the  law  firms  charged  well
over  $600  an  hour.   In  light  of  the  significant  hourly

rates, counsel are sufficiently compensated for the quality of their work, which recognizes the various attorneys' skills and experience. These factors were already taken into account by the Special Master when she made her recommendations. In addition, I disagree with counsel's position that the complexity of this case warrants a multiplier. I find that the degree of complexity involved with the issues in these cases is more than adequately reflected in the number of hours billed. *See* Discussion, *infra*.

Moreover, whether Plaintiffs would ultimately prevail is a factor that this Court weighed heavily, not only in finding the settlement reasonable, but also in my determination that an award of attorneys' fees is appropriate. *See In re Johnson & Johnson*, 900 F.Supp. 2d at 484. Indeed, the Special Master discussed the results achieved through the settlement, and how counsel should properly be compensated for those results. Accordingly, because the lodestar calculations took into account those considerations, I need not provide a further enhancement in this regard. *See Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 753 (1987) ("a multiplier[] is not designed to be a 'windfall' for the attorney").

Nor is an enhancement necessary to compensate counsel for the contingent nature of this case.  I doubt that the contingency nature and the risk of nonpayment discouraged Plaintiffs' counsel from pursuing this litigation.  *See Report*, p. 116.  Indeed, that conclusion is bolstered by the number of attorneys seeking to be first in the door in filing lawsuit on behalf of shareholders, and the intense level of competition litigating who would become lead counsel.  In my view, from counsel's perspective, this was a "promising" case, holding the prospect of a large fee recovery from solvent defendants.  *See Goldberger v. Integrated Res.*, 209 F.3d 43, 53-54 (9th Cir. 2000)(refusing to award a multiplier when the contingent nature of the case was in doubt).  My conclusion rests on the observations that: (1) counsel benefitted from the spadework done by federal authorities, whose investigations had progressed substantially at the time of the filing, and during, the litigation; (2) there was no groundbreaking issue which loomed significant in this case; (3) the likelihood of non-payment was slim, because J&J, a well-established public entity, is solvent, and the individual directors and officers were the beneficiaries of an insurance policy; (4) use of current hourly billing rates

compensated counsel for delay in payment; and (5) use of high hourly billing rates compensated counsel for the quality of their efforts, and what risk there was in the case. *See, e.g., Charles v. Goodyear Tire and Rubber Co.*, 976 F. Supp 321, 325 (D.N.J. 1997)("a positive multiplier is not warranted as the fee award is more than reasonable and already accounts for the risks of litigation, the contingent nature of the case, the results achieved and the quality of representation.").

Having considered all of the factors, I find that an award of a multiplier is not warranted since enhancing fees above the already generous rates included in the lodestar would result in overcompensation and thus, a windfall to counsel to the detriment of the shareholders.

**III. CONCLUSION**

For the foregoing reasons, the Special Master's Report and Recommendation is **ADOPTED** in its entirety.  Plaintiffs' counsel are awarded fees in the total amount of $5,383,905.76, and expenses in the amount of $416,305.73. Counsel's request for a multiplier is **DENIED**.


Dated: 11/25/2013                    /s/ Freda L. Wolfson
                                     Freda L. Wolfson,
                                     United States District Judge